UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

CLERK
U.S. DISTRICT COURT
BRIDGE

Oct 22   4 05 PM '03

| | |
|---|---|
| AURICE BARLOW,<br>       Plaintiff | :     NO.: 3:00 CV 1985 (WWE) |
| | : |
| V | : |
| STATE OF CONNECTICUT | : |
| DEPARTMENT OF PUBLIC HEALTH | :     October 22, 2003 |
| And   ELIZABETH WEINSTIEN,<br>       Defendants | |

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

**FACTS**

The Plaintiff, Aurice Barlow, became an employee of the Department of Public

Health on or about June 1984. At the outset she was hired as a clerk typist. Ann

McLendon began supervising Barlow in 1986. From the period of 1984 to 1996 Barlow

took on increasingly additional duties as the AIDS Program grew (See Plaintiff's Exhibit

3B, 8A). She received consistently favorable performance evaluations signed by her

direct supervisor, Ann McLendon (See Plaintiff's Exhibit 2)

During the Plaintiff's tenure at Department of Public Health ("DPH"), and as

early as 1988, her supervisor, Ann McLendon began to focus on the Plaintiff "as a

potential target for [religious] conversion" by giving Barlow religious gifts, literature,

pamphlets, cards, audio taped messages and other religious expressions.

1
Cynthia R. Jennings, Esquire
THE BARRISTER LAW GROUP, LLC
211 State Street, Bridgeport, CT 06604
Tel: 203-362-1230 - Fax: 203-368-6985 - Email: cynjennings@aol.com
Federal Bar No. CT21797

Barlow considered her supervisor's constant prostelyzing as harassment (See Plaintiff's Exhibit 8). Barlow thereafter filed a complaint with the Commission on Human Rights and Opportunities (CHRO # 9710073) regarding the ongoing harassment that she was receiving from McLendon. Plaintiff believed she was the victim of retaliation from management as a result of her filing internal and external complaints of religious harassment. (Plaintiff's Exhibit 15A, 15B)

In and around May 1996, just after the DPH moved to its location on Capital Avenue, the Plaintiff noticed that DPH gave State furniture away to one of its independent contractors, Dunn Kimmel and Fein Inc., ("DKF"). The Plaintiff regarded this as a violation of the custom, practice and procedures regarding surplus furniture (See Plaintiff Exhibit 16B and 16C). Further, plaintiff was responsible for handling surplus furniture in her capacity with the AIDS program in the past, and she was well aware that surplus furniture must be sent to State Surplus. (See Plaintiff's Deposition p. 89-90). Plaintiff thereafter registered a Whistle Blower complaint with Tom Carson, DPH Personnel Officer in May 1996 (See Plaintiff Exhibit 16B).

Hearing nothing on the status of her Whistle Blower complaint, plaintiff submitted a complaint regarding the same occurrence to the State Auditor's Office and the Attorney General's Office in and around November 1998 (See Plaintiff's Exhibit 13). Plaintiff specifically named Beth Weinstein ("Weinstein"), Ann McLendon ("McLendon"), and Claudio Santoro ("Santoro"), as being involved in the whistleblower activity related to the disposition of state furniture (See Plaintiff's Exhibit 13).

In and around August 8, 1996 plaintiff requested time off from work to attend an appointment with CHRO (See Plaintiff's Exhibit 18). Additionally, during the same time period

Cynthia R. Jennings, Esquire
THE BARRISTER LAW GROUP, LLC
211 State Street, Bridgeport, CT 06604
Tel: 203-362-1230 - Fax: 203-368-6985 - Email: cynjennings@aol.com
Federal Bar No. CT21797

Plaintiff wrote to Personnel (Donna Dickson) and Affirmative Action (Toni Rulo) regarding the promotional opportunity and copied this writing to the Connecticut Commission on Human Rights and Opportunities ("CHRO") (See Plaintiff's Exhibit 3H).  On August 9, 1996, plaintiff received a written letter of counseling from Beth Weinstein (See Plaintiff's Exhibit 17).

