CLERK
U.S. DISTRICT COURT
BRIDGEPORT
Oct 22 4 05 PM '03
FILED

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **AURICE BARLOW,** Plaintiff | : | **CIVIL ACTION NO. 300 CV 1983 (WWE)** |
| v. | : | |
| **STATE OF CONNECTICUT DEPARTMENT OF PUBLIC HEALTH And ELIZABETH WEINSTEIN** Defendants | : | **October 22, 2003** |

**PLAINTIFF'S LOCAL RULE 56(a)2 STATEMENT OF UNDISPUTED FACTS**

1. Admit.

2. Admit in part, deny in part. Plaintiff's duties in 1988-90 as a Clerk Typist, included dissemination of information to contractors, public health workers, counselors, educators and private organizations; educating the public about the spread of AIDS intervention/prevention. Plaintiff was the contact person both in person and on the telephone responsible for giving out information, as well as receiving information. Plaintiff was part of the train-the-trainer program for state employees regarding the spread of AIDS. She served as the Risk reduction Outreach Worker. She assisted in writing letters to State officials and grant writing. She was nominated the first African-American Woman to serve as President of the Asylum Hill Board Member Committee. Plaintiff had several special assignments, special duties and responsibilities, including working with

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O) (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

health care workers, educators, doctors, nurses, directors of local health departments throughout the state. She assisted public and private organizations to utilize and access the State Health Department's AIDS program. She served as the primary contact person relative to signing up for training programs, and she coordinated meetings and confirmed participation in training sessions. Plaintiff maintained data on those individuals who were trained, dates of training and information relative to whether or not they required additional training to complete the public health educational training program they participated in. Plaintiff was responsible for maintaining computerized files and lists of leadership councils; CBO's; program review panel members, college peer educators, hospital workers and others. Her job included going to the state Lab, CT Hospital Association and other agencies to provide educational materials, resources, posters, counseling, testing information; educational information and presentations to state agencies. (Plaintiff's Exhibit 1[A]). Plaintiff was also required to respond to requests relative to confidential issues of the law, plus information on proposals, contracts, counseling and testing sites available to the public. In addition, Plaintiff provided clerical support for the AIDS education Director; maintained the AIDS Prevention Literature Inventory; and drafted and responded to interpersonal communication in writing, by phone and in person. She was responsible for responding to general correspondence, and conducting routine typing, filing and photocopying. She was also required to orient temporary secretaries to office routines. Plaintiff was responsible for working

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

closely with program staff; filling requests for AIDS literature, working with outside contractors and the National AIDS Clearinghouse in the coordination and ordering of literature and other AIDS related documents through the Centers for Disease Control (CDC). Plaintiff was responsible also, for answering phones and directing calls to the appropriate parties. Her job included typing, filing, word processing, setting up appointments for the AIDS Education Director; Helping with contracts; setting up counselors meeting places; mailing out large requests for literature; setting up mailing labels for newsletters; participating in training workshops, seminars and conferences relative to the AIDS program. She was also responsible for dictation, and training temps on WANG. (Plaintiff's Exhibit 1 [B, C].

3. Admit in part, deny in part. Plaintiff's 1987 Performance evaluation had an overall rating of "Good" and she had positive comments made by her immediate supervisor, Ann McLendon, which included "Aurice has shown improvement in areas of organizing and prioritizing. Her telephone skills with the public continue to be very good. Aurice had an informal discussion with the Program Coordinator...and her attendance improved..." Aurice also works extremely well when she is the only clerical person in the office. Since the demands of this program are great, other clerical assistance is needed." This performance evaluation was signed by Ann McLendon.(Plaintiff's Exhibit 2).

