43. Deny.  The charity basketball game was scheduled for August 22, 1996.  Claudio Santoro, Beth Weinstein, Rich Melchreit and Ann McLendon were all aware that the plaintiff had an appointment to go to CHRO on August 12, 1996.  They were made aware of this appointment on August 8, 1996, by Claudio Santoro, who copied each of them on a memorandum sent to plaintiff, requesting the start-time and end-time of the August 12, 1996 CHRO meeting, and the name and telephone number of a contact person at CHRO.  The memorandum from Claudio Santoro was copied to Beth Weinstein; Rich Melchreit and Ann McLendon.  (See Plaintiff's Exhibit 18).  Consequently all three managers were made aware by Claudio Santoro, that the plaintiff had an appointment with CHRO, scheduled for August 12, 1996 at 10:00 a.m.  Retaliation relative to Plaintiff's CHRO complaint could have started as early as August 8, 1996.  The charity basketball game, scheduled for August 22, 1996, (Defendant's Exhibit 24) was well within that time frame.  Beth Weinstein denied Plaintiff's request to attend the charity basketball game.  (See Plaintiff's Exhibit 21).  Because of the closeness in time to plaintiff engaging in protected activity, and because Weinstein and others were aware that plaintiff chose to exercise her rights, it would be reasonable to believe that Weinstein's actions were retaliatory.

44. Admit.

45. Deny.  Plaintiff states that she had a psychological breakdown and collapsed at work on August 22, 1996.  Plaintiff contacted her primary care physician, Dr. Marco Morel, who referred her to Dr. Richard Sternberg, a forensic psychologist.

23

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

Dr. Sternberg saw plaintiff on an emergency basis on August 28, 1996, and advised her to remain off of her work through her next evaluative appointment, scheduled for September 4, 1996. (Plaintiff's Deposition p. 174-176 – Plaintiff's deposition is annexed as "X" ) and (Plaintiff's Exhibit 25).

46. Deny. Plaintiff's leave was not voluntary. Plaintiff took a doctor advised medical leave of absence from work. (Plaintiff's Exhibit 26). Plaintiff's last day at work was 8/26/96 and her last day on the payroll was 9/13/96. (Plaintiff's Exhibit 27). Thomas Wierbonics, Sr. Principal Personnel Officer advised plaintiff on 10/2/96 that "We will extend your medical leave without pay…please give us as much notice as possible…" (Plaintiff's Exhibit 28).

47. Admit.

48. Admit.

49. Admit.

50. Admit.

51. Deny.   Weinstein sent the 1995-96 performance evaluation to plaintiff via certified mail, return receipt requested. (Plaintiff's Exhibit 29).  Since Weinstein knew exactly when plaintiff received her evaluation, her call was pretextual. She sent for the first time, an evaluation of Plaintiff that had one unsatisfactory ranking—the category "Ability to Deal With People." This is a category where plaintiff had formerly been ranked both "good" and "very good."  This one unsatisfactory  rating  translates  into  the  overall  evaluation  becoming

24

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

unsatisfactory.  Two of these unsatisfactory evaluations, places an individual in the terminable category.  (Plaintiff's Exhibit 30).

52. Admit.

53. Deny.  Plaintiff's check was withheld.  Plaintiff stated that she believes the check was withheld to force her to come back to work.  Plaintiff stated that she called Payroll, and they said it [Plaintiff's paycheck] was still back in the safe, no one had seen it.  They assumed Dorine Testori in my department had sent out my check, because at the time, she was handling the checks and doing the checks then.  Plaintiff stated I wasn't doing them anymore.  Plaintiff was advised by payroll to talk to Dorine Testori.  It turned out Dorine Testori had sent Plaintiff's check back to payroll, and they threw it into the safe in the back.  Barbara Schiffert told her that Beth Weinstein wanted them to hold Plaintiff's paycheck to make plaintiff come back to work early.  Plaintiff stated that later Barbara Schiffert told her that it was an oversight.  (Plaintiff's Deposition p. 208-213 – Plaintiff's deposition is annexed as "X" ).  Plaintiff's check was held from October 11, 1996 until December 1996, a week before Christmas.  (Plaintiff's Exhibit 31).  On January 26, 1998, plaintiff notified the U.S. Department of Labor relative to both Unfair Treatment of FMLA Time and her Paycheck.  In this document, plaintiff reported termination of medical insurance benefits while defendants held her paycheck for three months; and a violation of the FMLA leave act of 1993.  Plaintiff sent this complaint to the Commission on Equal Rights and Opportunities, and the Union President of Local 704.  It was addressed to the U.S.

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

Department of Labor. (Plaintiff's Exhibit 32) On or around September 16, 1996, two notices were sent to plaintiff from Barbara Schiffert, Payroll Supervisor, requesting payment from plaintiff for payment to cover her costs for medical insurance. ( Plaintiff's Exhibits 33). These letters came from the same person, Barbara Schiffert, whom plaintiff names as having held her check at the request of Beth Weinstein. While Plaintiff's check was being held, Barbara Schiffert was sending out cancellation notices for medical insurance, which was ultimately cancelled for non-payment. (Plaintiff's Deposition pp. 210, 211, 212, 213, 214, 215, 216 and 217 – Plaintiff's deposition is annexed as "X" ).

54. Deny. Documentation relative to when plaintiff received her check is clearly under the defendant's control. Plaintiff has documentation through correspondence with Donna Dickson, Personnel Administrator, that she received her check, which was due on October 11, 1996, in December 1996, a week before Christmas. (Plaintiff's Exhibit 34).

55. Deny. Plaintiff was not evaluated by her immediate supervisor on her 1995-96 (Rating Period 10/1/95 to 9/30/96) employment evaluation, and plaintiff was not evaluated by her co-supervisor, Claudio Santoro, both individuals whom plaintiff worked directly for. Plaintiff was evaluated by Beth Weinstein, who was two to three levels removed from direct supervision of plaintiff. There was no indication that Weinstein was in a position to rate the Plaintiff's performance because she had not been the direct supervisor during the evaluation period. In fact, Santoro had been the supervisory person closest to the plaintiff and had been monitoring

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

her throughout the year as evidenced by his memos to her on various issues. Plaintiff was removed from service following two successive "unsatisfactory" performance evaluations. Both of these "unsatisfactory" performance evaluations were done by Beth Weinstein, and plaintiff was removed from state service based on these two successive "unsatisfactory" performance evaluations. (See Plaintiff Exhibit 30).

56. Deny. The AIDS Division of the DPH in which the plaintiff worked, moved from 21 Grand Street to its current location at 410 Capitol Avenue, in Hartford, Connecticut on March 31, 1996. (See Plaintiff's Exhibit 35- Affidavit of Tom Carson). Following the move to Capitol Avenue by the AIDS Division, plaintiff filed an internal DPH complaint with Agency Personnel Officer, Tom Carson regarding the improper disposal of state surplus furniture outside of the agency. (See Plaintiff's Exhibit 16[A, B, C]). Beth Weinstein, Claudio Santoro and Ann McLendon were named in this Whistleblower complaint filed by plaintiff in or around April, 1996. In September 1996, Plaintiff was not evaluated by her immediate supervisor on her 1995-96 (Rating Period 10/1/95 to 9/30/96) employment evaluation, and plaintiff was not evaluated by her co-supervisor, Claudio Santoro, both individuals whom plaintiff worked directly for. Whilst the evaluation may not have been signed by McLendon because of a death in her family, Plaintiff's co-supervisor, Claudio Santoro should have signed the evaluation. Plaintiff was directly supervised by Mr. Santoro, and there has been no reason proffered for why Weinstein did not have Santoro complete Plaintiff's

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

evaluation. Plaintiff was evaluated by Beth Weinstein, who was two to three levels removed from direct supervision of plaintiff. (See Plaintiff's Exhibit 30[A]) There was no indication that Weinstein was in a position to rate the Plaintiff's performance because she had not been the direct supervisor during the evaluation period. In fact, Santoro had been the supervisory person closest to the plaintiff and had been monitoring her throughout the year as evidenced by his memos to her on various issues.(See Plaintiff's Exhibit 30[B]   Plaintiff was removed from service following two successive "unsatisfactory" performance evaluations. Both of these "unsatisfactory" performance evaluations were done by Beth Weinstein, and plaintiff was removed from state service based on these two successive "unsatisfactory" performance evaluations. (See Plaintiff Exhibit 30). It is both reasonable and plausible to believe that Beth Weinstein retaliated against plaintiff following a Whistleblower complaint made by plaintiff in or around April 1996, naming Weinstein, Santoro and McLendon for improperly disposing of surplus State furniture outside of the agency, in violation of agency regulations. (Plaintiff's Deposition p. 84, lines 4-10 – Plaintiff's deposition is annexed as "X" ).

