Smith was admittedly a temporary worker and there is no evidence that she has any first hand knowledge concerning the events underlying Barlow's termination. This common fact runs through each and every statement submitted by Barlow and the Court should strike them from the record.[5]

### 4. THE COURT SHOULD STRIKE THE MUTLITUDE OF DOCUMENTS THAT HAVE NO FOUNDATION AND ARE INCOMPLETE

Barlow has produced a host of documents that have no foundation and are clearly hearsay. (See Barlow's Exhibits 1C, 10, 12, 16C, 30, 39, 45, 46 and 49). Barlow has simply asked the Court to consider these documents without any authentication or any other evidence testifying to their foundation. Moreover, several of these documents are incomplete. Barlow has produced, for example, one page of a multiple page document in Exhibits 1C, 30, and 49). The Court should not consider these incomplete documents but instead strike them from the record.

As a practical matter, the defendants fail to see the relevance in several of these documents. For example, Barlow submits a document purporting to be a report from the Workers' Compensation Commission *dating back to 1978* (Exhibit 39). This document could

---

[5] As set forth below, Barlow has cited the statements of these employees in her Rule 56 Statement. See eg Paragraph 64-70. However, because these statements are unreliable hearsay, the Court should disregard them in their entirety.

not have any possible relevance to her termination that occurred 20 years later. The Court should strike these exhibits from the record.

### B. THE COURT SHOULD STRIKE THE UNSUPPORTED STATEMENTS OF FACT CONTAINED IN BARLOW'S RULE 56 STATEMENT.

The Local Rules of Civil Procedure have clearly and concisely defined the evidentiary standards for opposing summary judgment. Pursuant to Local Rule 56:

> Each statement of material fact by …an opponent in a Local Rule 56(2) Statement must be followed by a specific citation to (1) the affidavit of a witness competent to testiy as to the facts at trial and/or (2) evidence that would be admissible at trial.

Barlow's Rule 56(2) Statement and Memorandum of Law is filled with sweeping generalizations, legal conclusions and widespread speculation having no evidentiary or factual support. Barlow did not file an Affidavit in connection with her Rule 56 Statement, nor did she verify the facts within it. The defendants therefore request the Court to strike those portions of Barlow's Statement that fail to comply with Local Rule 56(2). The specific examples that the defendants wish to point out are as follows:

**1. The Court should strike any references to Barlow having "worked out of class". (Paragraph 4 et seq.)**

Plaintiff has self-servingly alleged that she was a hard worker who consistently worked "out of class" in order to provide assistance to Ann McLendon. The point that Barlow tries to make is that Ann McLendon supposedly promised her a promotion during the late 1980's and early 1990's and that she worked "out of class" in hopes of getting that promotion,

only to have McLendon dash those hopes when she complained about her religious proselytizing. Beyond the fact that this is an untimely claim, Barlow has produced no evidence that she worked out of class. The only evidence she cites is her Exhibit 3B, which is *a statement that she wrote herself.* (Barlow's Exhibit 3B). Barlow has failed to provide any affidavit from her union or anyone else to support the claim that she worked "out of class". The Court should therefore strike these claims.[6]

2. **The Court should Strike Any Reference to Barlow's Purported <u>Hearing Loss: Paragraphs 7, 31, 32, 63, 72, 76, 81</u>.**

After years of loud and threatening behavior, Barlow now tries to excuse her conduct by blaming it on a hearing loss "which was likely the cause of her loud talking." This is nonsense. Barlow has never disclosed any expert concerning an alleged hearing limitation and she has never pled that she was disabled by a hearing loss. Moreover, the purported record that she cites (Exhibit 6), contains no verification that Barlow indeed has a disabling hearing loss. It certainly makes no indication that she had a hearing loss that caused her to raise her voice *in any way.*

Moreover, the connection that Barlow tries to make here is misleading. Barlow's co-workers begged Weinstein and other managers to stop her from doing such things as swearing at them, threatening them and fighting with others in public. These are serious behavioral

---

[6] Barlow has made this allegation in several other paragraphs. (<u>See</u> Paragraph 5, 10)

issues having no relation to Barlow's hearing. Nothing in any of Barlow's exhibits makes a connection between a hearing loss and the threatening behavior that she exhibited. Once *again*, Barlow is trying to cited evidence even though none exists.

