Exhibit 1

**U.S. Department of Labor**   Employment Standards Administration
Wage and Hour Division
Washington, D.C. 20210



APR 24 1998

Ms. Aurice Denise Barlow
84 Henry Street
Hartford, Connecticut 06144

Dear Ms. Barlow:

Thank you for your letter of January 26, 1998, concerning the Family and Medical Leave Act of 1993 (FMLA). I apologize that, because of the volume of work associated with administering the FMLA, we were not able to respond sooner to your concerns.

The Wage and Hour Division of the U.S. Department of Labor administers and enforces FMLA for all private, state and local government employees and some Federal employees. The FMLA entitles eligible employees of covered employers to take up to 12 weeks of unpaid, job-protected leave each year -- <u>with continued group health</u> insurance coverage during the leave -- for specified family and medical reasons.

Private employers are covered under FMLA if they have employed at least 50 employees during 20 or more calendar workweeks in the current or preceding calendar year; all public employers are covered. Employees are eligible under FMLA if they have worked for a covered employer for at least 12 months, have worked at least 1,250 hours during the 12 months immediately preceding the start of leave, and are employed at a worksite where the employer employs at least 50 employees at the site or within 75 miles of the site. The 12 months the employee has to have worked do not have to be consecutive.

Unpaid leave must be granted to an eligible employee for any of the following reasons: (1) for the birth of a son or daughter, and/or to care for the newborn child within one year of birth; (2) for placement with the employee of a son or daughter for adoption or foster care, and/or to care for the newly placed child within one year of placement; (3) to care for the employee's spouse, son or daughter, or parent, who has a serious health condition; and, (4) for a serious health condition that makes the employee unable to perform his/her job.

*Working for America's Workforce*

-2-

Please review the enclosed pamphlet for a full explanation of FMLA's benefits and protections. As already noted, an employer is required to maintain group health insurance coverage for an employee on FMLA leave whenever such insurance was provided before the leave was taken and on the same terms as if the employee had continued to work. If the employee made co-premium payments before the FMLA leave began, the employer must arrange and notify the employee to pay his or her share of health insurance premiums while on leave. During the FMLA leave, the employer's obligation to maintain insurance coverage may cease if the employee's premium payment is more than 30 days late and the employer has provided notice at least 15 days before coverage is to be dropped.

Given these provisions and the limited information in your letter, it does not appear that your employer violated your rights under the FMLA by notifying you that your co-premium payments were overdue while you were on leave. While we can understand your concern about not receiving a paycheck timely, we assume, since you have returned to work, that you have received your October 11, 1996, paycheck. There does not appear to be any violation under the FMLA.

Sincerely,

Martin L. Barrow
Office of Enforcement Policy
Family and Medical Leave Act Team

Enclosure

# Compliance Guide to the Family and Medical Leave Act



U.S. Department of Labor
Employment Standards Administration
Wage and Hour Division

WH Publication 1421
December 1996

Exhibit 2

Service: **Get by LEXSEE®**
Citation: **80 conn app 1**

*80 Conn. App. 1, \*; 832 A.2d 106, \*\*;*
*2003 Conn. App. LEXIS 446, \*\*\**

AFSCME, COUNCIL 4, LOCAL 704 v. DEPARTMENT OF PUBLIC HEALTH

(AC 23084)

APPELLATE COURT OF CONNECTICUT

80 Conn. App. 1; 832 A.2d 106; 2003 Conn. App. LEXIS 446

May 5, 2003, Argued
October 21, 2003, Officially Released

**PRIOR HISTORY:** [\*\*\*1] (TRIAL) (Appeal from Superior Court, judicial district of Hartford, Bryant, J.) Application to vacate an arbitration award, brought to the Superior in the judicial district of Hartford, where the defendant filed a motion to confirm the award; thereafter, the matter was tried to the court, Bryant, J.; judgment denying the application to vacate the award and granting the motion to confirm the award, from which the plaintiff appealed to this court. Afscme, Council 4, Local 704 v. State, 2002 Conn. Super. LEXIS 1296 (Conn. Super. Ct., Apr. 10, 2002)

**DISPOSITION:** Judgment reversed and remanded.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff union filed an application to vacate an arbitration award. Defendant, the Department of Public Health, filed a motion to confirm the award. The Superior Court, judicial district of Hartford (Connecticut), denied the application to vacate the award and granted the motion to confirm the award. The union appealed.