After enduring a continuous amount of progressive disciplinary actions (See Plaintiff's Exhibit 8A), and finally being denied (See Plaintiff's Exhibit 21) the opportunity to play in a department sponsored charity basketball game, during her lunch period, despite the Commissioner having already granted approval for staff participation, (See Plaintiff's Exhibit 24) the Plaintiff collapsed at work, suffering a nervous breakdown on August 22, 1996 (See Plaintiff's Exhibits 22, 25,  26, 27, 28, 30A).  Plaintiff remained out of the office on medical leave until January 1997 (See Plaintiff's Exhibit 22).

In March 1997, Barlow expressed interest in upward mobility to a new position--that of a Pre Professional Trainee (PPT) with the AIDS Education Program.  (See Plaintiff's Exhibit 3F). Barlow tested for that position and scored a 98 on the examination. (See Plaintiff's Exhibit 3E). Barlow believed that she would be getting the promotion to a PPT because she had been asked and expected to perform job duties outside the scope of her job description of a Clerk-typist (See Plaintiff's Exhibit 3B).  She was clearly working outside of her class.

The Plaintiff was further led to believe that she would be getting the promotion to PPT because she was issued business cards with her name printed on them and title described as "AIDS Education Assistant". (See Plaintiff's Exhibit 8A) Ann McLendon, Barlow's direct supervisor, stated in a letter dated June 13, 1997 to the Plaintiff, that "on your test score and in

Cynthia R. Jennings, Esquire
THE BARRISTER LAW GROUP, LLC
211 State Street, Bridgeport, CT 06604
Tel: 203-362-1230 - Fax: 203-368-6985 - Email: cynjennings@aol.com
Federal Bar No. CT21797

the interview, you presented yourself as a very good candidate. It was our pleasure to interview

applicants of such caliber." (See Plaintiff's Exhibit 3G). However the Department of Public

Health ("DPH") awarded the position to Dorine Testori (white female). Prior to the selection of

Dorine Testori, on or about August 21, 1996, Plaintiff wrote a memo to the Personnel office and

the Affirmative Action Office stating that she wanted an investigation into the rumor that the

PPT position was already slated for Dorine Testori even though the promotional examination

was not yet administered. (See Plaintiff's Exhibit 3H). Clearly, tensions ensued within this

department and disciplinary actions against the Plaintiff got progressively worse (See Plaintiff

Exhibit 8A).

In 1997 Plaintiff was identified as having a physical disability (See Plaintiff's Exhibit

6B). She has an identified hearing deficiency. Beth Weinstein requested clarification as to the

existence of a hearing defect because of plaintiff's loud tone of voice, and the Plaintiff had her

hearing tested (See Plaintiff's Exhibit 6C). There was an identifiable hearing deficiency as

documented by Plaintiff's physician (See Plaintiff's Exhibit 6B).

*Plaintiff's Performance Evaluations*

DPH performance evaluations were categorized into five quadrants. If a person received

one unsatisfactory rating, the entire evaluation would be considered unsatisfactory. The Plaintiff

received overall "good" and "very good" evaluations from the period of 1988 – 1995 (See

Plaintiff's Exhibit 30A). The performance evaluations were completed by Plaintiff's supervisors

during that period. Additionally, in some instances the evaluator made notations as to proposed

areas of growth. The areas of growth were by no means a deficiency. Therefore, even though the

supervisor could identify that there were areas that the Plaintiff could improve, the overall performance evaluation could still be "good" or "very good".

Her 1987 performance evaluation had positive comments by her immediate supervisor, Ann McLendon which included "Aurice has shown improvement in areas of organizing and prioritizing. Her telephone skills with the public continue to be very good." The overall rating was "good"; signed by Ann McLendon. (See Plaintiff Exhibit 2).