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

4. Admit in part, deny in part. Plaintiff's 1988 Performance Evaluation also ranked Plaintiff under Quantity of Work, in the category of "Very Good," stating that plaintiff" turns out a large volume of work. This same evaluation further states that Plaintiff's overall evaluation is "Good." Other comments in this evaluation are that "Aurice has many excellent qualities and shows great potential. She would be *a good candidate for upward mobility*, a possibility which she and I have discussed." This evaluation was signed by Ann McLendon on September 28, 1988. (Plaintiff's Exhibit 3[A]). Plaintiff's upward mobility was never realized, irrespective of the fact that Plaintiff consistently worked out of her job classification. (Plaintiff's Exhibits 3[B]. Her job title was that of a clerk typist, however, plaintiff worked consistently out of class, and was never promoted, even though she was promised a promotion and reclassification from a clerk typist to a senior clerk (Plaintiff's Exhibit 3[C]), had an approval from Personnel to be reclassified to an Office Assistant (Plaintiff's Exhibit 3[D], received a passing score on the Pre-Professional Trainee Health Program Assistant I exam of 98 (Plaintiff's Exhibit 3[E]), and interviewed for the Pre-Professional Trainee position with the AIDS program on April 4, 1997 (Plaintiff's exhibit 3[F]). Plaintiff was advised on June 13, 1997 by Ann McLendon, that even though her test score was a 98, and in the interview, she presented herself as a good candidate, she was not selected for the position. (Plaintiff's Exhibit 3[G]). Further, Plaintiff wrote a memo to Personnel stating that she had been informed that the examination for The Health Program Assistant I Class Code 6330 was not

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O) (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

an open examination, and she had been informed that management had already slotted the position for the candidate Dorine Testori, a white female. Plaintiff stated in her memorandum, that staff had talked of Dorine Testori getting the position even before the announcement was posted. Plaintiff requested an investigation into this matter. (Plaintiff Exhibit 3[H]). Plaintiff was not awarded this position, or any position upgrade, and she continued to work out of her job class, and still expected to produce large volumes of work. (Plaintiff's Exhibit 4[A, B, C]).

5. Admit in part, deny in part. In her 1988-89 evaluation, Plaintiff ranked "very good" in two out of five categories, "good" in two out of five, and received one ranking of "fair" in the area entitled "Ability to deal with people." This ranking was one where she formerly received good ratings, and good written feedback on her prior evaluations. (Plaintiff's Exhibit 5[A]). Plaintiff's 1988-89 evaluation stated that Plaintiff had an overall evaluation of "good" and stated that "Ms. Barlow is extremely helpful in assisting with specific projects that pertain to the HIV counseling and testing sites. She always works well with me, her immediate supervisor, in accomplishing assignments." This evaluation was signed by Janis Spurlock (Sister-in-law to Plaintiff's former immediate supervisor, Ann McLendon), who also supervised Plaintiff. This employment evaluation was reviewed by Ann McLendon. The evaluation itself, contradicted Plaintiff's reduced rating in the evaluation category "Ability to Deal with People." This adverse employment action, a documented reduction in a ranking formerly ranked

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O) (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

as good, took place after Plaintiff was passed over for a promotion by her immediate supervisor, Ann McLendon, wherein on August 8, 1996, Plaintiff requested an investigation into the employment action which was made public prior to the employment examination being given. (Plaintiff's Exhibit 5[B, C]).

6. Admit in part, deny in part. Plaintiff's 1992-93 evaluation ranked Plaintiff "very good" in two out of five categories, (knowledge of work and quantity of work) and "good" in the remaining three categories (quality of work, attendance and ability to deal with people). She had an Overall Evaluation rating of "good." This evaluation was signed by Ann McLendon (Plaintiff's Exhibit 6[A]).

7. Admit in part, deny in part. Plaintiff invariably spoke in a loud voice when in the workplace. On or around October 13, 1997, at the request of her then supervisor, Beth Weinstein, Plaintiff had a hearing test, which showed that she had tinnitus in both ears, chronic hay fever related symptoms, nasal congestion, a deviated septum to the left, and turpinate hypertrophy. An Audiogram revealed a drop in her left ear at 8000 Hertz to 45dB, indicating significant hearing loss. As Beth Weinstein had suspected, Plaintiff did, in fact, have a hearing loss, which was likely the cause of her loud talking, a disability, which the employer was aware of. (Plaintiff's Exhibit 6[B, C]).