57. Deny. Plaintiff was being retaliated against by Beth Weinstein for all of the reasons stated above. In April 1996, plaintiff filed an internal DPH complaint with Agency Personnel Officer, Tom Wierbonics regarding the improper disposal of state surplus furniture outside of the agency. (See Plaintiff's Exhibit 16[A,B,C]). Beth Weinstein, Claudio Santoro and Ann McLendon were named in

28

this Whistleblower complaint filed by plaintiff in or around April, 1996. In September 1996, Plaintiff was not evaluated by her immediate supervisor on her 1995-96 (Rating Period 10/1/95 to 9/30/96) employment evaluation, and plaintiff was not evaluated by her co-supervisor, Claudio Santoro, both individuals whom plaintiff worked directly for. Whilst the evaluation may not have been signed by McLendon because of a death in her family, Plaintiff's co-supervisor, Claudio Santoro should have signed the evaluation. Plaintiff was directly supervised by Mr. Santoro, and there has been no reason proffered for why Weinstein did not have Santoro complete Plaintiff's evaluation. (See Plaintiff's Exhibit 30[B]) Plaintiff was evaluated by Beth Weinstein, who was two to three levels removed from direct supervision of plaintiff. There was no indication that Weinstein was in a position to rate the Plaintiff's performance because she had not been the direct supervisor during the evaluation period. In fact, Santoro had been the supervisory person closest to the plaintiff and had been monitoring her throughout the year as evidenced by his memos to her on various issues. Plaintiff was removed from service following two successive "unsatisfactory" performance evaluations. (See Plaintiff's Exhibit 30[A]) Both of these "unsatisfactory" performance evaluations were done by Beth Weinstein, and plaintiff was removed from state service based on these two successive "unsatisfactory" performance evaluations. It is both reasonable and plausible to believe that Beth Weinstein retaliated against plaintiff following a Whistleblower complaint made by plaintiff in or around April 1996, naming Weinstein, Santoro and McLendon for improperly disposing of surplus

29

State furniture outside of the agency, in violation of agency regulations. (Plaintiff's Deposition p. 84, lines 4-10 – Plaintiff's deposition is annexed as "X" ). Any evaluation by Beth Weinstein of plaintiff, which varies significantly from all of her former evaluations since her employment with the State, can, and must be viewed as an attempt by Weinstein to terminate plaintiff from her position in retaliation for filing a Whistleblower complaint, and filing several other complaints against management. (See Plaintiff's Exhibit 13)

58. Deny. Plaintiff returned from her medical leave of absence on January 3, 1997. (Plaintiff's Exhibit 36). It can be fair and reasonable to believe that Beth Weinstein was continuing to retaliate against Plaintiff for filing and internal Whistleblower complaint against her on or around April 1996. Plaintiff does not disagree that Weinstein gave her a memorandum entitled "Behavior Expectations," however, plaintiff considers this memorandum, and others like it, as evidence of retaliation on the part of Beth Weinstein for plaintiff engaging in protected activity. (Filing of a Whistleblower complaint, and filing of several internal and external employment discrimination complaints against Weinstein. (See Plaintiff's Exhibit 43)

59. Deny. Plaintiff denies the validity of Weinstein's disciplinary actions, particularly since Weinstein was named as a defendant in a Whistleblower complaint made by plaintiff. (See Plaintiff's Exhibit 13)

60. Deny. All Weinstein's claims and actions must be taken with an eye towards the likelihood of Weinstein retaliating against plaintiff following her filing of a

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

Whistleblower complaint. Plaintiff reported this incident to Tom Wierbonics, her union and the state auditors. Plaintiff appeared on a Channel 30 news program with news commentator, Lew Brown (Plaintiff's deposition p. 91-99 – Plaintiff's deposition is annexed as "X" ). (See Plaintiff's Exhibit 20)

61. Deny. Plaintiff believes that she was treated differently than other similarly situated co-workers, in that she was singled out in front of the entire staff and reprimanded for a behavior that others in the AIDS Division engage in on a regular basis. Plaintiff stated in a June 2, 1997 memo to Beth Weinstein regarding a public reprimand relative to plaintiff arriving late to the job. Plaintiff stated "I felt that you threatened me and singled me out from the entire staff in the AIDS Division, that are either late or that leave early on a regular basis." (Plaintiff's Exhibit 37). Further, Weinstein again alluded to Plaintiff's "tone of voice." Ms. Weinstein, herself, requested that plaintiff see a physician to have her hearing checked because of the loudness of her voice. Plaintiff went to see Dr. Hameroff , her physician, who referred her to The Connecticut Ear, Nose & Throat Associates, P.C.. Plaintiff had her hearing tested on October 13, 1997 as a part of an Ear, Nose and Throat evaluation. In this evaluation, Dr. Richard Lessow, M.D., stated that "Mrs. Barlow is concerned about hearing loss, and has had a history of tinnitus in both ears and itching of her ears….An Audiogram revealed a drop in her left ear at 8000 Hertz to 45 dB." This examination indicated that there is hearing loss. It is reasonable to believe that hearing loss

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

contributes to the loud tone of voice in which the plaintiff communicates. (See Plaintiff's Exhibit 6).

62. Deny.  Plaintiff never stated she swore at Christine Parker, and further plaintiff produced a witness to that event, by the name of Debbie Garrett, who works in tumor registry.  (Plaintiff's Deposition p. 321 and 322 – Plaintiff's deposition is annexed as "X" ). (See Plaintiff's Exhibit 38)

63. Deny.  Plaintiff had a hearing problem that was not documented until late in her career.  Beth Weinstein required plaintiff to see a physician for the purpose of determining whether plaintiff had a hearing problem because of the loud tone of her voice.   Upon evaluation by an ear, nose and throat specialist, it was determined that plaintiff did, in fact, have hearing loss. (See Plaintiff's Exhibit 6[B]).