### 3. The Court Should Strike All References to the June 4, 1998 Complaint to the Attorney General's Office

As the defendants pointed out in their Reply Brief, Barlow has now claims, among other things, that she was fired for having written a letter of complaint to the Attorney General's Office on June 4, 1998. However, Barlow has failed to even produce a copy of that Complaint. She has given the Court absolutely no evidence that any such complaint exists. Accordingly, the Court should strike any reference to this supposed Complaint.

### 4. The Court Should Strike Paragraphs 10-14, 16, 21, 24, 25, 30, 32, 33, 38, 39, 43, 51, 56, 57-61, 64, 66, 67, 70-81, 84-86, 96 and 98 Because They Are Legal Conclusions/Arguments and not statements of fact.

Barlow has used her Rule 56 Statement (her "Statement") improperly. Instead of setting forth <u>facts</u>, Barlow's Statement is a legal brief filled with conclusory allegations and legal arguments. Patently lacking in these paragraphs are any statements of fact or citations to <u>admissible</u> evidence. Since Barlow's Statement exceeds 60 pages, it is not possible to address each and every improper assertion that she has made. However, the following examples adequately demonstrate Barlow's inappropriate use of the Rule 56 statement:

- "The ...harassment took place from 1988 through 1991. After making a complaint to the Governor's Office, Ms. Barlow received no relief. The religious harassment continued...Barlow believed that she was being harassed because she complained about religion..." (Paragraph 10, 12, 13, 14, 21, 25, 30, );

- "Plaintiff rejects the after-the-fact explanation of why the surplus furniture was not sent to State Surplus…or that the age of the furniture is relevant in this matter…Plaintiff fails to see the relevance of the age of the furniture…" (Paragraph 16);

- The removal of job duties constituted an adverse employment impact, part of the retaliation plaintiff continued to face at the hands of management…" (Paragraph 24);

- "Plaintiff was the recipient of ongoing and continuous retaliation…" (Paragraph 30);

- "Plaintiff worked in a hostile work environment where she was regularly documented by individuals other than her supervisor…" (Paragraph 32);

- "The written letter of counseling was clearly pretextual and no more than retaliation against plaintiff for engaging in protected activity…"; "It would be reasonable to infer….." Paragraph 33);

- "Because of the closeness in time to the plaintiff engaging in protected activity…it would be reasonable to believe that Weinstein's actions were retaliatory." (Paragraph 43).

- "Plaintiff was being retaliated against by Beth Weinstein…"; and "It was both reasonable and plausible to believe that Beth Weinstein retaliated against plaintiff following a whistleblower complaint made by plaintiff in or around April 1996…" (Paragraph 57);

- "It can be fair and reasonable to believe that Beth Weinstein was continuing to retaliate against Plaintiff for filing a whistleblower complaint…" (Paragraph 58,70, 71, );

- "All of Weinstein's claims must be taken with an eye towards the likelihood of retaliating against plaintiff following filing of a whistleblower complaint." (Paragraph 60, 75, 80);

- "Plaintiff believes that she was singled out…" (Paragraph 61, 76, 81);

- "Beth Weinstein was on a mission to progressively discipline plaintiff and to personally terminate her employment from state employment." (Paragraph 64, 79)

- "Based on the totality of the circumstances…it is clear that both discrimination and retaliation played a role in every step of Plaintiff's discipline…" (Paragraph 66)

- "The attendance issue is being used as a pretext to terminate plaintiff for engaging in protected activity"; and "…plaintiff suffered numerous adverse employment actions…" (Paragraph 74);

- "Plaintiff was targeted by managers from other departments, as well as managers from her own department…" (Paragraph 78);

- "Beth Weinstein's first and second evaluation of plaintiff were both done in retaliation to plaintiff's engaging in protected activity…" (Paragraph 84);

- "DPH's meeting with plaintiff and her union representative was pretext for hearing Plaintiff's response on October 26, 1998." (Paragraph 85).