**OVERVIEW:** The union requested arbitration of a grievance against the Department. After the arbitrator failed to render a decision within the 30-day time restriction imposed under the collective bargaining agreement, the parties informed the arbitrator that his services were terminated. The union sent a letter to the arbitrator and granted his request for an extension. The arbitrator found against the union's position. After the award was rendered, the Department responded to the extension request. On appeal, the union claimed that the trial court improperly concluded that it was proper for the arbitrator to render an award after both the statutory and contractual deadlines had passed and that the union had in fact waived the issue of timeliness. The appellate court vacated the award under Conn. Gen. Stat. § 52-418(a)(4) because the arbitrator exceeded his powers by issuing a late award without a mutual agreement from the parties to extend the deadline. The appellate court also agreed with the union that the union's unilateral waiver was not effective because the agreement required mutual consent for the extension and the parties already agreed to discharge the arbitrator.

**OUTCOME:** The judgment of the trial court was reversed and the case was remanded with direction to render judgment granting the union's application to vacate the award and denying the Department's motion to confirm the award.

**CORE TERMS:** arbitrator, deadline, arbitration, mutually, waived, arbitration award,

contractual, timeliness, untimely, vacate, favorable, clearly erroneous, unilateral, confirm, jointly, mutual, silent, arbitration agreement, arbitrator exceeded, right to object, valid extension, time frame, modification, confirmation, discharged, quotation, vacated, collective bargaining agreement, memorandum of decision, arbitration clause

## LexisNexis (TM) HEADNOTES - Core Concepts - ✦ Hide Concepts

Civil Procedure > Alternative Dispute Resolution > Judicial Review
**HN1** See Conn. Gen. Stat. § 52-418(a).

Civil Procedure > Alternative Dispute Resolution > Validity of ADR Methods
**HN2** See Conn. Gen. Stat. § 52-416(a).

Contracts Law > Contract Conditions & Provisions > Arbitration Clauses
**HN3** Arbitration is a creature of contract, circumscribed by statute. If the parties choose to set limits on the arbitrator's powers, then the parties will be bound by those limits. The arbitration clause in the agreement constitutes the written submission to arbitration. The agreement for submission constitutes the charter for the entire ensuing arbitration proceedings. More Like This Headnote

Civil Procedure > Alternative Dispute Resolution > Judicial Review
**HN4** When arbitration is consensual, the scope of judicial review is generally limited to the concerns listed in Conn. Gen. Stat. § 52-418(a). It is axiomatic that any challenge to an award under § 52-418(a)(4), on the ground that the arbitrator exceeded his powers, is limited to a comparison of the award with the submission. An award will be vacated under § 52-418(a)(4) if the arbitrator has rendered an untimely award. More Like This Headnote

Civil Procedure > Alternative Dispute Resolution > Judicial Review
**HN5** Where the parties have consented to arbitration and have framed the issues to be arbitrated, in reviewing the arbitration award, the appellate court will make every reasonable presumption in favor of the arbitration award and the arbitrator's acts and proceedings. The party challenging the award, carries the burden of demonstrating that the award violates the parties' agreement. More Like This Headnote

Civil Procedure > Alternative Dispute Resolution > Validity of ADR Methods
**HN6** Arbitration is a creature of contract. If the parties choose to set limits on the arbitrator's powers, then the parties will be bound by those limits. Conn. Gen. Stat. § 52-416 provides the following condition on the applicability of the statutory 30-day limit: If the time within which an award is rendered has not been fixed in the arbitration agreement. Conn. Gen. Stat. § 52-416(a). That proviso renders the applicability of § 52-416 entirely contingent on the agreement's silence with to the deadline for the award and the requirements for a valid extension. Where arbitration agreement contains language about the issues of timing and extension, § 52-416 is not applicable. The statute applies only when the agreement does not specify the time within which the award must be rendered. More Like This Headnote