The Plaintiff's 1988 performance evaluation was rated "good" overall . Comments included "Aurice has many excellent qualities and shows great potential. She would be a good candidate for upward mobility, a possibility which she and I have discussed." (See Plaintiff's Exhibit 3A). Her 1989 evaluation ranked her overall as "good". Her 1993 evaluation rated the Plaintiff as "very good" in two of the five categories (knowledge of work and quantity of work) and "good in the remaining three categories (quality of work, attendance, and ability to deal with people). Plaintiff's 1994 performance evaluation also was rated "good" overall.

Plaintiff's 1995 evaluation was a positive review indicating improvement in the area of interpersonal interactions, she was noted to be moving in a "positive direction", and she was further "commended for her efforts this year." (See Plaintiff Exhibit 30A).

Curiously, Weinstein completed the Plaintiff's 1995-96 employment evaluations. The supervisor of record was still Ann McLendon, but during the time that the performance evaluation was due, McLendon was out of work due to a death in her family. Barlow's co-supervisor, Claudio Santoro, could have and should have evaluated the Plaintiff. In fact the immediate supervisor and the co-supervisor had the best opportunity to observe the Plaintiff and

Cynthia R. Jennings, Esquire
THE BARRISTER LAW GROUP, LLC
211 State Street, Bridgeport, CT 06604
Tel: 203-362-1230 - Fax: 203-368-6985 - Email: cynjennings@aol.com
Federal Bar No. CT21797

give an appropriate assessment, because they directly supervised plaintiff. However, Beth

Weinstein, the head of the AIDS Program decided to evaluate the Plaintiff, a clerical staff

person, even though a supervisor was available to write the performance evaluation. Plaintiff's

performance evaluation for the first time, fell to the level of unsatisfactory (See Plaintiff's

Exhibit 30A). The evaluation was completed on September 30, 1996 by Beth Weinstein.

Weinstein, Carson, McLendon and others in the AIDS Division of DPH knew complainant had

filed a CHRO complaint, because they required written verification of her request for time off to

attend a CHRO appointment.

The 1997 performance evaluation was again completed by Beth Weinstein (See Plaintiff's

Exhibit 30D). The evaluation rated the Plaintiff an unsatisfactory evaluation against the

Plaintiff. With two unsatisfactory evaluations, she could be terminated from her job.

**LEGAL ARGUMENT**

In ruling on a motion for Summary Judgment the court may only grant the motion

pursuant to Fed.R.Civ.P. 56(c), "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there are no genuine issues as to

any material fact and that the moving party is entitled to judgment as a matter of law." The

moving party bears the initial burden of demonstrating the absence of any genuine issue of

material fact as to an essential element of the opposing party's claim. Celotex v. Catrett, 477

U.S. 317, 323 (1986). In determining whether the moving party has met its burden, the court

must view the evidence in the light most favorable to the nonmoving party. Matsushita Electric

Indus. Co. Zenith Radio Corp. 475 U.S. 574 (1986).

Cynthia R. Jennings, Esquire
THE BARRISTER LAW GROUP, LLC
211 State Street, Bridgeport, CT 06604
Tel: 203-362-1230 - Fax: 203-368-6985 - Email: cynjennings@aol.com
Federal Bar No. CT21797

To preclude summary judgment, the nonmoving party "is required to present some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial." Gaines v. Runyon, 107 F.3d 1171 (6th Cir.1997). The nonmoving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v Liberty Lobby, Inc. 477 U.S. 242, 249 (1986). To determine whether the nonmoving party has raised a genuine issue of material fact, the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his favor.

Additionally, the Second Circuit has held that a district court should exercise particular caution when deciding whether summary judgment should issue in an employment discrimination case. Gallo v. Prudential Residential Services Ltd. Partnership, 22 F.3d 1219, 1224 (2d Cir.1994). Because writings directly supporting a claim of intentional discrimination are rarely, if ever, found among an employer's documents, a trial court must be particularly cautious about granting summary judgment when the employer's intent is at issue. Id.