8. Admit in part, deny in part. We admit that McLendon prepared Barlow's 1994 Performance Appraisal, and that in this performance appraisal, the areas identified for improvement included improving grammar and spelling, decreasing typing errors, and improving proofreading skills, that this employee was clearly working

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

out of the class of a clerk typist. Further, we also see from the *same* 1994 evaluation, that plaintiff was ranked "good" in knowledge of work; "very good" in quantity of work; "good" in quality of work; "good" in attendance; and "good in ability to deal with people. Plaintiff's overall evaluation was "good." Further, in her accomplishments, Ms. McLendon states that plaintiff uses typewriter and word processing regularly; types a variety of documents (simple to moderately complex) from dictation and handwritten drafts; enters and retrieves information from the WANG system and Word Perfect; Maintains AIDS Education records and files for outreach training programs; maintains centralized AIDS Topics files; sends out standard form letters for a variety of AIDS education projects; sends out correspondence and communications by fax; is able to retrieve basic information from files to generate simple reports; has a great deal of knowledge about AIDS training programs and resources; can effectively communicate this information in person and by telephone; can be very helpful to public and staff in identifying resources and finding information, and shows concern for needs and problems of others. In addition, Ms. McLendon stated that plaintiff efficiently receives and processes orders for AIDS education materials to be filled from the public information center and/or the warehouse; maintains a variety of mailing lists; generates mailing labels using WANG and Word Perfect; mails out information packets; processes mass mailing assignments; orders office supplies; keeps track of supplies needed for reordering, and does photocopying and other miscellaneous processing tasks. (Plaintiff's Exhibit 7).

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O) (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

9. Admit.

10. Deny. Plaintiff spent years working out of class (See Plaintiff's Deposition p. 110 – Plaintiff's deposition is annexed as "X"). She was hired as a clerk typist, but fulfilled many more responsibilities in her position than that of a clerk typist. (See Plaintiff's Exhibit 3[B]). In the referenced meeting in this matter, plaintiff was stripped of her major responsibilities, and essentially demoted to an information clerk, who essentially answers the phones. This demotion was done in front of staff at a staff meeting, caught plaintiff totally by surprise, and served to demean and humiliate her in front of staff (See Plaintiff's Deposition p. 290-291 – Plaintiff's deposition is annexed as "X"). Beth Weinstein had this public demotion planned, plaintiff, in that meeting, was handed a stack of printed business cards that contained her new title (See Plaintiff's Deposition p. 290 – Plaintiff's deposition is annexed as "X"). Plaintiff maintains that she was not disruptive, she raised her hand, and stated in the meeting that she thought this was an inappropriate and unprofessional, as well as demeaning to demote her in front of the entire staff. (See Plaintiff's Deposition p. 290 – Plaintiff's deposition is annexed as "X"). Plaintiff maintains that she did not raise her voice at anyone in that meeting. Further, plaintiff stated that she "…felt it was a way to hurt my feelings, because everyone in there knew I was training for the preprofessional trainee [position]". (See Plaintiff's Deposition p. 290-291 – Plaintiff's deposition is annexed as "X"). "Plaintiff complained both internally and externally regarding Ms. McLendon's unwelcome religious harassment against her. The

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O) (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

problem of religious harassment in the workplace by Ms. McLendon to employees in general, but specifically guided toward the plaintiff. These activities took the form of religious gifts, pamphlets, Christian literature, cards, audio-taped messages and other communications. The above- mentioned actions took place from 1988 through 1991. After making a complaint to Affirmative Action and writing a letter to the Governor's office, Ms. Barlow received no relief. The religious harassment continued until 1996 (August) when Ms. Barlow filed a complaint with CHRO alleging religious harassment and retaliation." (Plaintiff's Exhibit 8). Plaintiff believed she was being harassed because she complained about religion..." (Plaintiff's Deposition p. 231, lines 15-25 – Plaintiff's deposition is annexed as "X").