64. Deny.  Beth Weinstein was on a mission to progressively discipline plaintiff and to personally terminate her from state employment.  Plaintiff is now approaching her second written evaluation, which will provide Ms. Weinstein with an opportunity to terminate plaintiff.  At this point in time, plaintiff has filed several discrimination complaints against Weinstein and others, filed a Whistleblower complaint against Weinstein, McLendon and Santoro, and continued to complain about the discriminatory and retaliatory treatment she was receiving from the defendants. (See Plaintiff's Exhibit 14)  Plaintiff personally detailed the following incidents of harassment in her workplace.  Plaintiff was demoted to position of a "floater" who worked for anyone in the various departments who needed her

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)  (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

assistance. She was written up by a variety of people who had her under surveillance, and who based on the hostile work environment plaintiff was working within, felt free to both target plaintiff, and to write her up. This included being written up by a woman by the name of Nancy Berger, who plaintiff claims made a false statement relative to an alleged interaction they had. (Plaintiff's Deposition p. 236 – Plaintiff's deposition is annexed as "X" ). Plaintiff was also charged with an argument with a Christine Parker in the workplace. (See Plaintiff's Exhibit 38) Plaintiff states she has never had an argument with this individual. Plaintiff was asked whether Linda Tromley had ever made complaints about plaintiff being loud on the phone. She stated that no such discussion ever took place between, and they were best of friends. (Plaintiff's Deposition p. 238 – Plaintiff's deposition is annexed as "X" ). Relative to Plaintiff's 1995-96 employee evaluation, this document was supposed to have been changed by Tom Carson in Personnel based on claims made to her by her union, because the individual who supervised her did not sign this evaluation. Plaintiff claimed that this evaluation should not have been in her file. (Plaintiff's Deposition p. 239 – Plaintiff's deposition is annexed as "X" ). (See Plaintiff's Exhibit 30[A]) The 1996 evaluation was in arbitration, and an appeal is pending because the arbitration findings were not filed in a timely manner. According to plaintiff, there is no decision on this 1996 evaluation as yet. (Plaintiff's Deposition p. 240 – Plaintiff's deposition is annexed as "X" ). Plaintiff stated that another form of harassment was that she received a letter removing her work

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

duties. (Plaintiff's Deposition p. 241 – Plaintiff's deposition is annexed as "X" ). The memo written by Beth Weinstein took a substantial amount of Plaintiff's job duties. Plaintiff received this letter when she returned from her medical leave. It was also in this correspondence, that Beth Weinstein advised plaintiff that she will be reporting directly to her. (Plaintiff's Deposition p. 242 – Plaintiff's deposition is annexed as "X" ). Plaintiff's new job duties were faxing, answering the telephones and some filing. (Plaintiff's Deposition p. 243 – Plaintiff's deposition is annexed as "X" ). Plaintiff was assigned to do work for other departments by Beth Weinstein. (See Plaintiff's Exhibit 4[B]) She had to stand in front of the STD shredder with a big black plastic bag, a broom and a dust pan, and shred double forms all day. She was also referred to as a "floater", and she was responsible for doing the work the other departments assigned her to do. Plaintiff had to do things like change and clean out file cabinets, and convert the old files to new files. She helped another section with some bills that had to be done through the business office by the end of the fiscal year, that were left by an employee who was terminated. (Plaintiff's Deposition p. 244 – Plaintiff's deposition is annexed as "X"). After plaintiff returned from her nervous breakdown, until she was terminated, she worked as a floater, and answered the telephones. (See Plaintiff's Exhibit 5[C] Plaintiff's job duties she had when she was with the AIDS division were taken away from her after the move to Capitol Avenue. (Plaintiff's Deposition p. 245 – Plaintiff's deposition is annexed as "X"). When plaintiff came back from her nervous breakdown in January 1997, the job

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

duties that she had while working at the AIDS program were taken away. This happened when she got the memo at the meeting on the day she returned to work. (Plaintiff's Deposition pp. 246-247 – Plaintiff's deposition is annexed as "X"). Around 9:00 a.m. on the day that plaintiff returned from medical leave from her nervous breakdown, Beth Weinstein went to Plaintiff's desk and told her she wanted to see her in her office at 9:00 O'clock. (Plaintiff's Deposition p. 247 – Plaintiff's deposition is annexed as "X"). Plaintiff attended the meeting, and was handed a memo stating that she would do nothing but fax, Xerox, and answer the phones, and that Beth Weinstein would be Plaintiff's supervisor until she could find someone to supervise plaintiff. Soon thereafter, plaintiff noticed that she wasn't getting any work. (See Plaintiff's Exhibit 5[C]) Then she began receiving memos that she was going to be a "floater." She could no longer take messages for people that wanted pamphlets, posters, things that plaintiff had been doing for years and years. Those responsibilities would now be handled by Chris Andersen. (Plaintiff's Deposition p. 248 – Plaintiff's deposition is annexed as "X" ). When plaintiff took a break to get a coffee, there would be memos on her desk that it was not her coffee break time. If she went to the credit union with Beth Weinstein's administrative assistant, if plaintiff exceeded fifteen minutes, she would get a memo on her disk that she had exceeded over her break time, and Beth Weinstein's administrative assistant would not get such a memo on her desk. (See Plaintiff's Exhibit 36) and (Plaintiff's Deposition p. 249 – Plaintiff's deposition is annexed as "X" ). Plaintiff's desk was changed to the back office.

35

The reason given to plaintiff for this move was that it was closer to her [Weinstein's] office so that she could keep an eye on plaintiff. (Plaintiff's Deposition p. 250 – Plaintiff's deposition is annexed as "X" ).   Plaintiff felt that she was isolated. (See Plaintiff's Exhibit 5[C])   When Sue Murray, Weinstein's secretary was leaving to go to a different department, plaintiff got up early, fried chicken prepared food, and made a salad for the party, she was told by Kathy McGovern and then Beth Weinstein that she could not attend the luncheon because there was no phone coverage.   The temp worker was able to sit in the luncheon, and plaintiff missed the whole party.   (Plaintiff's Deposition p. 251 – Plaintiff's deposition is annexed as "X" ).   Plaintiff's good friend by the name of Clint Roberts was at Plaintiff's desk one day.   Someone claimed that they heard the plaintiff and Mr. Roberts arguing at her desk.   Beth Weinstein walked over to Plaintiff's desk and said they want to see you in personnel.   Weinstein stated it was about Clinton Roberts.   Plaintiff said Clinton Roberts was also called to Personnel, and asked did he want to complain about plaintiff.   He called plaintiff and told her he had been called to personnel, and asked if he wanted to complain about plaintiff. (Plaintiff's Deposition p. 252 – Plaintiff's deposition is annexed as "X" ).   People reported to plaintiff that there was a mandatory meeting in Personnel about plaintiff.   People were allegedly asked to sign statements that said they were afraid of plaintiff. (Plaintiff's Deposition p. 253 -- Plaintiff's deposition is annexed as "X" ).   Temp workers reported to plaintiff that they were warned not to associate with plaintiff, not to give plaintiff any work and not to ask

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

plaintiff to help them do any work. (Plaintiff's Deposition p. 254 – Plaintiff's deposition is annexed as "X" ). (See Plaintiff's Exhibit 41) Weinstein would hold meetings with plaintiff, and refuse to allow her to be represented by her union. (Plaintiff's Deposition p. 255 – Plaintiff's deposition is annexed as "X" ). Plaintiff states "It's just been a lot of harassment.  Plaintiff was yelled at by Beth Weinstein in the presence of other staff members. (See Plaintiff's Exhibit 43) Plaintiff's desk was placed in the corner, and plaintiff was relegated to answering phones all day, and looking for someone to cover when she had to go to the bathroom.( Plaintiff's Deposition p. 256 – Plaintiff's deposition is annexed as "X" ). Plaintiff considered another form of harassment was the fact that six permanent secretaries all had phones on their desk, but plaintiff was expected to answer the lines for all six sections. (See Plaintiff's Exhibit 4[C])  (Plaintiff's Deposition p. 257 – Plaintiff's deposition is annexed as "X" ).  Plaintiff considered disciplinary memos that she received when she came back from medical leave, and a poor annual evaluation to be additional forms of harassment. (Plaintiff's Deposition p. 258 – Plaintiff's deposition is annexed as "X" ). (See Plaintiff's Exhibit 22) Beth Weinstein's attitude changed totally upon Plaintiff's return from her breakdown. (Plaintiff's Deposition p. 259 – Plaintiff's deposition is annexed as "X" ).  Plaintiff had an appointment at the Commission on Human Rights and Opportunities. When plaintiff arrived back from her appointment, she found a memo on her desk asking what time I got to the Commission, what time I left, and who did I see? (Plaintiff's Deposition p. 261 – Plaintiff's deposition is annexed as "X" ). (See