Rule 56 requires Barlow to cite *admissible evidence* for each and every assertion. Barlow's legal arguments, which do not even attempt to cite to admissible evidence, fail to satisfy Rule 56 and the Court should strike them from the record.

    5.    **The Court Should Strike Paragraphs 31, 32, 33, 38, 39, 51, 53, 55, 56,57, 58, 60,63, 64, 66, 70, 71, 72, 73, 74, 75,76, 78, 79, 80, 81, 82, 84, 85, 86, 96 Because They Are Unresponsive and Circumvent Her <u>Obligations Under Rule 56</u>.**

The defendants' Rule 56 Statement presents a detailed list of the disciplinary warnings issued to Barlow; the poor evaluations that she received; and the multitude of complaints that several co-workers filed against her. These are statements of <u>fact</u> and Rule 56 requires Barlow to respond. However, instead of replying with responsive facts, Barlow's Statement gives a

SHIPMAN & GOODWIN LLP • *COUNSELORS AT LAW*
ONE AMERICAN ROW • HARTFORD, CONNECTICUT 06103-2819 • (860) 251-5000 • FAX (860) 251-5099 • JURIS NO. 57385

litany of unrelated facts. Again, because Barlow's statement exceeds 60 pages, the defendants cannot reasonably detail each and every one of these deficiencies. However, the following paragraphs are indicative of the manner in which Barlow has chosen to circumvent her obligations under Rule 56.

- **Paragraph 32**:

The defendants' Statement, paragraph 32, sets forth the circumstances in which a fellow employee named Christine Parker complained about Barlow. Rather than address the allegation, Barlow instead states that "[she] worked in a hostile work environment where she was regularly documented by individuals other than her supervisor." In other words, Barlow ignores the allegation and implies that Ms. Parker is fabricating this incident. However, Barlow provides no *evidence* that Ms. Parker is lying, other than her own theory. In fact, Barlow readily admitted that she has no reason to believe that anyone lied about her. (Barlow, p. 235-8).

Revealingly, Barlow ignores almost all of the complaints that her co-workers made about her. She now tries to explain these situations away by stating that she was loud, but she had a hearing problem. (See eg Paragraph 31 (suggesting that Kathy Cobb's complaint about her was because she has a hearing problem); Paragraph 63 (stating that she did not yell at another employee, but instead spoke loud because she had a hearing problem); Paragraph 72 (implying that she loudly disrupted a meeting with Tom Carson because she has a hearing

problem); Paragraph 75 (claiming that the explosive incident with Clinton Morris was based on her alleged hearing loss).

Finally, Paragraphs such as these truly set forth the irreconcilable nature of Barlow's Reply. The DPH gave Barlow unsatisfactory reviews based in part on her loud and combative arguments with co-workers. However, in Paragraphs like this one, (<u>See</u> also Paragraph 75), Barlow first denies that she engaged in any such behavior and claims these events were fabricated. However, in the same Paragraph, she then says the reasons the arguments occurred was because she had a hearing loss. Once again, Barlow's position makes no sense.

- **Paragraph 38:**

The defendants' Statement, paragraph 38 simply states that Barlow's CHRO Complaint in 1996 did not make <u>any</u> allegations against Beth Weinstein. However, Barlow's Statement launches into a long discussion about a letter that she wrote to the Equal Opportunity Commission 18 months later. This is not responsive, but instead sets forth a statement of irrelevant facts designed to try and make it appear as if Weinstein was retaliating against Barlow in 1996 because of things that occurred two years later. Accordingly, this is another red herring that Barlow has presented to this Court.

- **Paragraph 39**

The defendants' Statement, paragraph 39 simply states that the DPH filed an Answer to Barlow's CHRO Complaint in 1996. However, Barlow's Statement goes into a two-page litany of events that occurred from 1994 until she was ultimately discharged in 1998.