Civil Procedure > Appeals > Reviewability > Preservation for Review
Civil Procedure > Appeals > Standards of Review > Clearly Erroneous Review
**HN7** Waiver is a question of fact. The appellate court will not disturb the trial court's factual findings unless they are clearly erroneous. Where the factual basis of the court's decision is challenged the appellate court must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are

clearly erroneous. The conclusions of the trial court must stand unless they are legally or logically inconsistent with the facts found or unless they involve the application of some erroneous rule of law material to the case.   More Like This Headnote

Civil Procedure > Appeals > Reviewability > Preservation for Review
HN8⬇ The doctrine of waiver precludes parties from anticipating a favorable decision reserving the right to impeach it or to set it aside if it happens to be against them for a cause it knew well in advance of the unfavorable decision. Failure to raise the issue of timeliness prior to the issuance of an arbitration award operates as a waiver of the right to object to the award as untimely. A party has been found to have waived its right to object to the timeliness of the award by failing to object after being notified of the approximate date on which the award would be rendered. The parties have been found to have waived their right to object to an untimely award by consenting to the arbitrators' delayed meetings and manifesting an agreement that the award would be delayed.   More Like This Headnote

Civil Procedure > Alternative Dispute Resolution > Mandatory ADR
Contracts Law > Contract Conditions & Provisions > Arbitration Clauses
HN9⬇ The arbitration clause in a contract constitutes the charter for the entire ensuing arbitration proceedings.   More Like This Headnote

Contracts Law > Contract Modifications
HN10⬇ Unless the parties, by their conduct, modified a joint discharge by agreeing to receive a late arbitration award, the discharge controls. For a valid modification of the joint discharge to have occurred, there must have been mutual assent to the meaning and conditions of the modification, and the parties must have assented to the same thing in the same sense.   More Like This Headnote

Civil Procedure > Appeals > Standards of Review > De Novo Review
Contracts Law > Contract Interpretation > Interpretation Generally
HN11⬇ If the language of a contract is definitive of the parties' intent, then its interpretation is a question of law for the court. A presumption that the language is definitive arises when the contract is between sophisticated parties and commercial in nature. An appellate court's review, in such a case, is plenary.   More Like This Headnote

Contracts Law > Contract Interpretation > Interpretation Generally
Civil Procedure > Appeals > Standards of Review > Standards Generally
HN12⬇ Arbitration agreements are contracts and their meaning is determined under accepted rules of state contract law. Contractual language is interpreted according to a fair and reasonable construction of the written words, and the language used must be accorded its common, natural and ordinary meaning and usage. A contract must be construed to effectuate the intent of the parties, derived from the language of the contract, interpreted in light of the situation of the parties and the circumstances connected with the transaction. In giving meaning to the language of a contract, an appellate court presumes that the parties did not intend to create an absurd result.   More Like This Headnote

**COUNSEL:** J. William Gagne, Jr., with whom, on the brief, were Kimberly A. Cuneo and P. Jo Anne Burgh, for the appellant (plaintiff).

Thomas P. Clifford III, assistant attorney general, with whom, on the brief, was Richard Blumenthal, attorney general, for the appellee (defendant).