The defendants assert a number of separate arguments in favor of summary judgment. Specifically they claim that Ms. Barlow did not establish a case under Title VII; that she did not establish a viable claim pursuant to Gen. Stat § 31-51q; and violation of her right to Equal Protection. Each will be addressed in this memorandum.

A.    THE PLAINTIFF HAS A VIABLE CLAIM UNDER TITLE VII BECAUSE SHE HAS ALLEGED AND PRODUCED SUFFICIENT EVIDENCE PROVING RETALIATION FOR HER  FILING THE WHISTLE BLOWER COMPLAINT  AND HER SUBSEQUENT FOLLOW UP COMPLAINTS TO OTHER AGENCIES AND DEPARTMENTS ON THE SAME ISSUE.

Cynthia R. Jennings, Esquire
THE BARRISTER LAW GROUP, LLC
211 State Street, Bridgeport, CT 06604
Tel: 203-362-1230 - Fax: 203-368-6985 - Email: cynjennings@aol.com
Federal Bar No. CT21797

1.    *The Plaintiff has satisfied the four prong test in order to establish a prima facie case of Retaliation.*

In order to make a prima facie case of retaliation, plaintiff must show that: 1) she engaged in protected activity; 2) the employer was aware of the protected activity; 3) she suffered an adverse employment action; 4) there is a causal connection between the protected activity and the adverse action. Mattern v. Eastman Kodak Co., 104 F.3d 702, 705 (5th Cir. 1997). The burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its decision. Once the defendant makes this showing, the plaintiff then has an opportunity to prove by a preponderance of the evidence that the defendant's proffered reason is merely a pretext for retaliation. Sherrod vs American Airlines, Inc. 132 F.3d 1112 (5th Cir. 1998).

In the present case, Aurice Barlow engaged in a protected activity. The record clearly reflects that Ms. Barlow made a "whistleblower" complaint on or about May 1996. The complaint was registered with the Department of Public Health in 1996. Her employer was aware of the complaint. Hearing nothing on the status of her Whistleblower complaint, plaintiff submitted a complaint regarding the same unlawful furniture disposal issue to the State Auditor's Office and the Attorney General's Office in June 1998. The Plaintiff made her Whistle Blower complaint based on what she reasonably believed to be a violation of policy, and matter concerning the public interest Thus she has satisfied the first two prongs of the test.

However, the matter was never investigated properly. Ms. Barlow further exposed the matter on Channel 30 News, and was interviewed by Lew Brown. Ms. Barlow continued to

Cynthia R. Jennings, Esquire
THE BARRISTER LAW GROUP, LLC
211 State Street, Bridgeport, CT 06604
Tel: 203-362-1230 - Fax: 203-368-6985 - Email: cynjennings@aol.com
Federal Bar No. CT21797

seek resolution of the complaint that she had initially filed. The Plaintiff registered the Whistle

blower complaint to the Department of Public Health in 1996. The complaint was given to

Tom Weirbonics in Personnel. Ms. Barlow trusted the personnel officer to follow through with

what he initially stated. She stated , "Tom Weirbonics assured me that he would notify the

attorney general's office…Tom Weirbonics never told anyone, except Beth Weinstein."

(Plaintiff's Exhibit 14, p 2.)

The Plaintiff reported a Whistleblower complaint to the Attorney General's office on

September 22, 1998. (See Plaintiff's Exhibit 16 b). She wrote a letter documenting her complaint

to the Attorney General, [Menchell] in November 1998.[1] (See Plaintiff's Exhibit 13)  She wrote

her letter to Menchell seeking redress from the ongoing harassment that was being directed to

her (See Plaintiff's Exhibit 13).  Further, the Letter outlined the basis of her initial complaint

regarding the disposal of state furniture.

As a result of the whistleblower complaint and other subsequent internal and external

complaints initiated by the plaintiff, she suffered a number of adverse employment actions.  The

actions were in the form of discipline, denial of a promotion to a PPT position, withholding of

paychecks while out on medical leave, and close surveillance of her work hours and other

activities (See Plaintiff's Exhibits 3A; 4A, 4B; 4C; 9, 17, 18, 21, 22, 23, 31 34, 47, 48 and 49).