11. Deny. Plaintiff believes the harassment of her in the workplace began, following both her internal and external complaints about religious harassment. (Plaintiff's Deposition p. 231, lines 15-25 – Plaintiff's deposition is annexed as "X"). Further, plaintiff did not know Nancy Berger, the individual who wrote the alleged complaint about plaintiff on April 3, 1996. Plaintiff claims that she does not personally know Nancy Berger. (Plaintiff's Deposition p. 236, line 10 – Plaintiff's deposition is annexed as "X"). Plaintiff states that she did not have an argument with a Nancy Berger, and a statement made that she allegedly yelled at Nancy Berger, was a false statement. (Plaintiff's Deposition p. 236, lines 10-17 – Plaintiff's deposition is annexed as "X"). In addition, plaintiff had a disability in the form of a hearing loss, which was documented by a physician on or around

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O) (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

October 13, 1997, at the request of her then supervisor, Beth Weinstein. Plaintiff had a hearing test, which showed that she had tinnitus in both ears, chronic hay fever related symptoms, nasal congestion, a deviated septum to the left, and turpinate hypertrophy. An Audiogram revealed a drop in her left ear at 8000 Hertz to 45dB, indicating significant hearing loss. As Beth Weinstein had suspected, Plaintiff did, in fact, have a hearing loss, which was likely the cause of her loud talking, a disability. (See Plaintiff's Exhibit 6).    Plaintiff further questions the fact that Nancy Berger, wrote a memorandum to Beth Weinstein on April 10, 1996, when the incident allegedly took place on April 3, 1996. (Plaintiff's Exhibit 9). Why would someone wait seven days to write a memo on an issue of this nature?

12. Deny. Plaintiff spent years working out of class (Plaintiff's Deposition p. 110 – Plaintiff's deposition is annexed as "X"). If Weinstein wanted to "assist" Barlow, she would have supported her employment upgrade to a PPT. Plaintiff believed she was being harassed because she complained extensively, both internally and externally, about religious harassment (Plaintiff's Deposition p. 231, lines 15-25 – Plaintiff's deposition is annexed as "X").    This religious harassment continued despite Plaintiff's attempts to have Ms. McLendon cease her harassment, from 1988 through 1991. (Plaintiff's Exhibit 10).

13. Deny.    "Plaintiff complained both internally and externally regarding Ms. McLendon's unwelcome religious harassment against her.    The problem of religious harassment in the workplace by Ms. McLendon to employees in general,

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

but specifically guided toward the plaintiff. These activities took the form of religious gifts, pamphlets, Christian literature, cards, audio taped messages and other communications. The above mentioned actions took place from 1988 through 1991. After making a complaint to Affirmative Action and writing a letter to the Governor's office, Ms. Barlow received no relief. The religious harassment continued until 1996 (August) when Ms. Barlow filed a complaint with CHRO alleging religious harassment and retaliation." (See Plaintiff's Exhibit 8). Plaintiff believed she was being harassed because she complained about religion..." (Plaintiff's Deposition p. 231, lines 15-25 – Plaintiff's deposition is annexed as "X"). Plaintiff had filed numerous complaints relative to religious harassment and further, plaintiff had filed another whistle blower and discrimination complaint regarding an improper internal employment procedure.

14. Deny. Plaintiff does not acknowledge that DKF was hired, before she filed *any* complaint, to perform several of the tasks that she used to perform. DKF was hired prior to the Whistle Blower complaint regarding the furniture matter. However, Dunne, Kimmel and Fein, Inc. (DKF) was hired on 7/1/95. (Defendant's Exhibit 11). "Plaintiff complained both internally and externally regarding Ms. McLendon's unwelcome religious harassment against her. The problem of religious harassment in the workplace by Ms. McLendon to employees in general, but specifically guided toward the plaintiff. These activities took the form of religious gifts, pamphlets, Christian literature, cards, audio taped messages and other communications. The above mentioned actions

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O) (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

took place from 1988 through 1991. After making a complaint to Affirmative Action and writing a letter to the Governor's office, Ms. Barlow received no relief. The religious harassment continued until 1996 (August) when Ms. Barlow filed a complaint with CHRO alleging religious harassment and retaliation." (See Plaintiff's Exhibit 8). Plaintiff believed she was being harassed because she complained about religion..." (Plaintiff's Deposition p. 231, lines 15-25 – Plaintiff's deposition is annexed as "X").