37

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

Plaintiff's Exhibit 18) Plaintiff was harassed with constant memos. (Plaintiff's Deposition p. 263 – Plaintiff's deposition is annexed as "X" ). (See Plaintiff's Exhibit 42 and 43) Plaintiff received memos about lengthy coffee breaks (even when this was not the case), eating at her desk, staying too long at the credit union, etc. (Plaintiff's Deposition p. 265 – Plaintiff's deposition is annexed as "X" ). Other people in the unit took long breaks and were not disciplined (Plaintiff's Deposition p. 267 – Plaintiff's deposition is annexed as "X" ). (See Plaintiff's Exhibit 43) Plaintiff received memos regarding eating at her desk. Everyone in the department ate breakfast at their desk, and there were trays all over the department. (Plaintiff's Deposition p. 269 – Plaintiff's deposition is annexed as "X" ). Plaintiff was told that she was not allowed to be a blood drive coordinator for the American Red Cross blood drive. (Plaintiff's Deposition p. 270 – Plaintiff's deposition is annexed as "X" ). (See Plaintiff's Exhibit 48) Betty Burns, the deputy commissioner sent plaintiff a memo that said she could not coordinate the blood drive this year. (See Plaintiff's Exhibit 48)(Plaintiff's Deposition p. 271 – Plaintiff's deposition is annexed as "X" ). The attitude of those who changed towards plaintiff included Beth Weinstein; Dorine Testori; Claudio Santoro. In general, people weren't talking to plaintiff like they used to.  (Plaintiff's Deposition p. 276 – Plaintiff's deposition is annexed as "X" ). People would tell plaintiff that Beth Weinstein was discussing her in Core Staff Meetings. (Plaintiff's Deposition p. 277 – Plaintiff's deposition is annexed as "X" ). Plaintiff stated that Carol Anderson told her after a meeting with Beth Weinstein and

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)  (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

others, that they were giving the PPT upward mobility position to Dorine Testori. (Plaintiff's Deposition p. 279 – Plaintiff's deposition is annexed as "X" ).  This was especially damaging to Plaintiff when Ann McLendon and Claudio Santoro knew very well and noted Plaintiff's attempts to move up in her career by their comment "…candidate (Plaintiff) strongly desires advancement" dated August 5, 1996.  This document was signed by Ann McLendon and Claudio Santoro (See Plaintiff's Exhibit 48)   Temporary workers were told not to associate with plaintiff.  (Plaintiff's Deposition p. 280 – Plaintiff's deposition is annexed as "X" ).   Beth Weinstein told Becky Ann Smith not to give any work to plaintiff (Plaintiff's Deposition p. 281 – Plaintiff's deposition is annexed as "X" ).  Idalia Sanchez said that Beth Weinstein told her that plaintiff was a problem. (Plaintiff's Deposition p. 282 – Plaintiff's deposition is annexed as "X" ).  Melissa Acie told plaintiff that she was told not to associate with Aurice Barlow (Plaintiff's Deposition p. 283 – Plaintiff's deposition is annexed as "X" ).  Beth Weinstein told people in the Core Staff meetings not to associate with plaintiff. (Plaintiff's Deposition p. 284 – Plaintiff's deposition is annexed as "X" ).  People documented that Beth Weinstein told them not to associate with plaintiff in affidavits.  Some of these individuals included Idalia Sanchez, Carol Anderson and Mariano Ortiz. (Plaintiff's Deposition p. 286 – Plaintiff's deposition is annexed as "X" ). (See Plaintiff's Exhibit 41)  Jeff Scott was another one who was in attendance at the staff meeting where Beth Weinstein told everyone in the meeting not to associate with plaintiff. (Plaintiff's Deposition p. 287 – Plaintiff's deposition is annexed as

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

"X" ). The reason given at the staff meeting in question for staff not to associate with plaintiff was that plaintiff was under disciplinary actions. This was told to plaintiff by the temp workers. Those temps who provided information to plaintiff were Becky Ann Smith; Melissa Acie-Dunne; Jenda Fauteux; Shayna Harrison who works for Chris Parker, and Chris Parker. (Plaintiff's Deposition p. 288 – Plaintiff's deposition is annexed as "X" ). Another form of harassment was excluding plaintiff from staff meetings. She was told by Beth Weinstein, Claudio Santoro, and Ann McLendon that she could not attend staff meetings. Plaintiff was made to answer the phones while the staff meeting took place. (See Plaintiff's Exhibit 5[C]) (Plaintiff's Deposition p. 289 – Plaintiff's deposition is annexed as "X" ). The last Core Staff Meeting that plaintiff attended was when Ann McLendon got up and cheerfully announced that plaintiff would not any longer, be the PPT trainee. Plaintiff would now be an information clerk. McLendon then presented plaintiff with a box of information clerk cards in front of the whole staff. Plaintiff felt demeaned, raised her hand, and told McLendon that this was very demeaning to demote her in front of the entire staff from an AIDS education assistant to an information clerk. (Plaintiff's Deposition p. 290 – Plaintiff's deposition is annexed as "X" ). Plaintiff felt that this was meant to hurt her feelings, and to demean her, because everyone knew she was training for the pre-professional trainee position. (Plaintiff's Deposition p. 291 – Plaintiff's deposition is annexed as "X" ). (See Plaintiff's Exhibit 3[A-H]) It was also announced in another staff meeting that Dorine Testori would no longer be a Secretary I, she

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

would be a PPT. (Plaintiff's Deposition p. 292 – Plaintiff's deposition is annexed as "X" ).   On May 10, 2000, after plaintiff was terminated from her position at DPH, a memorandum was sent out by Beth Weinstein that stated that there would be a mandatory meeting in Personnel, Human Resources at 10:00 a.m.  about the plaintiff.  This memo was addressed to the AIDS division.  During the meeting, participants were asked if they were afraid of the plaintiff, and people in this meeting were told that if they were afraid for their life, their children or their welfare, they could write letters stating this.  There was a second meeting where the plaintiff was also the topic of discussion.   This meeting was scheduled verbally by Tom Carson and Beth Weinstein.  It was also after plaintiff was terminated, but during the time when the CHRO hearings and investigations were taking place.  There was a list of names that came out of this meeting that was presented to CHRO.  (Plaintiff's Deposition pp. 297-299 – Plaintiff's deposition is annexed as "X" ). (See Plaintiff's Exhibit 41)  During one of these meetings, Plaintiff's mental state was discussed, the fact that she was perceived as being a threat; a troublemaker and disrupting the department.  Employees were told that if anyone wanted to write anything about plaintiff, this was the opportunity for them to do so.  This was told to plaintiff by Mariano Ortiz; Brenda Delgado; Vivian Riera and other people in the department. (Plaintiff's Deposition p. 300 – Plaintiff's deposition is annexed as "X" ). (See Plaintiff's Exhibit 42) Melissa Acie was punished for associating with plaintiff. She was let go after eight months. (Plaintiff's Deposition p. 304 – Plaintiff's deposition is annexed as "X" ).  Plaintiff

41

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

stated that Beth Weinstein didn't want anyone associating with plaintiff. They wanted plaintiff isolated. (Plaintiff's Deposition p. 305 – Plaintiff's deposition is annexed as "X" ). Jenda Fauteux also had her assignment terminated, and they replaced her with another temp by the name of Melissa. (Plaintiff's Deposition p. 306 – Plaintiff's deposition is annexed as "X" ). (See Plaintiff's Exhibit 50) Another form of harassment included refusing to let plaintiff have a union rep at meetings. Beth Weinstein sent e-mails that stated that plaintiff could not have a union rep at particular meetings, and Tom Carson said that union representation would not be acceptable at a meeting to discuss a grievance. The day when they announced the fact that plaintiff would now be an Information Clerk, plaintiff had requested a union representative be present, and Beth Weinstein and Ann McLendon told her it was not necessary for her to have a union rep there. Plaintiff was also disciplined at that meeting. She was given at least two memos that would be considered disciplinary memos. (See Plaintiff's Exhibits 36 and 37) (Plaintiff's Deposition pp. 310-311 – Plaintiff's deposition is annexed as "X" ). When the AIDS division moved to 410 Washington Street, Maryann , who had a disability, used to sit directly behind the plaintiff. One day plaintiff came in and her area was cleaned out. I found her and asked her was she okay. I told her she didn't tell me she was moving. She said it was a surprise to her too. She was asked was the plaintiff disturbing her, and she told them no, but they mover her desk anyway. Maryanne told plaintiff that she didn't complain about plaintiff, and that they were still friends. (Plaintiff's Deposition pp. 318-319 – Plaintiff's