- **Paragraphs 55-57:**

The defendants' Statement, paragraphs 55 through 57, set forth the basis upon which Barlow received an "unsatisfactory" rating on the 1995/1996 evaluation. However, Barlow's response primarily asserts, without any support, that Beth Weinstein should not have given her the evaluation. Barlow then discusses the manner in which she was terminated two years later. Again, Barlow's Statement is not responsive.

- **Paragraph 64**

The defendants' Statement, paragraph 60, simply states that "[a]s a result of the incidents that occurred on July 9, 1997, Barlow received a written warning on July 17, 1997. Barlow's Reply is a 13-page history of events dating back to the early 1990's. Barlow's response includes a claim that her 1997 evaluation should have been changed, a statement that she and certain other employees were "best of friends"; that she has worked as a "floater"; that she was once questioned about a doctor's appointment; and other alleged events having nothing to do with this allegation.

Moreover, Barlow's reply included a reference to several unsworn hearsay statements that were made by individuals having no first-hand knowledge of the events underlying Barlow's discipline and termination. Paragraph 60 is a long-winded and unintelligible argument that the Court should strike from the record.

- **Paragraph 66**

The defendants' Statement, paragraph 66, states that Barlow's internal complaint Dated August 25, 1997 was investigated by the DPH's Affirmative Action Officer, Thomasina Carr, who found no reasonable cause to believe a discriminatory practice occurred. Barlow's response is a blatant and unquestionable misrepresentation of the record. Barlow responds that although Ms. Carr found no reasonable cause to her internal complaint, the CHRO found cause to believe that a discriminatory practice had occurred in connection with her 1996 CHRO Complaint. This creates the illusion that Ms. Carr's investigation was faulty. However, as Barlow is acutely aware, her 1996 CHRO Complaint was dismissed with a finding of no reasonable cause. (Defendants' Exhibit 18).

- **Paragraph 74**

The defendants' Statement, Paragraph 74, states that Barlow was notified about a problem with her absences on July 2, 1998. The notice was not disciplinary. However, Barlow's two-page reply discusses events that occurred between 1988 and 1996; her 1996 CHRO Complaint; a promotion that occurred in 1994; the charity basketball game in August 1996; and her termination. Again, this is non-responsive. Moreover, Barlow *once again blatantly misrepresents the facts of this case* by stating she was terminated on November 10, 1998. However, Barlow was actually terminated on October 26, 1998. Because of Barlow's misstatements and failure to respond, the Court should strike paragraph 74.

- **Paragraph 75**

The defendants' Statement, paragraph 75, states that several employees complained about Barlow's behavior on August 14, 1998. Barlow's response, however, goes into a two-page litany about how she has "character witnesses"; and how she suffered a nervous breakdown two years earlier.

- **Paragraph 76**

The defendants' statement, paragraph 76, states that an employee complained to Beth Weinstein about Barlow's behavior. Barlow's response states that Ms. Weinstein gave her a letter of reprimand more than two years earlier and asserts that she has a hearing loss.

Again, the above examples are but a few of the many unresponsive, argumentative assertions that are contained within Barlow's Statement. Because these arguments fail to comply with Rule 56, the Court should strike them from the record.

IV.   **CONCLUSION**

Barlow has submitted many hearsay exhibits that fail to meet minimal standards of admissibility. Moreover, she has filled her Rule 56 Statements with so many misstatements of fact, legal conclusions and unsupported statements that the Court should strike them from the record.

The Defendants,

The State of Connecticut Department of Public Health and Beth Weinstein,

By: *[signature]*
Stephen M. Sedor
Fed. Bar No. ct21117
Gary S. Starr
Fed. Bar No. ct 06038
One American Row
Hartford, CT 06103-2819
Phone:      860-251-5000
Fax:          860-2515500
Their Attorneys

### CERTIFICATION

This shall certify that a copy of the foregoing was mailed to the following on this 26th day of November, 2003:

Cynthia Jennings
The Barrister Law Group
211 State Street
Bridgeport, CT 06604

*[signature]*
Stephen M. Sedor

358780 v.01