**JUDGES:** Dranginis, Bishop and West, Js. In this opinion the other judges concurred.

**OPINIONBY:** WEST

**OPINION:** [*2] [**108] WEST, J.

The plaintiff, Local 704 of Council 4, American Federation of State, County and Municipal Employees (union), appeals from the judgment of the trial court denying its application to vacate an arbitration award as untimely. The union claims that the court improperly concluded (1) that it was proper for the arbitrator to [***2] render an award after both the statutory and contractual deadlines had passed and (2) that the union had in fact waived the issue of timeliness. n1 We reverse the judgment of the trial court.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 The union framed the statutory and contractual arguments as separate claims in its brief, but we address them as two arguments under a single claim.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

[*3] The court's memorandum of decision provides the following facts. The union requested arbitration of a grievance against the defendant department of public health (department) pursuant to § 9 (c) of the collective bargaining agreement (agreement) between the union and the state of Connecticut. That section provides in relevant part: "The Arbitrator shall render his/her decision in writing no later than thirty (30) calendar days after the conclusion of the hearing unless the parties mutually agree otherwise."

[**109] The arbitrator conducted hearings from May 5 through August 29, 2000, and the parties submitted posthearing briefs on unspecified dates thereafter. On January 3, 2001, the [***3] arbitrator was informed by a letter signed by both parties that the agreement's thirty day time restriction for an award had passed and that his services in the matter were therefore terminated. n2 The arbitrator's January 5, 2001 letter of response addressed both parties and requested an extension from each, stating: "I have never had the parties refuse to extend a deadline for an award to be due."

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 That letter stated in pertinent part: "As you have failed to comply with the contractual requirement to render a decision within thirty (30) days, any decision you render will be void. You have failed to request an extension. Please be advised that since you have not the assignment, please do not invoice either party."

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

On January 16, 2001, the union sent a letter to the arbitrator and granted his request for an extension. The arbitrator rendered his award on the same day, January 16, 2001, finding against the union's position. The department did not respond to the arbitrator's request for an extension [***4] before he rendered the award. The union then sought to vacate the award by application to the court dated February 7, 2001, pursuant to General Statutes § 52-418, arguing that the arbitrator had exceeded his authority by issuing an award after the contractual deadline had passed in the absence of a [*4] mutual agreement for an

extension from the parties. n3 On November 6, 2001, the department filed a motion to confirm the arbitration award.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 General Statutes § 52-418 (a) provides in relevant part: <sup>HN1</sup>"The superior court . . . shall make an order vacating the award . . . (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

In its memorandum of decision, filed April 11, 2002, the court denied the union's application to vacate, concluding that the parties had waived the agreement's deadline by failing to inform the arbitrator of its existence. The court [***5] also determined that the union's January 16, 2001 letter operated as a waiver of its right to challenge the timeliness of the award. The union then asked the court to clarify whether the April 11, 2002 decision controlled with respect to the department's motion to confirm the arbitration award. On May 1, 2002, the court rendered judgment in accordance with the arbitration award pursuant to the April 11, 2002 decision.

I

The union claims that the court improperly denied its application to vacate the award the deadline had passed under General Statutes § 52-416 and the agreement, without a extension from the parties, and because the parties had taken joint action to discharge the arbitrator pursuant to the agreement. n4 We agree that the award must be vacated as untimely under the agreement and address that issue in three parts: (1) [*5] whether § 52-416 applies, (2) the court's conclusion that the parties jointly waived the agreement's [**110] deadline, and (3) whether the department and the union "mutually" had agreed to an extension under the agreement.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

N4 General Statutes § 52-416 provides: <sup>HN2</sup>"(a) If the time within which an award is rendered *has not been fixed in the arbitration agreement*, the arbitrator or arbitrators or umpire shall render the award within thirty days from the date the hearing or hearings are completed, or, if the parties are to submit additional material after the hearing or hearings, thirty days from the date fixed by the arbitrator or arbitrators or umpire for the receipt of the material. An award made after that time shall have no legal effect unless the parties expressly extend the time in which the award may be made by an extension or ratification in writing." (Emphasis added.)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [***6]

First we set forth our standard of review. <sup>HN3</sup>Arbitration is a creature of contract, circumscribed by statute. If the parties choose to set limits on the arbitrator's powers, then the parties will be bound by those limits. *Carroll v. Aetna Casualty & Surety Co.*, 189 Conn. 16, 20, 453 A.2d 1158 (1983). The arbitration clause in the agreement constitutes the written submission to arbitration. The agreement for submission constitutes the charter for the entire ensuing arbitration proceedings. *Vail v. American Way Homes, Inc.*, 181 Conn.