Hence, Ms Barlow has satisfied the last two prongs of the test by proving that there was indeed

an adverse employment action and that there was a causal connection between the protected

---

[1] Aurice Barlow stated in her deposition that she made complaints to the auditors in the State Comptroller's office regarding the issue with the furniture.  She stated further that she complained to who she characterized as the State Attorney who was in fact the Assistant Attorney General.

Cynthia R. Jennings, Esquire
THE BARRISTER LAW GROUP, LLC
211 State Street, Bridgeport, CT 06604
Tel: 203-362-1230 - Fax: 203-368-6985 - Email: cynjennings@aol.com
Federal Bar No. CT21797

activity and the adverse action. An "adverse employment action" is defined as: [a] materially

adverse change in the terms and conditions of employment…more disruptive than a mere

inconvenience or an alteration of job responsibilities. A materially adverse change might be

indicated by a termination of employment, a demotion evidenced by a decrease in wage or

salary. Hollins vs. Atlantic Co, 188 F3d 652 662 (6th Cir 1999). Hence, the Plaintiff has

established a prima facie case of retaliation.

     *2.     The defendant's progressive disciplining and negative job evaluations constitute
pretext of the retaliatory employment actions.*

     After establishing a prima facie case of retaliation, under the burden shifting paradigm,

(See,McDonnell Douglas Corp. v. Green. 411 U.S. 792 (1973)), the burden then shifts back to

the plaintiff to demonstrate that the reason given by the defendant is pretextual.    To prevail on

this issue, a plaintiff is required to present sufficient circumstantial evidence to permit a

reasonable finder of fact to find that the proffered reason was not the actual reason for the

discharge and discrimination was the real motivation. Korna vs. Veda, Inc. 96 F3d 1448, (6th

Cir) 1996.

     The defendant contends that the plaintiff was a "loud and disruptive" employee and

warranted disciplinary actions. However, a close examination of the facts shows that the

disciplinary actions and written memos to fill her employee file were pretextual actions with

retaliation as the real motivation.

     On August 8, 1996 plaintiff requested time off for an appointment with CHRO. On

August 9, 1996, plaintiff received a written letter of counseling from Beth Weinstein. The

written letter of counseling was clearly pretextual and presumably to be used a deterrent to filing a complaint. The disciplinary action imposed by Beth Weinstein occurred merely one day after the Plaintiff requested time to visit CHRO. The complaint was not even yet filed. Shortly thereafter on August 22, 1996, co-supervisor, Claudio Santoro issued a memo regarding Plaintiff's daily time of arrival and monitoring. Also on the same date co-supervisor Claudio Santoro issued a memo denying Plaintiff the opportunity to participate in the charity basketball game, after the Commissioner had already granted approval for agency staff to participate.

Curiously, Weinstein completed the Plaintiff's 1995-96 employment evaluations. The supervisor of record was still Ann McLendon, but during the time that the performance evaluation was due, McLendon was out of work due to a death in her family. Barlow's co-supervisor, Claudio Santoro, could have and should have evaluated the Plaintiff. In fact the immediate supervisor and the co-supervisor had the best opportunity to observe the Plaintiff and give an appropriate assessment, because they directly supervised plaintiff. However, Beth Weinstein, the head of the AIDS Program decided to evaluate the Plaintiff, a clerical staff person, even though a supervisor was available to write the performance evaluation. Plaintiff's performance evaluation for the first time, fell to the level of unsatisfactory (See Plaintiff's Exhibit 30A).

This first unfavorable performance evaluation occurred under the following circumstances: 1) less than thirty days after Plaintiff filed a CHRO complaint; 2) after she made internal complaints on August 21, 1996 to Bureau Chief, Ardell Wilson regarding Wilson's investigation into Plaintiff;'s complaints; 3) after Plaintiff wrote a letter to the Affirmative

Action about a rumor that the PPT position was slated for Dorine Testori, and 4) after Plaintiff

filed the whistleblower complaint and specifically named Weinstein in the complaint.