15. Admit.

16. Deny. Plaintiff rejects the after-the-fact explanation of why the surplus furniture was not sent to State Surplus. (Plaintiff's Exhibit 12). Further, plaintiff rejects the fact that the age of the furniture is at all relevant in this matter. Plaintiff states that State Surplus is where all surplus furniture has always been sent from this office, unless it was transferred to another state department. Plaintiff saw stickers on the furniture entitled DKF (the initials of a private contractor). (Plaintiff's Deposition p. 87 to 88 – Plaintiff's deposition is annexed as "X"). Plaintiff made her Whistle Blower complaint, based on what she reasonably believed to be a violation of policy, and in the public interest. (Plaintiff's Deposition p. 88 – Plaintiff's deposition is annexed as "X"). Further, plaintiff "used to deal with surplus furniture in the AIDS program in the past, and she is well aware that State Surplus is where this furniture goes (Plaintiff's Deposition p. 89-90 – Plaintiff's deposition is annexed as "X").

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

17. Deny. Plaintiff registered a Whistle Blower complaint with both the Department of Public Health in 1996 and the Attorney General's Office in 1998. Plaintiff specifically named Beth Weinstein, Ann McLendon and Claudio Santoro as being involved in the whistleblower activity related to the disposition of state furniture. In addition, plaintiff filed a CHRO complaint relative to religious harassment. (Plaintiff's Exhibit 8). Plaintiff fails to see the relevance as to the age of the furniture, or specifically when plaintiff did, or did not file a Whistleblower complaint. Hearing nothing regarding the status of her Whistleblower complaint after almost two years, plaintiff submitted a complaint on the same issue to the State Auditor's and Attorney General's offices on June 4, 1998. (Plaintiff's Exhibit 14)
18. Admit.
19. Admit.
20. Admit.
21. Admit in part, deny in part. "Plaintiff complained both internally and externally regarding Ms. McLendon's unwelcome religious harassment against her. The problem of religious harassment in the workplace by Ms. McLendon to employees in general, but specifically guided toward the plaintiff. These activities took the form of religious gifts, pamphlets, Christian literature, cards, audio taped messages and other communications. The above mentioned actions took place from 1988 through 1991. After making a complaint to Affirmative Action and writing a letter to the Governor's office, Ms. Barlow received no

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O) (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

relief. The religious harassment continued until 1996 (August) when Ms. Barlow filed a complaint with CHRO alleging religious harassment and retaliation." (See Plaintiff's Exhibit 8). Plaintiff believed she was being harassed because she complained about religion..." (Plaintiff's Deposition p. 231, lines 15-25 – Plaintiff's deposition is annexed as "X"). Plaintiff was the victim of retaliation from management as a result of her filing internal and external complaints of religious harassment. Plaintiff had filed numerous complaints relative to religious harassment. (Plaintiff's Exhibit 15[A, B]).

22. Deny. During Plaintiff's deposition, plaintiff did not confirm that all of her job duties were taken away before the AIDS unit moved to 410 Washington Street. Plaintiff stated that she did not understand the question as it was stated. She said that she still had a few of her job duties when she was at 410 Capitol Avenue. (Plaintiff's Deposition p. 49, lines 12-25 and p. 50 lines 1-25 and p. 51 lines 1-4 – Plaintiff's deposition is annexed as "X"). Plaintiff felt that her job duties were taken away "slowly but surely." (Plaintiff's Deposition p. 52, line12 – Plaintiff's deposition is annexed as "X").