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

deposition is annexed as "X" ).  Contractors were also told not to request any

services from plaintiff.  All Plaintiff's duties to contractors had been given to

Chris Andersen. (Plaintiff's Deposition p. 320 – Plaintiff's deposition is annexed

as "X" ).  Plaintiff's 1996-97 evaluation was contested by plaintiff, and there were

two memos regarding this evaluation, which was supposed to be changed.  It had

been challenged by the union, and it was not supposed to appear in her personnel

file. (Plaintiff's Deposition p. 331 – Plaintiff's deposition is annexed as "X" ).  The

section in the 1996-97 evaluation, under attendance was incorrect. (See Plaintiff's

Exhibit  10) (Plaintiff's Deposition p. 332 – Plaintiff's deposition is annexed as

"X" ).  Plaintiff was also singled out in front of the entire staff for her attendance.

This entire staff has a liberal attendance policy, and many of them either come in

late or leave before their regular time.   None of these individuals received

disciplinary action if they were late. The names of the people who came in late or

left before their regular time include Helen Ann McLendon, Dr. Richard

Melchreit, Kathy McGovern, Chris Andersen, Mariano Ortiz, Claudio Santoro,

Vivian Riera Lanteen and Gwendolyn Lewis. None of these people received

memos or disciplinary action if they were late.  (Plaintiff's Deposition pp. 339-

340 – Plaintiff's deposition is annexed as "X" ). (See Plaintiff's Exhibit 10)  A

large percentage of the complaints against plaintiff, have to do with the loudness

of her voice.  Beth Weinstein requested that plaintiff have a hearing test, plaintiff

did, and plaintiff was identified by her physician as having hearing loss.  (See

Plaintiff's Exhibit 6[A, B]).  It is reasonable to believe that hearing loss can and

43
Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

would result in the plaintiff speaking too loudly for an open work environment without the benefit of walls and closed off offices with doors. The loudness of her voice is the basis of many complaints from both management and co-workers. This is a disability, which plaintiff was unaware of until she was instructed by Ms. Weinstein to see a doctor to determine if she had a hearing problem. (See Plaintiff's Exhibit 6[A,B]).

65. Admit.

66. Deny. Based on the totality of the circumstances, in consideration of the many complaints brought to the attention of management, and the many documented abuses of plaintiff, it is clear that both discrimination and retaliation played a role in every step of Plaintiff's discipline. (See Plaintiff's Exhibit 14) Further, plaintiff filed a CHRO complaint on August 12, 1996, and there was a cause finding by CHRO. (See Plaintiff's Exhibit 18).

67. Deny. Plaintiff denies any such actions, and will produce witnesses to refute this.

68. Admit.

69. Admit in part, deny in part. Plaintiff admits that she worked one day in the Lab. Plaintiff has a medical certificate from the Workers' Compensation Commission of Connecticut—Waiver on Account of Physical Defect. (Plaintiff's Exhibit 39). This certificate states that Plaintiff has asthma. The air quality in the Lab had an adverse affect on Plaintiff's asthmatic condition. The transfer to the Lab was a voluntary assignment to the data entry unit at the Lab. It was agreed that this would be a voluntary assignment on a trial basis for a two week period. Further,

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

it was agreed that plaintiff, or Cathy Hawkins could choose to terminate this agreement during the trial period. Plaintiff chose to terminate this agreement during the trial period. (Plaintiff's Exhibit 40)

70. Deny. Plaintiff's 1996-97 evaluation was contested by plaintiff, and there were two memos regarding this evaluation, which was supposed to be changed. It had been challenged by the union, and it was not supposed to appear in her personnel file. (Plaintiff's Deposition p. 331 – Plaintiff's deposition is annexed as "X" ). (See Plaintiff's Exhibit 20)  The section in the 1996-97 evaluation, under attendance was incorrect. (Plaintiff's Deposition p. 332 – Plaintiff's deposition is annexed as "X" ).    Plaintiff was removed from service following two successive "unsatisfactory" performance evaluations.    Both of these "unsatisfactory" performance evaluations were done by Beth Weinstein, and plaintiff was removed from state service based on these two successive "unsatisfactory" performance evaluations. (See Plaintiff's Exhibit 30[A]) It is both reasonable and plausible to believe that Beth Weinstein retaliated against plaintiff following a Whistleblower complaint made by plaintiff in or around April 1996, naming Weinstein, Santoro and McLendon for improperly disposing of surplus State furniture outside of the agency, in violation of agency regulations.  (Plaintiff's Deposition p. 84, lines 4-10 – Plaintiff's deposition is annexed as "X" ).  Any evaluation by Beth Weinstein of plaintiff, which varies significantly from all of her former evaluations since her employment with the State, can, and must be viewed as an attempt by Weinstein to terminate plaintiff from her position in retaliation for filing a Whistleblower

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

complaint, and filing several other employment discrimination and retaliation complaints against management. (See Plaintiff's Exhibit 2, 3[A], 5A] and 7) Plaintiff filed a discrimination complaint with Thomasina Carr, the DPH's Affirmative Action Officer, on or about August 25, 1997. This complaint alleged racial discrimination and retaliation. Weinstein used the 1996-97 employment evaluation process to further discriminate and retaliate against plaintiff, and to bring to closure, Plaintiff's termination from state government.

71. Deny. Plaintiff's 1996-97 evaluation was contested by plaintiff, and there were two memos regarding this evaluation, which was supposed to be changed. It had been challenged by the union, and it was not supposed to appear in her personnel file. (See Plaintiff's Exhibit  20) (Plaintiff's Deposition p. 331 – Plaintiff's deposition is annexed as "X" ). The section in the 1996-97 evaluation, under attendance was incorrect. (Plaintiff's Deposition p. 332 – Plaintiff's deposition is annexed as "X" ). Plaintiff was removed from service following two successive "unsatisfactory" performance evaluations.  Both of these "unsatisfactory" performance evaluations were done by Beth Weinstein, and plaintiff was removed from state service based on these two successive "unsatisfactory" performance evaluations.  Weinstein was waiting to complete a third evaluation of plaintiff because the first one she completed was under protest and contested by the union, based on the fact that Weinstein did not directly supervise plaintiff for any part of the time during the period of the first employment evaluation completed on plaintiff by Weinstein. (See Plaintiff's Exhibit 30[B], [C]) Weinstein needed

46

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

another evaluation where she directly supervised plaintiff to ensure that Plaintiff's termination could not be challenged.

72. Deny.  Plaintiff invariably spoke in a loud voice when in the workplace.  On or around October 13, 1997, at the request of her then supervisor, Beth Weinstein, Plaintiff had a hearing test, which showed that she had tinnitus in both ears, chronic hay fever related symptoms, nasal congestion, a deviated septum to the left, and turpinate hypertrophy.  An Audiogram revealed a drop in her left ear at 8000 Hertz to 45dB, indicating significant hearing loss.  As Beth Weinstein had suspected, Plaintiff did, in fact, have a hearing loss, which was likely the cause of her loud talking, a disability, which the employer was aware of.  (Plaintiff's Exhibit 6[B, C]).