449, 451, 435 A.2d 993 (1980).

**HN4** When arbitration is consensual, the scope of judicial review is generally limited to the concerns listed in § 52-418 (a). *Diamond Fertiliser & Chemical Corp. v. Commodities Trading International Corp.*, 211 Conn. 541, 546-47, 560 A.2d 419 (1989). It is axiomatic that any challenge to an award under § 52-418 (a) (4), on the ground that the arbitrator exceeded his powers, is limited to a comparison of the award with the submission. *Wolf v. Gould*, 10 Conn. App. 292, 296, 522 A.2d 1240 (1987). An award will be vacated under § 52-418 (a) (4) if [***7] the arbitrator has rendered an untimely award. See *Marsala v. Valve Corp. of America*, 157 Conn. 362, 369-70, 254 A.2d 469 (1969).

"Because **HN5** the parties have consented to arbitration and have framed the issues to be arbitrated, in reviewing the arbitration award we will make every reasonable presumption in favor of the arbitration award and the arbitrator's acts and proceedings." (Internal quotation marks omitted.) *Diamond Fertiliser & Chemical Corp. v. Commodities Trading International Corp.*, supra, 211 Conn. 547. The union, as the party challenging the [*6] award, carries the burden of demonstrating that the award violates the parties' agreement. See *O & G/O'Connell Joint Venture v. Chase Family Ltd. Partnership No. 3*, 203 Conn. 133, 145-46, 523 A.2d 1271 (1987).

We conclude that the union has met its burden. The parties do not contest that the arbitrator was discharged for failure to render a timely decision pursuant to their agreement. The court's factual conclusion that the parties had jointly waived the deadline is clearly erroneous. Moreover, on the basis of the facts and our construction of the agreement, the department [***8] did not "mutually agree" to extend the time in which the award was to be rendered. Therefore, we hold that the award must be vacated under § 52-418 (a) (4) because the arbitrator exceeded his powers by issuing a late award without a mutual agreement from the parties to extend the deadline.

A

The union claims that the court improperly denied its application to vacate the award the arbitrator rendered his decision after the deadline pursuant to § 52-416 had passed without a valid extension from the parties. The union reasons that if the arbitrator was unaware of the time frame set out in the agreement, then the statute came into play and signaled its own binding restrictions on him.

The court found, pursuant to § 52-416, that the parties had exercised their power to impose their own deadlines and extension requirements in the agreement in place of the default statutory terms. Therefore, it reasoned, the agreement controlled on the issue of timeliness. We agree.

**HN6** [**111**] Arbitration is a creature of contract. If the parties choose to set limits on the arbitrator's powers, then the parties will be bound by those limits. *Carroll v.* [*7] *Aetna Casualty & Surety Co.*, supra, 189 Conn. 20. [***9] Section 52-416 provides the following condition on the applicability of the statutory thirty day limit: "If the time within which an award is rendered has not been fixed in the arbitration agreement . . . ." General Statutes § 52-416 (a). That proviso renders the applicability of § 52-416 entirely contingent on the agreement's silence with respect to the deadline for the award and the requirements for a valid extension. See *Administrative & Residual Employees Union v. State*, 200 Conn. 345, 348-49, 510 A.2d 989 (1986). Where the arbitration agreement contains language about the issues of timing and extension, § 52-416 is not applicable. The statute applies only when the agreement does not specify the time within which the award must be rendered. See *C.F. Wooding Co. v. Middletown Elk's Home Corp.*, 177 Conn. 484, 486, 418 A.2d 904 (1979).