The Plaintiff had a solid history of good work performance in the department. Suddenly

and without warning a series of disciplinary letters begin to circulate and she receives her first

negative performance evaluation in 12 years. The evaluation and the progressive disciplinary

measures were the department's retaliatory response to the Plaintiff's internal and external

complaints.

Plaintiff filed an internal discrimination complaint on or about August 1997. Also during

that time  Plaintiff was identified as having a physical disability (See Plaintiff's Exhibit 6B). She

has an identified hearing deficiency. Beth Weinstein requested clarification as to the existence

of a hearing defect because of plaintiff's loud tone of voice, and the Plaintiff had her hearing

tested (See Plaintiff's Exhibit 6C). There was an identifiable hearing deficiency as documented

by Plaintiff's physician (See Plaintiff's Exhibit 6B). The 1996-97 performance evaluation by

Weinstein again rated Plaintiff as unsatisfactory, with a deficiency in one area only.

The defendant continuously circulated documents in an attempt to retaliate against the

Plaintiff (See Plaintiff's Exhibits 4C, 20, 35, 36, 37, 38, 40, 41, 42, 47, and 48), .  For example,

on September 17, 1998 the plaintiff met with Beth Weinstein. The Plaintiff thereafter accurately

documented the events of the meeting with a memo to Weinstein dated the same day. The

plaintiff indicated that 1) Beth scheduled the meeting for a Sunday (September 20, 1998), and

had the days mixed up; 2) Beth Weinstein blamed spelling errors and mistakes on the plaintiff,

however the document was generated by another employee, Lorraine Collazo, who was no

longer with the AIDS program.  Eleven days later Beth Weinstein conveniently generated a

memo to document the meeting and also Nancy Berger generated a memo coincidently

documenting events of the same date.  Clearly, these two subsequent memoranda were generated

for no particular purpose other than to document the file and to establish a pretextual reason for

the upcoming termination.

2.    *The defendant's retaliatory actions followed "close in time" to the plaintiff's
       protected activity.*

The Plaintiff made a number of complaints both internal and external and shortly

thereafter suffered adverse employment actions.

a.        Plaintiff complained about religious proselytizing in the office and has

           written to the Govenor's office (See Plaintiff's Exhibits 15 B)

b.        Plaintiff made a complaint to the Affirmative Action Office sometime in

           1991 regarding religious harassment (See Plaintiff's Exhibit 10)

c.        Letter dated 8/21/96 to Affirmative Action regarding a rumor that the PPT

           position had been slated for Dorine Testori before a promotional

           examination had been administered (See Plaintiff's Exhibit 3 H); plaintiff

           received a negative performance evaluation.

d.        Complaint with CHRO, August 12, 1996 alleging religious harassment

           (See Plaintiff's Exhibit 8).  Plaintiff received a negative employment

           evaluation.

Cynthia R. Jennings, Esquire
THE BARRISTER LAW GROUP, LLC
211 State Street, Bridgeport, CT 06604
Tel: 203-362-1230 - Fax: 203-368-6985 - Email: cynjennings@aol.com
Federal Bar No. CT21797

e.        Internal discrimination grievance filed 8/19/1997 alleging retaliation and racial discrimination (See Plaintiff's Exhibit 10). Plaintiff assigned to Lab (See Plaintiff Exhibit 40).

f.        Letter to Department of Labor dated 1/26/1998 regarding unfair labor practices (See Plaintiff's Exhibit 32); Plaintiff received memo regarding change and conditions of her employment 2/3/1998 (See Plaintiff Exhibit 4B).

g.        Complaint dated 6/4/1998 with Attorney General office regarding retaliation for whistle blowing conduct (See Plaintiff's Exhibits 13 & 14). Plaintiff terminated from her position.

h.        Letter to Governor's office regarding retaliation. (See Plaintiff's Exhibit 15B) Plaintiff terminated from her position.