23. Admit.

24. Deny. During her deposition, plaintiff modified and clarified her testimony to be congruent with what actually occurred on the job. Plaintiff admits that she still had duties left after her move to 410 Washington Street. Plaintiff states in her own deposition, that she was demoted in a public core staff meeting. Her new job responsibilities were outlined in this core staff meeting. Plaintiff was generally

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O) (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

excluded from staff meetings with the pretext that someone needed to answer the phones. (Plaintiff's Deposition p. 289, lines 6-16 – Plaintiff's deposition is annexed as "X"). Further, the plaintiff was demoted to an AIDS Information Officer in a core staff meeting attended by plaintiff. This removal of job duties and change in job title, constituted an adverse employment impact, part of the retaliation plaintiff continued to face at the hands of management. (Plaintiff's Deposition p. 289 and 290 – Plaintiff's deposition is annexed as "X")

25. Admit in part, deny in part. None of Plaintiff's job duties were shifted before she made *any* complaint. Plaintiff was the recipient of retaliation. "Plaintiff complained both internally and externally regarding Ms. McLendon's unwelcome religious harassment against her. The problem of religious harassment in the workplace by Ms. McLendon to employees in general, but specifically guided toward the plaintiff. These activities took the form of religious gifts, pamphlets, Christian literature, cards, audio taped messages and other communications. The above mentioned actions took place from 1988 through 1991. After making a complaint to Affirmative Action and writing a letter to the Governor's office, Ms. Barlow received no relief. The religious harassment continued until 1996 (August) when Ms. Barlow filed a complaint with CHRO alleging religious harassment and retaliation." (See Plaintiff's Exhibit 8). Plaintiff believed she was being harassed because she complained about religion…" (Plaintiff's Deposition p. 231, lines 15-25 – Plaintiff's deposition is annexed as "X"). Plaintiff was the victim of retaliation from management as a result of her filing internal and

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O) (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

external complaints of religious harassment. Plaintiff had filed numerous complaints relative to religious harassment. (Plaintiff's Exhibit 15[A, B]).

26. Admit in part, deny in part. Plaintiff can not speculate as to the purpose for which DKF was using the furniture. Plaintiff can only attest to the procedure for distributing surplus furniture. State Surplus was responsible for distribution and warehousing of surplus state furniture. Plaintiff states that State Surplus is where all surplus furniture has always been sent from this office, unless it was transferred to another state department. Plaintiff saw stickers on the furniture entitled DKF (the initials of a private contractor). (Plaintiff's Deposition p. 87 to 88 – Plaintiff's deposition is annexed as "X" ). Plaintiff made her Whistle Blower complaint, based on what she reasonably believed to be a violation of policy, and in the public interest. (Plaintiff's Deposition p. 88 – Plaintiff's deposition is annexed as "X" ). Further, plaintiff "used to deal with surplus furniture in the AIDS program in the past, and she is well aware that State Surplus is where this furniture goes (Plaintiff's Deposition p. 89-90 – Plaintiff's deposition is annexed as "X" ). (See Plaintiff's Exhibit 16[A, B, C].

27. Admit.

28. Admit.

29. Admit.

30. Deny. Plaintiff was the recipient of ongoing and continuous retaliation by management and administration. "Since 1988, through 1996, Plaintiff complained both internally and externally regarding Ms. McLendon's unwelcome

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O) (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

religious harassment against her. The problem of religious harassment in the workplace by Ms. McLendon was to employees in general, but specifically guided towards the plaintiff. This harassment did not stop until plaintiff filed a CHRO complaint in 1996. (See Plaintiff's Exhibit 8).

31. Deny. Plaintiff has an identified hearing deficiency. Clarification as to the existence of a hearing deficit was requested by Beth Weinstein, and plaintiff consequently had her hearing tested. There was an identifiable hearing deficiency, as documented by Plaintiff's physician (See Plaintiff's Exhibit 6[A, B]). Plaintiff worked in a hostile work environment, where she was regularly documented by individuals other than her supervisor. (See Plaintiff's Exhibits 4[B]; 9; 15[A]; 15[B]; 19; 31; 32; 35; 38; 40; 42; 44; 45; 48; AND 50). "After the move to Capitol Avenue in April 1996, there was a noticeable difference in the way that Ms. Barlow was treated in the office and this intensified after she filed her CHRO complaint in August 1996. (See Plaintiff's Exhibit 8). Plaintiff herself stated that she has always had a high pitched voice, but when asked in her deposition, if anyone ever complained about the tone of your voice or being loud on the phone, plaintiff responded with a "no." (Plaintiff's Deposition p. 236, lines 11-21 – Plaintiff's deposition is annexed as "X").