73. Deny. Plaintiff stated that another form of harassment was that she received a letter removing her work duties.  (Plaintiff's Deposition p. 241 – Plaintiff's deposition is annexed as "X" ).  The memo written by Beth Weinstein took a substantial amount of Plaintiff's job duties.  Plaintiff received this letter when she returned from her medical leave. (See Plaintiff's Exhibit 22) It was also in this correspondence, that Beth Weinstein advised plaintiff that she will be reporting directly to her.  (Plaintiff's Deposition p. 242 – Plaintiff's deposition is annexed as "X" ).  Plaintiff's new job duties were faxing, answering the telephones and some filing. (Plaintiff's Deposition p. 243 – Plaintiff's deposition is annexed as "X" ).  Plaintiff was assigned to do work for other departments by Beth Weinstein.  She had to stand in front of the STD shredder with a big black plastic bag, a broom

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)  (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

and a dust pan, and shred double forms all day. She was also referred to as a "floater", and she was responsible for doing the work the other departments assigned her to do. Plaintiff had to do things like change and clean out file cabinets, and convert the old files to new files. She helped another section with some bills that had to be done through the business office by the end of the fiscal year, that were left by an employee who was terminated. (Plaintiff's Deposition p. 244 – Plaintiff's deposition is annexed as "X" ) (See Plaintiff's Exhibit 4[B]. [C]) After plaintiff returned from her nervous breakdown, until she was terminated, she worked as a floater, and answered the telephones. Plaintiff's job duties she had when she was with the AIDS division were taken away from her after the move to Capitol Avenue. (Plaintiff's Deposition p. 245 – Plaintiff's deposition is annexed as "X" ). (See Plaintiff's Exhibit 20) When Plaintiff came back from her nervous breakdown in January 1997, the job duties that she had while working at the AIDS program were taken away. This happened when she got the memo at the meeting on the day she returned to work. (Plaintiff's Deposition pp. 246-247 – Plaintiff's deposition is annexed as "X" ).     Around 9:00 a.m. on the day that plaintiff returned from medical leave from her nervous breakdown, Beth Weinstein went to Plaintiff's desk and told her she wanted to see her in her office at 9:00 O'clock. (Plaintiff's Deposition p. 247 – Plaintiff's deposition is annexed as "X" ).  Plaintiff attended the meeting, and was handed a memo stating that she would do nothing but fax, Xerox, and answer the phones, and that Beth Weinstein would be Plaintiff's supervisor until she could find someone to supervise plaintiff.

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

Soon thereafter, plaintiff noticed that she wasn't getting any work. Then she began receiving memos that she was going to be a "floater." She could no longer take messages for people that wanted pamphlets, posters, things that plaintiff had been doing for years and years. Those responsibilities would now be handled by Chris Andersen. (Plaintiff's Deposition p. 248 – Plaintiff's deposition is annexed as "X" ). (See Plaintiff's Exhibit 30[B], [C])

74. Deny. The attendance issue is being used as pretext to terminate plaintiff for engaging in protected activity. On and around September 17, 1998, plaintiff was working at that point in time, in an extremely hostile work environment. She was faced with daily harassment, had had her core job responsibilities taken away from her, experienced humiliation and demotion in the presence of co-workers and peers, and was being documented for termination by her now immediate supervisor, Beth Weinstein. (See Plaintiff's Exhibit 42) From 1988 through 1996 plaintiff suffered religious harassment, with no relief or assistance from management. Plaintiff complained both internally and externally regarding the issue of religious harassment. (Plaintiff's Deposition p. 231, lines 15-25 – Plaintiff's deposition is annexed as "X" VI). (See Plaintiff's Exhibit 8) Thomasina Carr, DPH's Affirmative Action Officer investigated Plaintiff's CHRO complaint No. 9710073. Respondent's answer was filed 10/7/96. CHRO complaint was filed on August 12, 1996, and plaintiff was reclassified to an Office Assistant effective on August 19, 1994. While CHRO dismissed this complaint, this was not the only complaint filed by plaintiff. The afore referenced complaint was

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

filed by plaintiff against Ann McLendon for religious harassment. This complaint was dismissed by CHRO, and shortly after that filing, plaintiff received two memos. One was regarding her arrival time and the other was a denial to participate in a charity basketball game. (See Plaintiff's Exhibit 21) Plaintiff suffered a nervous breakdown and was on medical leave until January 3, 1997, under a physician's care. Plaintiff's September/October paychecks were withheld and were not mailed to her until late December. She received calls from the Commissioner, Beth Weinstein, Tom Carson, Payroll Supervisor (Barbara Schiffert) and others regarding payroll and insurance issues, in addition to wanting to know when she would be returning to work. These calls added to the stressful situation and the harassment. Ms. Barlow found herself in as a result of her hostile and intolerable work environment. (See Plaintiff's Exhibit 22) Plaintiff filed a complaint with Agency Personnel Officer Tom Carson regarding the improper disposal of State surplus furniture (See Plaintiff's Exhibit . She specifically named Beth Weinstein, Ann McLendon and Claudio Santoro as being involved in that activity. Hearing nothing regarding the status of her complaint after almost two years, plaintiff submitted a complaint on the same issue to the State Auditor's and Attorney General's offices on June 4, 1998 (See Plaintiff's Exhibit 20). As a result of these and other actions by plaintiff, she suffered numerous adverse employment actions. (See Plaintiff's Exhibit 15[A] and [B]). These were in the form of discipline, denial of promotion to a PPT position, withholding of paychecks while she was out on medical leave, the inability to

50

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

attend office/social functions and close surveillance of her work hours and other activities. (See Plaintiff's Exhibit After the move to Capitol Avenue in April 1996 there was a noticeable difference in the way that plaintiff was treated in the office and this intensified after she filed her CHRO complaint in August 1996. (See Plaintiff's Exhibit 8) Weinstein was not Plaintiff's direct supervisor when she completed the 1995-96 employee performance evaluation. She was three levels removed from the supervisory designation. The fact that Plaintiff's immediate supervisor, Ann McLendon was out on funeral leave still left Mr. Santoro as the closest supervisory person to plaintiff during this rating period. He should have prepared her evaluation. (See Plaintiff's Exhibit 30[B]) Instead Ms. Weinstein used this opportunity to begin to move toward the goal of removing plaintiff from state employment. The agency chose not to follow the progressive discipline policy, and the plaintiff suffered the wrath of agency management members and was dismissed on November 10, 1998. (See Plaintiff's Exhibit 23).

75. Deny. All Weinstein's claims and actions must be taken with an eye towards the likelihood of Weinstein retaliating against plaintiff following her filing of a Whistleblower complaint and numerous discrimination and retaliation complaints. (See Plaintiff's Exhibit 14) Not one mention of loud or rude behavior was documented or reported to Plaintiff's supervisors from the public sector although numerous telephone calls would be answered as part of Plaintiff's assignment. (See Plaintiff's Exhibit 1[A]) Plaintiff has numerous positive character witness statements from many who worked with Plaintiff (See Plaintiff Exhibit 41)

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

However, Weinstein has demonstrated a pattern of using other staff members, both inside of the department and outside of the department to document plaintiff, with the goal of giving plaintiff a second and possibly a third "unsatisfactory" evaluation. (See Plaintiff's Exhibit 42). Weinstein has even gone as far as to advise others to join her in her discriminatory actions against Plaintiff (See Plaintiff's Exhibit 43) Weinstein personally knew that plaintiff had a hearing disability (See Plaintiff's Exhibit 6). Weinstein also knew that plaintiff had a psychological breakdown at work, and that she was extremely susceptible to her work environment, which was now, very hostile towards the plaintiff. (Plaintiff's Deposition p. 174-176 -- Plaintiff's deposition is annexed as "X" ). (See Plaintiff's Exhibit 22) Weinstein knew, or should have known, that ongoing and continuous harassment of plaintiff, within an isolated and hostile work environment, could cause plaintiff to have a psychological breakdown, or at the very least, a reaction based on her psychological, stress related disability. (Plaintiff's Deposition p. 180 -- Plaintiff's deposition is annexed as "X" ). Weinstein placed plaintiff in isolation, and placed her under tremendous amounts of work-related stress, and then referred her to EAP (Plaintiff's Deposition p. 180 -- Plaintiff's deposition is annexed as "X" ). She then proceeded to use Plaintiff's disability against her (Plaintiff's hearing and psychological disability), and to terminate her based on her reaction to the stress intentionally caused by Weinstein. (Plaintiff's Deposition p. 178 and pp. 233 to 345 -- Plaintiff's deposition is annexed as "X" ). (See Plaintiff's Exhibit 6[B], [C])