The court found that the agreement clearly stated that the arbitrator "shall render his/her decision in writing no later than thirty (30) calendar days after the conclusion of the hearing unless the parties mutually agree otherwise." The agreement expressly addresses the timing and [***10] extension issues and, therefore, precludes the invocation of § 52-416. The court's additional finding of a joint waiver of the contractual time frame by the parties, and its effect on the contract, is a separate concern that we will address in part B. We must look to the agreement, however, to determine whether the arbitrator exceeded his authority in rendering a late award.

B

The union claims, in the alternative, that pursuant to the agreement, the arbitrator could not render the award thirty days after the hearings had concluded because the parties jointly had terminated his services.

[*8] The court found that the parties had agreed to waive, and thereby to extend, the time requirement of the agreement by allowing the arbitrator to proceed in ignorance of the deadline. We disagree.

HN7 Waiver is a question of fact. *New York Annual Conference* v. *Fisher*, 182 Conn. 272, 300, 438 A.2d 62 (1980). We will not disturb the court's factual findings unless they are clearly erroneous. *Naftzger* v. *Naftzger & Kuhe, Inc.*, 26 Conn. App. 521, 526, 602 A.2d 606 (1992). "Where the factual basis of the court's decision is challenged we must determine whether [***11] the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221-22, 435 A.2d 24 (1980). The conclusions of the court "must stand unless they are legally or logically inconsistent with the facts found or unless they involve the application of some erroneous rule of law material to the case." *Laske* v. *Hartford*, 172 Conn. 515, 518, 375 A.2d 996 (1977).

HN8 The doctrine of waiver precludes parties from anticipating a favorable decision while reserving the right to impeach it or to set it aside if it happens to be against them for a cause it knew well in advance of the unfavorable decision. See *Krattenstein* v. *G. Fox & Co.*, 155 Conn. 609, 616, 236 A.2d 466 (1967). Failure to raise the issue of timeliness prior to the issuance of an arbitration award operates as a waiver of the right to object to the [**112] award as untimely. *AFSCME, Council 15* v. *City of New Britain*, 206 Conn. 465, 468, 538 A.2d 1022 (1988). A party has been found to have waived its [***12] right to object to the timeliness of the award by failing to object after being notified of the approximate date on which the award would be rendered. See *Diamond Fertiliser & Chemical Corp.* v. *Commodities Trading International Corp.*, supra, 211 Conn. 554. The parties have been to have [*9] waived their right to object to an untimely award by consenting to the arbitrators' delayed meetings and manifesting an agreement that the award would be delayed. See *Capozzi* v. *Liberty Mutual Fire Ins. Co.*, 32 Conn. App. 250, 256, 629 A.2d 424 (1993), aff'd, 229 Conn. 448, 642 A.2d 1 (1994).

In this case, in support of its conclusion that the parties mutually had waived the agreement's time requirements, the court stated that the submission did not impose or disclose the deadline, that the parties did not disclose it during the course of the arbitration proceedings and that the union's January 16, 2001 letter acknowledged the arbitrator's ignorance of the deadline.

The court's finding that the parties jointly waived the contractual deadline is clearly erroneous. The arbitrator's January 5, 2001 plea for an extension reveals that he was not [***13] aware of the agreement's thirty day deadline. That provision, however, was not hidden away in the agreement. Rather, the subject of timeliness and the arbitrator's

powers in general occupies the entire § 9 (c) of the agreement. The parties took the time to write that provision clearly into the agreement. *HN9* The arbitration clause in a contract constitutes the charter for the entire ensuing arbitration proceedings. Vail v. American Way Homes, Inc., supra, 181 Conn. 451. When the thirty days passed, the parties sent a joint letter discharging the arbitrator for failure to comply with the provision. That action showed a clear acknowledgment and enforcement of the term, not a joint waiver thereof.

The January 16, 2001 letter from the union acknowledges only that the parties never informed the arbitrator of the deadline. It stated: "A review of my notes and the exhibits reflects that (the deadline) was not brought to your attention . . . . Therefore, your request for an extension is granted." Nowhere was it stated that the [*10] parties never *imposed* the deadline. Obviously, that could not have been true because the parties together already had discharged the arbitrator [***14] for failure to comply with the thirty day provision. The willingness to forgive by one party did not change the fact that the deadline had passed or the fact that the arbitrator already had been discharged by both parties for that reason.