The standard utilized in the Second Circuit has been that the protected activity was "closely followed in time by the adverse action." Manoharan v. Columbia University College of Physicians & Surgeons, 842 F.2d 590 (2d Cir. 1988). As exemplified by these examples, the Plaintiff continuously engaged in a protected activity and shortly thereafter, "close in time" she suffered an adverse employment action.

The CHRO investigator stated in the finding of probable cause decision (See Plaintiff's Exhibit 8A) that "there is a noticeable increase in the disciplinary activity against the Complainant beginning after the Agency's move to Capital Avenue in or about March/April 1996." (See Plaintiff's Exhibit 16 B). The time that DPH moved to Capital Avenue coincides

precisely with when the Plaintiff initially noticed the improper disposal of the surplus furniture

and filed her Whistleblower complaint.

B.    THE COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES (CHRO)
      CONDUCTED AN INVESTIGATION OF THE CASE AND RENDERED A
      FINDING THAT THERE WAS REASONABLE CAUSE FOR BELIEVING THAT
      A DISCRIMINATORY PRACTICE HAD BEEN  COMMITTED AS ALLEGED IN
      THE COMPLAINT.

The Plaintiff brought a second CHRO complaint on January 7, 1999 against the

Department of Public Health (See Plaintiff's Exhibit 8 A).  She alleged that she was a victim

of unlawful retaliation  and was subjected to unequal treatment, terms and conditions of

employment because of a perception of having a mental disorder.  The conduct complained

of is alleged to have begun after filing of the first CHRO complaint on or about August 1996

and culminated with the discharge of employment on November 10, 1998.

Under Title VII, the Plaintiff must exhaust administrative remedies prior to bringing a civil

action.  The congressional policy underlying this framework was to resolve discrimination

claims administratively through cooperation and voluntary compliance in an informal and

non-coercive manner.  *See* Occidental Life vs EEOC, 432 U.S. 355 (1977).  The Commission

on Human Rights and Opportunities is the appropriate forum for this initial complaint.  The

agency conducted an investigation, heard testimony, and utilized in excess of 95 exhibits.

The agency made a finding.

The CHRO finding concluded the following:

Cynthia R. Jennings, Esquire
THE BARRISTER LAW GROUP, LLC
211 State Street, Bridgeport, CT 06604
Tel: 203-362-1230 - Fax: 203-368-6985 - Email: cynjennings@aol.com
Federal Bar No. CT21797

The totality of evidence in the investigative file is sufficient to justify a conclusion of "reasonable cause" to believe that unlawful discrimination occurred. The Respondent's proffered reason is not believed because the Complainant's duties were considerably reduced to where she went from being "overwhelmed" ....to having nothing to do but read newspapers all day.... The examples of her work errors, such as misfiling, misspelling, inaccurate photocopying, seemed to become large problems after the Complainant started to complain about unequal treatment based on her engagement in protected conduct.... This investigator concludes that even if there were legitimate concerns about the Complainant's conduct in the workplace, the unlawful motives that prompted the adverse treatment was a significant factor and tainted the decision to impose the ultimate discipline on the Complainant – termination from state employment. There is insufficient proof that the legitimate motives by themselves would have caused the adverse results.

This court should adopt the findings of CHRO as it is clearly outlined its decision, that there is probable cause that unlawful discriminatory practices have been committed. The purpose of the CHRO is to investigate and evaluate claims such as these (See Plaintiff's Exhibit 8 A). This decision carries significant probative value.

The defendant makes the argument to accept the arbitrator's decision, however, the Union has appealed the decision and the appeal is currently pending (See Plaintiff Exhibits 20).