32. Deny. Plaintiff worked in a hostile work environment where she was regularly documented by individuals other than her supervisor. Plaintiff worked in a hostile work environment where she reasonably believed that she was being harassed (See Plaintiff's Exhibits 4[B]; 9; 15[A]; 15[B]; 19; 31; 32; 35; 38; 40; 42; 44; 45;

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O) (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

48; AND 50). Further, plaintiff has a hearing disorder. Clarification as to the existence of a hearing deficit was requested by Beth Weinstein, and plaintiff consequently had her hearing tested. There was an identifiable hearing deficiency, as documented by Plaintiff's physician, which can account for the increased tone and volume of Plaintiff's voice. (See Plaintiff's Exhibit 6[A]). "After the move to Capitol Avenue in April 1996, there was a noticeable difference in the way that Ms. Barlow was treated in the office and this intensified after she filed her CHRO complaint in August 1996. (See Plaintiff's Exhibit 8). Plaintiff herself stated that she has always had a high pitched voice, but when asked in her deposition, if anyone ever complained about the tone of your voice or being loud on the phone, plaintiff responded with a "no." (Plaintiff's Deposition p. 236, lines 11-21 – Plaintiff's deposition is annexed as "X").

33. Deny. Plaintiff was working in a hostile work environment. On August 8, 1996, plaintiff had requested time off for an appointment with CHRO. On August 9, 1996, immediately following Plaintiff's request for time off to attend a CHRO appointment, plaintiff received a written letter of counseling from Weinstein. (Defendant's Exhibit 17). This written letter of counseling was clearly pretextual, and no more than retaliation against plaintiff for engaging in protected activity-filing a complaint of discrimination. The fact that a CHRO complaint had not yet been filed against Weinstein is not the issue here. Weinstein *knew* on August 8, 1996, that plaintiff was requesting time off for the purpose of going to CHRO. (Defendant's Exhibit 18). It would be reasonable to infer that plaintiff was

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O) (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

going for the purpose of filing a discrimination complaint. It would further be reasonable for Weinstein to infer that plaintiff was going to file a complaint against her, considering the totality of the circumstances.

34. Admit.

35. Admit in part, deny in part. In addition to the memorandum requesting the start-time and end-time of the CHRO meeting, and the name and telephone number of a contact person at CHRO, the memorandum from Claudio Santoro was also copied to Beth Weinstein; Rich Melchreit and Ann McLendon. (See Plaintiff's Exhibit 18). Consequently all three managers were aware by Claudio Santoro, that the plaintiff had an appointment with CHRO, scheduled for August 12, 1996 at 10:00 a.m.

36. Admit.

37. Admit.

38. Admit in part, deny in part. Although Plaintiff's CHRO complaint did not make any allegations against Weinstein, on August 12, 1996, when plaintiff filed her CHRO complaint, in a January 20, 1998 memorandum to the Equal Employment Opportunity Commission, the plaintiff states that "When I went to Beth Weinstein, the AIDS Program Director in an effort to discontinue further religious harassment from Ms. McLendon, much to my surprise I was given a hasty dismissal and told to handle it on my own. I couldn't handle the situation without being labeled insubordinate. I am Catholic and I felt as if my private religious beliefs were violated and made to seem inferior to those of Ms. McLendon...I