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

76. Deny.  Plaintiff believes that she was treated differently than other similarly situated co-workers, in that she was singled out in front of the entire staff and reprimanded for a behavior that others in the AIDS Division engage in on a regular basis. (See Plaintiff's Exhibit 42)  Plaintiff stated in a June 2, 1997 memo to Beth Weinstein regarding a public reprimand relative to plaintiff arriving late to the job.  Plaintiff stated "I felt that you threatened me and singled me out from the entire staff in the AIDS Division, that are either late or that leave early on a regular basis."  (Plaintiff's Exhibit 44).   Further, Weinstein again alluded to Plaintiff's "tone of voice."  Ms. Weinstein, herself, requested that plaintiff see a physician to have her hearing checked because of the loudness of her voice.  Plaintiff went to see Dr. Hameroff , her physician, who referred her to The Connecticut Ear, Nose & Throat Associates, P.C..  Plaintiff had her hearing tested on October 13, 1997 as a part of an Ear, Nose and Throat evaluation.   In this evaluation, Dr. Richard Lessow, M.D., stated that "Mrs. Barlow is concerned about hearing loss, and has had a history of tinnitus in both ears and itching of her ears....An Audiogram revealed a drop in her left ear at 8000 Hertz to 45 dB."  This examination indicated that there is hearing loss.  It is reasonable to believe that hearing loss contributes to the loud tone of voice in which the plaintiff communicates. (See Plaintiff's Exhibit 6[A,B]).

77. Deny.  Plaintiff never stated she swore at Christine Parker, and further plaintiff produced a witness to that event, by the name of Debbie Garrett, who works in

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

tumor registry. (Plaintiff's Deposition p. 321 and 322 – Plaintiff's deposition is annexed as "X" ).

78. Deny. Plaintiff was targeted by managers from other departments, as well as managers from her own department. Others felt free to criticize plaintiff, write plaintiff up, and file affidavits against plaintiff. This, as did other documentation that came from managers other than her own, were documented well after the date that the individual claims that the offensive action took place. Further, plaintiff was never advised of these incidents until well after they had occurred. (See Plaintiff's Exhibit 42) In Defendant's Exhibit 38, dated 9/17/98, Nancy Berger allegedly complained about an incident with plaintiff. This incident was reported to Beth Weinstein on 9/29/98, twelve days after the incident allegedly took place. This was much too remote in time to have been legitimately reported. Further, this incident was not reported to plaintiff. Plaintiff was not faced with her accuser. (See Plaintiff's Exhibit 9) Plaintiff was also stripped of her rights as an American citizen to give blood and lead the blood drive as she had done for many years. (See Plaintiff's Exhibit 48)

79. Deny. Beth Weinstein was on a mission to progressively discipline plaintiff and to personally terminate her from state employment. Plaintiff is now approaching her second written evaluation, which will provide Ms. Weinstein with an opportunity to terminate plaintiff. (See Plaintiff's Exhibit 30[A]) At this point in time, plaintiff has filed several discrimination complaints against Weinstein and others, filed a Whistleblower complaint against Weinstein, McLendon and

54

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)    (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

Santoro, and continued to complain about the discriminatory and retaliatory treatment she was receiving from the defendants. Plaintiff personally detailed the following incidents of harassment in her workplace. (See Plaintiff's Exhibit 8) Plaintiff was demoted to position of a "floater" who worked for anyone in the various departments who needed her assistance. She was written up by a variety of people who had her under surveillance, and who based on the hostile work environment plaintiff was working within, felt free to both target plaintiff, and to write her up. This included being written up by a woman by the name of Nancy Berger, who plaintiff claims made a false statement relative to an alleged interaction they had. (Plaintiff's Deposition p. 236 – Plaintiff's deposition is annexed as "X" ) (See Plaintiff's Exhibit 9)

80. Deny. All Weinstein's claims and actions must be taken with an eye towards the likelihood of Weinstein retaliating against plaintiff following her filing of a Whistleblower complaint. (See Plaintiff's Exhibit 14)  Plaintiff reported this incident to Tom Wierbonics, her union and the state auditors. Plaintiff appeared on a Channel 30 news program with news commentator, Lew Brown (Plaintiff's deposition p. 91-99 – Plaintiff's deposition is annexed as "X" ).  All Weinstein's claims and actions must be taken with an eye towards the likelihood of Weinstein retaliating against plaintiff following her filing of a Whistleblower complaint. (See Plaintiff's Exhibit 14)  Plaintiff reported this incident to Tom Wierbonics, her union and the state auditors.  Plaintiff appeared on a Channel 30 news program with news commentator, Lew Brown (Plaintiff's deposition p. 91-99).

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)  (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

81. Deny.   Plaintiff believes that she was treated differently than other similarly situated co-workers, in that she was singled out in front of the entire staff and reprimanded for a behavior that others in the AIDS Division engage in on a regular basis.   Plaintiff stated in a June 2, 1997 memo to Beth Weinstein regarding a public reprimand relative to plaintiff arriving late to the job.   Plaintiff stated "I felt that you threatened me and singled me out from the entire staff in the AIDS Division, that are either late or that leave early on a regular basis."  (See Plaintiff's Exhibit 44).   Further, Weinstein again alluded to Plaintiff's "tone of voice."  Ms. Weinstein, herself, requested that plaintiff see a physician to have her hearing checked because of the loudness of her voice.   Plaintiff went to see Dr. Hameroff , her physician, who referred her to The Connecticut Ear, Nose & Throat Associates, P.C..   Plaintiff had her hearing tested on October 13, 1997 as a part of an Ear, Nose and Throat evaluation.   In this evaluation, Dr. Richard Lessow, M.D., stated that "Mrs. Barlow is concerned about hearing loss, and has had a history of tinnitus in both ears and itching of her ears....An Audiogram revealed a drop in her left ear at 8000 Hertz to 45 dB."   This examination indicated that there is hearing loss.   It is reasonable to believe that hearing loss contributes to the loud tone of voice in which the plaintiff communicates. (See Plaintiff's Exhibit 6[B], [C])

82. Deny.  Plaintiff never stated she swore at Christine Parker, and further plaintiff produced a witness to that event, by the name of Debbie Garrett, who works in

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

tumor registry. (Plaintiff's Deposition p. 321 and 322 — Plaintiff's deposition is annexed as "X" ). (See Plaintiff's Exhibit 38)

83. Admit.

84. Deny. Beth Weinstein's first and second evaluation of plaintiff were both done in retaliation to Plaintiff's engaging in protected activity—filing of internal and external civil rights complaints. (See Plaintiff's Exhibit 20) Following Plaintiff's 1996 whistleblower complaint to DPH regarding surplus furniture against Weinstein, McLendon and Santoro, Beth Weinstein was on a mission to progressively discipline plaintiff and to personally terminate her from state employment. In June 1998, when plaintiff filed a second whistleblower complaint, internal discrimination complaint and a CHRO complaint against Weinstein, McLendon and Santoro, plaintiff received her second unsatisfactory employment evaluation, completed by Beth Weinstein. This second unsatisfactory employment evaluation was completed by Weinstein, less than four months after plaintiff filed a whistleblower complaint with the Attorney General's Office against Weinstein, McLendon and Santoro. (See Plaintiff's Exhibit 14) Not only had the plaintiff filed a whistleblower complaint in June 1998 against Weinstein, she had also filed internal discrimination complaints against Weinstein, McLendon and Santoro, and a CHRO complaint against Weinstein as well. (See Plaintiff's Exhibit 20) Plaintiff continued to complain about the racial discrimination and retaliation she was receiving from the defendants, to no avail. Plaintiff filed union grievances and complaints with the Affirmative Action Office