*HN10* Unless the parties, by their conduct, modified the joint discharge by agreeing to receive the late award, the discharge controls. For a valid modification of the joint discharge to have occurred, there must have been mutual assent to the meaning and conditions of the modification, and the parties must have assented "to the same thing in the same sense." (Internal quotation marks omitted.) Herbert S. Newman & Partners, P.C. v. CFC Construction Ltd. Partnership, 236 Conn. 750, 761-62, 674 A.2d 1313 (1996).

In this case, although both parties expressed a willingness to receive the award after the joint discharge was issued, they did so under entirely different circumstances. The union agreed to receive the late award before the award was rendered, taking the chance that the award might turn out against the union's interests. [**113] The department expressed a willingness to receive the award only after it was issued and after it knew that [***15] the award was favorable. That is not a scenario in which two parties mutually assented to a modification of an agreement, by their conduct, in the same sense. See id., 762.

The court's reliance on Board of Education v. AFSCME, Council 4, Local 287, 195 Conn. 266, 487 A.2d 553 (1985), is misplaced. The court cited that case for the proposition that when the collective bargaining agreement imposes no obligation on the arbitrator to render an award within a specific time period, and the [*11] parties do not request a decision by a specific date, the parties effectively have waived the claim of untimeliness. In Board of Education, the court read the express terms of the agreement to require a request from one or both parties to start the clock on the timeliness of the award. In this case, however, the parties imposed a mandatory time restriction. The agreement stated nothing about the necessity of a request from a party to start the clock.

The parties could not have been more clear about their desire to enforce the deadline as it was written in the agreement. The joint January 3, 2001 letter stated: "As you have failed to comply with the contractual requirement [***16] to render a decision within thirty (30) days, any decision you render will be void. You have failed to request an extension." This is not a case where an otherwise valid objection was reserved until after the award was rendered in an attempt to manipulate the arbitration process. See Diamond Fertiliser & Chemical Corp. v. Commodities Trading International Corp., supra, 211 Conn. 554. Having determined the court's finding of mutual waiver to be clearly erroneous, we will next discuss the related question of whether the parties "mutually" agreed to an extension.

C

The resolution of the claim that the arbitrator lacked the authority to issue his award depends on a closer examination of the agreement. The department offers the alternative proposition that it "mutually" agreed to an extension of the deadline. It argues that pursuant to the

agreement, it "mutually" agreed to accept the late award by remaining silent when the union expressly granted the extension and by then seeking to confirm the award. We disagree.

We begin by setting forth our standard of review. HN11 If the language of a contract is definitive of the parties' intent, [*12] then its interpretation is a [***17] question of law for the court. B & D Assocs. v. Russell, 73 Conn. App. 66, 71, 807 A.2d 1001 (2002). A presumption that the language is definitive arises when the contract is between sophisticated parties and commercial in nature. Best Friends Pet Care, Inc. v. Design Learned, Inc., 77 Conn. App. 167, 176, 823 A.2d 329 (2003). An appellate court's review, in such a case, is plenary. Id.

HN12 "Arbitration agreements are contracts and their meaning is determined . . . under accepted rules of [state] contract law . . . ." (Internal quotation marks omitted.) Levine v. Advest, Inc., 244 Conn. 732, 745, 714 A.2d 649 (1998). Contractual language is interpreted according to a fair and reasonable construction of the written words, and the language used must be accorded its common, natural and ordinary meaning and usage. Southington v. Commercial Union Ins. Co., 71 Conn. App. 715, 725-26, 805 A.2d 76 (2002). A contract must be construed to effectuate the intent of the parties, derived from the language [**114] of the contract, interpreted in light of the situation of the parties and the circumstances connected [***18] with the transaction. Pesino v. Atlantic Bank of New York, 244 Conn. 85, 91, 709 A.2d 540 (1998). In giving meaning to the language of a contract, an appellate court presumes that the parties did not intend to create an absurd result. New England Savings Bank v. FTN Properties Ltd. Partnership, 32 Conn. App. 143, 145, 628 A.2d 30 (1993).