## C.  THE PLAINTIFF HAS STATED A VIABLE CLAIM PURSUANT TO CONN. GEN. STAT. §31-51q

Connecticut Gen. Stat §31-51q provides in pertinent part that "Any employer....who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment ... shall be liable to such employee for damages caused by

Cynthia R. Jennings, Esquire
THE BARRISTER LAW GROUP, LLC
211 State Street, Bridgeport, CT 06604
Tel: 203-362-1230 - Fax: 203-368-6985 - Email: cynjennings@aol.com
Federal Bar No. CT21797

such discipline or discharge." Pursuant to this statute the Plaintiff must 1) have been exercising rights protected by the First Amendment, 2) have been fired on account of the exercise of such rights, and 3) the exercise of such rights did not substantially interfere with her bona fide job performance or with her working relationship with her employer.

In the present case, Aurice Barlow engaged in a protected activity and exercised her First Amendment rights. The record clearly reflects that Ms. Barlow made a "whistleblower" complaint on or about May 1996 (See Plaintiff's Exhibit 20). The complaint was registered with the Department of Public Health Personnel Officer Tom Carson in 1996 (See Plaintiff's Exhibit 20). Hearing nothing on the status of her Whistleblower complaint, plaintiff submitted a complaint regarding the same occurrence to the State Auditor's Office and the Attorney General's Office on or around June 4, 1998 (See Plaintiff's Exhibits 13 and 20). Plaintiff made her Whistle Blower complaint based on what she reasonably believed to be a violation of policy, and in the public interest. The whistle blower complaint did not deal with any personal complaints or personal conflicts. It simply brought to light a situation that should be exposed to the public (See Plaintiff's Exhibit 13, 14, 15, 16A, 16B, 16C and 20).

Although the defendant constantly wants to minimize their actions by stating that the furniture was simply "old" the issue is a matter of public concern. It is in the public's interest to know where there is waste in the quasi-governmental agencies and government contracting. Giving furniture away to friends and business associates contravenes public policy and should be an issue brought before the public.

Cynthia R. Jennings, Esquire
THE BARRISTER LAW GROUP, LLC
211 State Street, Bridgeport, CT 06604
Tel: 203-362-1230 - Fax: 203-368-6985 - Email: cynjennings@aol.com
Federal Bar No. CT21797

As stated earlier, the Plaintiff's most recent complaint regarding the disposal of the furniture occurred on June 4, 1998. There is a nexus and a causal connection between engaging in the activity and her termination. Plaintiff was terminated on November 26, 1998, less than six months after filing her June 4, 1998 whistleblower complaint with the Connecticut Attorney General's office. Plaintiff's termination was close in time to the filing of both her 1998 whistleblower complaint, and her 1998 CHRO complaint, thereby providing the nexus required to support a claim of retaliation. Thus, the plaintiff has pled a viable claim pursuant to Conn. Gen. Stat §31-51q.

CONCLUSION

The foregoing discussion exemplifies that there are genuine issues of material fact in dispute. The motion should be denied in its entirety.

FOR PLAINTIFF

By _Cynthia R. Jennings_

Cynthia R. Jennings, Esq. (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street
Bridgeport, CT 06604
(203) 334-4800 (O)
(203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

Cynthia R. Jennings, Esquire
THE BARRISTER LAW GROUP, LLC
211 State Street, Bridgeport, CT 06604
Tel: 203-362-1230 - Fax: 203-368-6985 - Email: cynjennings@aol.com
Federal Bar No. CT21797

## CERTIFICATION

This is to certify that the above Memorandum of Law was delivered to the following

attorneys on October 22, 2003  hand delivery.


Gary S. Star
Stephen M. Sedor
Shipman & Goodwin, LLP
One American Row
Hartford, CT 06103-2819




_Cynthia R. Jennings, Esq._
Cynthia R. Jennings, Esq.

Cynthia R. Jennings, Esquire
THE BARRISTER LAW GROUP, LLC
211 State Street, Bridgeport, CT 06604
Tel: 203-362-1230 - Fax: 203-368-6985 - Email: cynjennings@aol.com
Federal Bar No. CT21797