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

knew it was an appropriate time to turn the situation over to a higher source, so I decided to petition the CHRO, when certain members of management discovered that I was in communication with CHRO out of the clear blue I began to receive warning letters regarding my performance. It was as if the more communication with CHRO the more warning letters I received. Management wanted to make it appear as if my complaints were nothing more than unfounded accusations…I filed my complaint with the Commission on Human Rights, in August 1996. Shortly thereafter was when I received a warning letter from Beth Weinstein…Office relations were so bad that they caused me to have a nervous breakdown. I was out of the office on Medical leave for (6) months. It was as if the office politics followed me, during the time that I was out, I received harassing calls from Beth Weinstein, Personnel, and Payroll." This memorandum cited numerous instances of harassment on the part of management. (Plaintiff's Exhibit 19)

39. Admit in part, deny in part. Thomasina Carr, DPH's Affirmative Action Officer investigated Plaintiff's CHRO complaint No. 9710073. Respondent's answer was filed 10/7/96. CHRO complaint was filed on August 12, 1996, and plaintiff was reclassified to an Office Assistant effective on August 19, 1994. (Plaintiff's Exhibit 20). While CHRO dismissed this complaint, this was not the only complaint filed by plaintiff. The afore-referenced complaint was filed by plaintiff against Ann McLendon for religious harassment. This complaint was dismissed by CHRO, and shortly after that filing, plaintiff received two memos. One was

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O) (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

regarding her arrival time and the other was a denial to participate in a charity basketball game. Plaintiff suffered a nervous breakdown and was on medical leave until January 3, 1997, under a physician's care. (Plaintiff's Exhibit 21). Plaintiff's September/October paychecks were withheld and were not mailed to her until late December. She received calls from the Commissioner, Beth Weinstein, Tom Carson, Payroll Supervisor (Barbara Schiffert) and others regarding payroll and insurance issues, in addition to wanting to know when she would be returning to work. These calls added to the stressful situation Ms. Barlow found herself in as a result of her work environment. (Plaintiff's Exhibit 22). Plaintiff filed a complaint with Agency Personnel Officer Tom Carson regarding the improper disposal of State surplus furniture. She specifically named Beth Weinstein, Ann McLendon and Claudio Santoro as being involved in that activity. Hearing nothing regarding the status of her complaint after almost two years, plaintiff submitted a complaint on the same issue to the State Auditor's and Attorney General's offices on June 4, 1998. As a result of these and other actions by plaintiff, she suffered numerous adverse employment activities. These were in the form of discipline, denial of promotion to a PPT position, withholding of paychecks while she was out on medical leave, the inability to attend office/social functions and close surveillance of her work hours and other activities. After the move to Capitol Avenue in April 1996 there was a noticeable difference in the way that plaintiff was treated in the office and this intensified after she filed her CHRO complaint in August 1996. (See Plaintiff's Exhibit 8). Weinstein was not

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O) (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

Plaintiff's direct supervisor when she completed the 1995-96 employee performance evaluation. She was three levels removed from the supervisory designation. The fact that Plaintiff's immediate supervisor, Ann McLendon was out on funeral leave still left Mr. Santoro as the closest supervisory person to plaintiff during this rating period. He should have prepared her evaluation. Instead Ms. Weinstein used this opportunity to begin to move toward the goal of removing plaintiff from state employment. The agency chose not to follow the progressive discipline policy, and the plaintiff suffered the wrath of agency management members and was dismissed on November 10, 1998. (Plaintiff's Exhibit 23).

40. Admit.

41. Admit.

42. Admit in part, deny in part. There was an August 8, 1996 memorandum from Claudio Santoro to Aurice Barlow regarding the upcoming August 12, 1996 CHRO appointment which the plaintiff had. The August 8, 1996 memorandum requested the start-time and end-time of the CHRO meeting scheduled for August 12, 1996, and the name and telephone number of a contact person at CHRO, the memorandum from Claudio Santoro was also copied to Beth Weinstein; Rich Melchreit and Ann McLendon. (See Plaintiff's Exhibit 18). Consequently all three managers were made aware by Claudio Santoro, that the plaintiff had an appointment with CHRO, scheduled for August 12, 1996 at 10:00 a.m.

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net