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

of the DPH.  Plaintiff personally detailed the following incidents of racial discrimination and harassment, in the workplace. (See Plaintiff's Exhibit 8)  In 1998, plaintiff was demoted to position of a "floater" who worked for anyone in the various departments who needed her assistance.  She was written up by a variety of people who had her under surveillance, and felt free to both target plaintiff, and to write her up, thereby creating a hostile work environment. (See Plaintiff's Exhibit 42)  Plaintiff was written up by a woman by the name of Nancy Berger, whom plaintiff claims made false statements relative to an alleged interaction they had.  (Plaintiff's Deposition p. 236 – Plaintiff's deposition is annexed as "X" ) (See Plaintiff's Exhibit 9)

85. Deny.  DPH's meeting with plaintiff and her union representative was pretext for hearing Plaintiff's response on October 26, 1998. (See Plaintiff's Exhibit 46[B]) Plaintiff was retaliated against for filing a whistleblower complaint against Weinstein, McLendon and Santoro on or around June 1998. (See Plaintiff's Exhibit 19) Further, plaintiff had filed internal discrimination complaints and union grievances claiming racial discrimination.  In June 1998, plaintiff filed a CHRO racial discrimination complaint against Weinstein.  Plaintiff claims that she was retaliated against by being singled out in front of the entire staff and reprimanded for a behavior that others in the AIDS Division engage in on a regular basis. (See Plaintiff's Exhibit 37)  Plaintiff stated in a June 2, 1997 memo to Beth Weinstein regarding a public reprimand relative to plaintiff arriving late to the job.  Plaintiff stated "I felt that you threatened me and singled me out from the

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

entire staff in the AIDS Division, that are either late or that leave early on a regular basis." (See Plaintiff's Exhibit 44). Further, Weinstein again alluded to Plaintiff's "tone of voice." Ms. Weinstein, herself, requested that plaintiff see a physician to have her hearing checked because of the loudness of her voice. Plaintiff went to see Dr. Hameroff, her physician, who referred her to The Connecticut Ear, Nose & Throat Associates, P.C. Plaintiff had her hearing tested on October 13, 1997 as a part of an Ear, Nose and Throat evaluation. In this evaluation, Dr. Richard Lessow, M.D., stated that "Mrs. Barlow is concerned about hearing loss, and has had a history of tinnitus in both ears and itching of her ears....An Audiogram revealed a drop in her left ear at 8000 Hertz to 45 dB." This examination indicated that there is hearing loss. It is reasonable to believe that hearing loss contributed to the loud tone of voice in which the plaintiff historically communicated. (See Plaintiff's Exhibit 6[A,B]).

86. Deny. While Carson had met with Plaintiff's union representative, Gayle Hooker before October 26, 1998, plaintiff maintains that the purpose was not to save her job and to return plaintiff to work. (See Plaintiff's Exhibit 46[A]) The "last chance agreement" was in fact, retaliatory, as it was developed within four months of plaintiff filing a whistleblower complaint, and it was developed as a punitive document which would provide the DPH with the legal protections it needed in order to terminate plaintiff and release the DPH from the possibility of a law suit or other legal action. The "last chance agreement" has the effect of

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

waiving the Plaintiff's rights to legal action using the pretext of saving the Plaintiff's job. (See Plaintiff's Exhibit 46[B])

87. Admit.

88. Deny. Plaintiff was advised by Tom Carson that she would have to have a fitness for duty examination before she could attend the pre-disciplinary meeting. Plaintiff stated that she would not attend the meeting, because after several attempts to obtain a psychological evaluation, plaintiff was unable to obtain one because Personnel would not agree to pay for this procedure, and each of the doctors plaintiff contacted wanted to know who would pay for this evaluation. (See Plaintiff's Exhibit 45)

89. Deny. Plaintiff attempted to obtain a psychological evaluation prior to attending the meeting, as she had been advised by Tom Carson. She was unable to obtain this psychological evaluation prior to the meeting, therefore, she did not attend the meeting. (See Plaintiff's Exhibit 45).

90. Deny. Plaintiff did not refuse to attend the October 26, 1998 meeting. She did not have the psychological evaluation required by Tom Carson, prior to the meeting, and she was therefore prohibited from attending the meeting. (See Plaintiff's Exhibit 45)

91. Deny. Plaintiff did not refuse to attend the meeting, she was not going to be allowed to attend by Tom Carson, who required that she have a psychological evaluation prior to the meeting. Further, the "last chance agreement" was pretext to terminate plaintiff and waive her right to sue, because plaintiff had filed a

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

whistleblower complaint in June 1998 with the Attorney General's office, against Weinstein, McLendon and Santoro. See Exhibit 46)

92. Admit

93. Admit in part, deny in part. Plaintiff admits that the grievance was submitted to binding arbitration. Plaintiff cannot speculate as to whether the Union and the DPH agreed that Mark Grossman would be the arbitrator to hear Barlow's case. (See Plaintiff's Exhibit 47)

94. Admit.

95. Admit in part, deny in part. Plaintiff has no knowledge as to the total number of exhibits submitted to Arbitrator Grossman.

96. Deny.   The plaintiff claims she was terminated for filing a "whistleblower complaint" which was filed with the DPH against Weinstein, McLendon and Santos in 1996 and filed with the Attorney General's office against Weinstein, McLendon and Santos in 1998. (See Plaintiff's Exhibit 43). Further, plaintiff filed a CHRO complaint in August 1996, an internal discrimination complaint in 1997, and a second CHRO complaint in 1998 against Weinstein, the same individual who gave plaintiff an unsatisfactory evaluation immediately following the initial internal discrimination complaint, and a second unsatisfactory complaint immediately following the filing of the 1998 whistleblower and CHRO complaint. (See Plaintiff's Exhibit 20)   The charges against plaintiff were pretextual, in that prior to the filing of the 1996 whistleblower, internal and CHRO discrimination complaints, plaintiff was under consideration for upward

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

mobility, and had evaluations that were ranked overall as good. (See Plaintiff's Exhibits 2,3[A], 3[D], 3[D], 5[A] and 7)

97. Deny. Arbitrator Grossman did not hear all of the evidence. The evidence of the 1998 whistleblower complaint the 1997 internal and the 1998 CHRO complaint were not even considered in terms of the retaliation that plaintiff suffered at the hands of the defendants. (See Plaintiff's Exhibits 13, 14)

98. Deny. The union has filed an appeal to Arbitrator Grossman's ruling, and this appeal is still pending to this date. (See Plaintiff's Exhibit 47)

FOR PLAINTIFF

By ___Cynthia R. Jennings___
Cynthia R. Jennings, Esq. (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street
Bridgeport, CT 06604
(203) 334-4800 (O)
(203) 368-6985 (Fax)
cynthia.Jennings@sbcglobal.net

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net

## **CERTIFICATION**

This is to certify that the above Plaintiff's Local Rule 56 Statement was hand delivered to the following attorneys on October 22, 2003.

Gary S. Star
Stephen M. Sedor
Shipman & Goodwin, LLP
One American Row
Hartford, CT 06103-2819

_Cynthia R. Jennings_
Cynthia R. Jennings, Esq.

Cynthia R. Jennings, Esquire (ct21797)
THE BARRISTER LAW GROUP, LLC
211 State Street; Bridgeport, CT 06604
(203) 334-4800 (O)   (203) 368-6985 (Fax)
cynthia.jennings@sbcglobal.net