We conclude that "mutually agree" does not mean the ability to remain silent while the other party to the contract grants an express extension of the deadline. It is simply not reasonable to argue that the parties intended a result when one party could agree to receive a late award after it had had the opportunity to see if it was favorable. The department had from January 5, 2001, the day it received the arbitrator's plea for an extension, to January 15, 2001, the day the union consented [*13] and the award was rendered, to express its consent to an extension.

We are bolstered in our interpretation of the agreement by the policy against permitting parties to anticipate a favorable decision while reserving a right to impeach it or to set it aside for a cause that was known to them long before trial if it happens [***19] to be against them. See Krattenstein v. G. Fox & Co., supra, 155 Conn. 616. That principle has been extended to the arbitration context. AFSCME v. New Britain, supra, 206 Conn. 468. The same policy extends to the scenario in which, as here, two parties to a collective bargaining agreement act together to discharge an untimely arbitrator and then one remains silent as the other grants a unilateral extension. The silent party cannot take advantage of a favorable award.

Section 52-418 (a) (4) requires a "mutual, final and definite" award as between the parties the arbitration. Trumbull v. Trumbull Police Local 1745, 1 Conn. App. 207, 218, 470 A.2d 1219 (1984). Such mutuality does not exist when *only one* party agrees to receive a late award following the termination of the arbitrator by both parties. The department will not be allowed to obtain a confirmation of a favorable award that it never mutually agreed to receive. We can well imagine that the department would cite the joint discharge and the contractual language as grounds to reject the award if it had been rendered in the union's favor. We cannot permit a free [***20] bite at the apple when the parties already had agreed to refuse the fruit of the arbitrator's labor.

II

The union claims that the court improperly found that it had waived the issue of timeliness

Get a Document - by Citation - 80 Conn. App. 1    Page 10 of 10

Case 3:00-cv-01983-EBB    Document 63-2    Filed 11/26/2003    Page 15 of 15

because of its January 16, 2001 letter granting an extension. It argues that a unilateral waiver by one party is not effective because the agreement required mutual consent **[\*14]** for an extension, and the parties already had agreed to discharge the arbitrator for failure to meet the deadline. We agree.

The situation presented here is different from the usual waiver case in which a party waits until after the late arbitration award is rendered and then objects to it as untimely. In this case, the parties acted promptly, together, to discharge the arbitrator for failure to meet the thirty day provision, as he was expressly required to do. The agreement stated that the parties had to "mutually agree" to extend the deadline. The same terms that preclude the department from remaining silent and seeking to obtain a confirmation of a late award also preclude the union from granting a unilateral extension. If the award were favorable to the union, it also would **[\*\*115]** be unable to obtain a confirmation. **[\*\*\*21]** Because the agreement required a mutual extension and the parties already had acted to discharge the arbitrator, the union was rescued from its folly.

The union's hands are not entirely clean in this matter. As the Supreme Court lamented in *Marsala* v. *Valve Corp. of America,* supra, 157 Conn. 369, in which a party successfully objected to a late award under the time frame of § 52-416, "certainly, we find nothing to commend in this plaintiff's conduct . . . ." The union, however, could not possibly have profited from its unilateral extension unless the department mutually agreed to it before the award was rendered.

The judgment is reversed and the case is remanded with direction to render judgment granting the union's application to vacate the award and denying the department's motion to confirm the award.

In this opinion the other judges concurred.

Service: **Get by LEXSEE®**
Citation: **80 conn app 1**
View: Full
Date/Time: Tuesday, November 25, 2003 - 8:46 AM EST

\* Signal Legend:
● - Warning: Negative treatment is indicated
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
\* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2003 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.