UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

AURICE BARLOW,                    :
    Plaintiff              :    NO. 3:00-CV-1983(EBB)
                           :
    v.                     :
                           :
                           :
STATE OF CONNECTICUT,             :
DEPARTMENT OF PUBLIC HEALTH       :
AND                               :
ELIZABETH WEINSTEIN               :
    Defendants             :

RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND MOTIONS TO STRIKE

INTRODUCTION

Plaintiff Aurice Barlow, ("Barlow" or "plaintiff") brings this employment discrimination action against the State of Connecticut Department of Public Health, and Elizabeth Weinstein, an employee of the Department of Public Health, ("Defendants" or "DPH" or "Weinstein") pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §1983, and Conn. Gen. Stat. §31-51q.  Defendants now move pursuant to Fed. R. Civ. P. 56 for summary judgment on all claims [Dkt. No. 46] and move to strike certain exhibits and statements offered in support of Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment [Dkt. No 62].  For the reasons detailed below, defendants' motion for summary judgment is granted.

1

BACKGROUND

The Court sets forth only those facts deemed necessary to an understanding of the issues raised in, and decision rendered on, this Motion.  The facts are culled from the parties' Local Rule 56(a) Statements, affidavits, and the exhibits attached to their respective memoranda.  The court notes that this case involves numerous instances of alleged retaliatory conduct over several years.  In this background, the court provides a brief overview of the facts taken in the light most favorable to the plaintiff, and more specific circumstances are raised in the Ruling's substantive discussion.

Plaintiff began working for the State of Connecticut Department of Public Health ("DPH") in 1984 as a clerk-typist. In April of 1986, Barlow was transferred to the Preventable Diseases Division, where she performed clerical and administrative duties in the AIDS Division.  Her jobs with the AIDS Division included answering phones, typing, word processing, filing, and disseminating informational pamphlets. From 1986 to January, 1997 Anne McLendon ("McLendon") acted as Barlow's supervisor.  While Barlow was under McLendon's supervision, McLendon prepared or reviewed Barlow's Performance Appraisals from 1988 to 1995.  While Barlow received an overall rating of good or very good on each of these evaluations, each also contained negative comments regarding Barlow's workplace

2

performance.  For example, on plaintiff's 1988 review, while she

received several good and very good ratings, McLendon noted in

the comments section that "when under stress, Aurice often loses

her temper and uses language and behaviors that are

inappropriate."  Barlow's 1994 evaluation included an overall

rating of good, noting several significant accomplishments of

plaintiff.  However, it also included recommendations such as the

need to decrease typing errors, work on maintaining an even

temper under stress, and develop better conflict negotiation

skills.

In the mid 1990's, the AIDS Division began to expand its

operations and programs, prompting the Department to hire an

independent contractor, Dunne, Kimmel, and Fein ("DKF"), to take

over many aspects of the operation of the Division. Some of

Barlow's job duties changed at this time.  On March 31, 1996, the

DPH moved from 21 Grand Street to 410 Capitol Avenue in Hartford.

In or around April or May of 1996, after the DPH moved, Barlow

filed a "whistleblower"[1] complaint alleging that her supervisors

had improperly given state-owned furniture to DKF during the

move.  Plaintiff asserts that many of her job duties were taken

away as a result of her complaint.  Barlow originally testified

---

[1]Defendants' challenge plaintiff's characterization of her complaint
regarding the furniture as a whistleblower action, because it was an after-
the-fact complaint about an incident unlikely to be repeated, but this court
will continue to refer to this incident as the whistleblower complaint, as
defendants chose to do in their moving papers, for ease of identification.

3

in her deposition that her job duties were taken away "all at once" when she "was working at 21 Grand Street." (Deposition of Barlow at 39-40) However, she later retracted her statement and stated that "all" of her job duties were not taken away until after she moved to 410 Capital Avenue. She explained that "some of my duties were taken away but they weren't taken away all at one time...They were taken away slowly but surely." (Id. At 50).

On April 18 1996, Barlow received a letter of warning as a result of two complaints by co-workers reporting incidents where Barlow became disruptive and acted inappropriately. One of Barlow's co-workers wrote a letter of complaint stating that after Barlow had trouble with the copy machine, she shouted "unprofessional remarks like 'some people have a lot of nerve' and swearing. Not only was what she said inappropriate and unprofessional, but her loud voice and hostile manner were upsetting to me and the staff in the immediate area." (Def. Exh. 7). In her deposition, plaintiff denied these incidents occurred in the manner stated by her co-workers, and insisted they were "coerced" into lying about the incidents in order to harass plaintiff. (Plaintiff's Dep. at 236 -37).

On August 6, 1996, two of Barlow's co-workers complained about plaintiff's inappropriate use of the telephone, stating that plaintiff spoke in a loud and disruptive manner. Plaintiff denied inappropriate use of the telephone at work, but also

4

asserts that she has hearing loss which causes her to speak loudly. On August 9, 1996, Weinstein gave Barlow a "letter of counseling" regarding her behavior in the office. Barlow asserts that Weinstein knew she was about to file a CHRO complaint, and reprimanded Barlow in retaliation. Barlow filed a complaint with the CHRO on August 12 alleging that she was "given poor evaluations, demoted, retaliated against, harassed and discriminated against" due to her race (black), religion (Catholic), marital status (single parent) and previous opposition to discriminatory practices. (Pl. Exh. 8). Plaintiff stated in her affidavit of illegal discriminatory practice that Mclendon had been harassing her since 1988 by giving her religious literature, which she had previously complained about to her union representative, the affirmative action office, and the personnel department, and she had subsequently suffered retaliatory conduct. Barlow's CHRO complaint did not make any allegations against Beth Weinstein regarding retaliation for having filed the "whistle-blower" improper disposal of furniture complaint. Barlow's complaint was date stamped on August 26, 1996, indicating the CHRO received the complaint on that day.

On August 22, 1996, Barlow received another letter of counseling regarding her excessive absences and tardiness. On the same day, after receiving a memo that she was not allowed to play in a DPH charity basketball tournament that day, Barlow

5

collapsed at work and had a "psychological breakdown." (Barlow Dep. at 174-6). Barlow thereafter took a voluntary leave of absence while the CHRO Complaint was pending.

While on leave, plaintiff did not receive her paychecks, which she asserts was a form of retaliation. Barlow stated that she was originally informed by Barbara Schiffer that her paychecks were intentionally withheld from her while she was on medical leave to force her to come back to work. However, Barlow stated in her deposition that Schiffer has "changed her story" and later told Barlow that her checks were left in the office rather than sent to her home due to an "oversight". (Id. 213-16). On January 26, 1998, plaintiff filed a complaint with the U.S. Department of Labor regarding the DPH's failure to send her paychecks home. Plaintiff asserts she was further harassed and retaliated against because she received phone calls from Tom Carson, DPH's Personnel Administrator, Tom Weirbonics, a DPH Personnel Officer, and Beth Weinstein, Barlow's supervisor, during her leave of absence. In her deposition, plaintiff explained that Weirbonics was "very nice" when he called, and that Carson called to inquire as to whether she was interested in a transfer out of the AIDS Department. Weinstein inquired about when Barlow intended to return to work from her leave. (Barlow Dep. At 193-6).

On October 7, 1996, the CHRO dismissed plaintiff's

6

complaint, finding no reasonable cause to believe that a discriminatory practice had occurred. Barlow did not file any subsequent civil action upon the CHRO's dismissal of her complaint. Barlow returned to work January 3, 1997, and was given a memo from Weinstein regarding her behavior expectations. However, Barlow subsequently had several more confrontational incidents with her supervisors and co-workers. On June 2, 1997, Weinstein wrote a letter to Barlow regarding her frequent lateness to work and inappropriate workplace behavior, in which she suggested Barlow seek help from the Employee Assistance Program. On July 9, 1997, after being told by a co-worker to lower her voice while on the phone, Barlow responded by saying "fuck you". (Affidavit of T. Carr). As a result, Weinstein gave Barlow another written letter of warning on July 17, 1997. In response, Barlow filed an internal complaint with the affirmative action office alleging that she had received the letter of warning for discriminatory reasons. Thomasina Carr, the Affirmative Action manager for the DPH, investigated plaintiff's complaint, but found that she was disciplined for legitimate reasons.

Following unsatisfactory performance evaluations in 1996, 1997, and 1998, in October of 1998 the DPH informed plaintiff they were considering her termination. Plaintiff was advised to meet with her Union representative in order to prepare a response

to the charges underlying her termination.  However, Barlow informed the DPH staff on the day of the scheduled meeting that she would not attend.  Barlow also rejected a "Last Chance Agreement" that DPH proposed, which would have allowed her to keep her job with the condition that any further disruptive conduct would result in her immediate termination.

Barlow was terminated on October 26, 1998.  Plaintiff subsequently sent letters of complaint to the Attorney General's office and the United States Department of Labor, and filed a second CHRO complaint.  On March 14, 2000, Yconne Duncan, an assistant CHRO counsel member, found that there was reasonable cause to believe that Barlow was a victim of retaliatory animus.  Plaintiff also grieved her termination under the terms of her collective bargaining agreement.  The DPH and Barlow's Union selected an arbitrator, Mark Grossman, to arbitrate Barlow's case.  Arbitrator Grossman rejected Barlow's retaliation claim and ruled that the DPH had proven that Barlow was terminated for just cause.  However, the arbitration award was subsequently vacated by the Appellate Court of Connecticut under Conn. Gen. Stat. 52-418(a)(4), because the arbitrator issued his award late without a mutual agreement from the parties to extend the deadline.  See AFSCME, Council 4, Local 704 v. Department of Public Health 80 Conn. App. 1; 832 A.2d 106 (2003).  Plaintiff subsequently filed the pending claims against defendants DPH and

8

Beth Weinstein.

Analysis

I. Motion to Strike

    A. Plaintiff's Exhibits in Support of her Memorandum in
Opposition to Summary Judgment

    As an initial matter, the defendants move to strike several
exhibits attached to the Plaintiff's Opposition to Defendants'
Motion for Summary Judgment [Dkt. Nos. 55] as improper.  The
principles concerning admissibility of evidence do not change on
a motion for summary judgment. Raskin v. Wyatt Co., 125 F.3d 55,
66 (2d Cir. 1997); Newport Elecs. v. Newport Corp., 157 F. Supp.
2d 202, 208 (D.Conn. 2001).  Accordingly, a motion to strike is
appropriate if documents submitted in support of a motion for
summary judgment contain inadmissible hearsay or conclusory
statements, are incomplete, or have not been properly
authenticated.  See, e.g. Hollander v. American Cyanamid Co., 999
F. Supp. 252, 255-56 (D.Conn. 1998); Dedyo v. Baker Engineering
New York, Inc., 1998 U.S. Dist. LEXIS 132, 1998 WL 9376 at *4
(S.D.N.Y. 1998).

    1. Exhibits 41, 50:  Unsworn Statements of Co-workers

    Defendants seek to strike several statements submitted in
support of plaintiff's opposition to the motion for summary
judgment because the statements were improperly certified and not
based on personal knowledge in violation of the requirements of

9

28 U.S.C. § 1746 and Fed. R. Civ. P. 56(e).  Rule 56(e) provides that a motion for summary judgment may be accompanied by sworn affidavits setting forth admissible facts based on personal knowledge.  28 U.S.C. § 1746 provides that, whenever a rule requires a matter to be supported by sworn affidavit, the matter may be supported instead by an unsworn, written declaration or statement subscribed as true under penalty of perjury, and dated. Here, however, plaintiff offers statements by co-workers that are in the form of a letter, neither sworn nor dated, nor ending with an affirmation suggesting the written statement is true. Further, neither of these letters asserts that it is based on personal knowledge, as required to be admissible in support of this motion for summary judgment.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158, n. 17. (1970)("Unsworn statements are not sufficient to defeat a motion for summary judgment."); Beyah v. Coughlin, 789 F.2d 986, 989-990 (2d Cir. 1986)(reversing summary judgment which relied on sworn testimony that was not based on personal knowledge). Because Exhibits 41 and 50 do not qualify as evidentiary proof in admissible form, these exhibits are stricken from the record and will not be considered by this court in its ruling on summary judgment.

     2. Exhibits 1, 8, 10, 12, 16, 30, 39, 45, 46, and 49

Defendant also seeks to strike numerous other documents plaintiff submitted in opposition to the summary judgment motion

for failure to authenticate, incompleteness, or unreliability.
Documents must be properly authenticated in order to be
considered by the court at summary judgment stage. <u>Dedyo</u>, 1998
U.S. Dist. LEXIS 132 at *12-13.  *See also,* 11 James Wm. Moore et
al., Moore's Federal Practice P 56.14[4][a] (3d ed. 1997).  It is
irrelevant that the documents can be properly authenticated if
introduced at trial through a witness, if they have not been
properly authenticated when submitted in support or opposition to
summary judgment. <u>Id.</u> Exhibit 1C and Exhibit 49 are incomplete as
plaintiff only produced one page of multiple page documents. In
addition, plaintiff failed to authenticate exhibits 1, 8, 10, 12,
16, 30, 39, 45, 46 and 49 which are accordingly stricken.[2]

### 3. Exhibit 6: Doctor's Report

Defendants also seek to strike Exhibit 6 from the record,  a
letter from a doctor regarding a hearing exam given to plaintiff,
which plaintiff failed to authenticate.  Courts can consider
medical reports on summary judgment on the assumption that the
physicians who originated the report will be available to testify
at trial if necessary.  <u>Jones v. City of Hartford</u>, 285 F. Supp.
2d 174, 185 (D. Conn. 2003).  As a result, the motion to strike
Plaintiff's Exhibit 6B is denied.

---

[2] The court notes that defendants produced many of these documents with
proper authentication, and were therefore considered by the court.  In
addition, even considering these exhibits, this court still finds plaintiff
has failed to produce any evidence of retaliatory conduct by the DPH.

B. Plaintiff's Local Rule 56(a)(2) Statement

Defendants have also moved to strike several statements in plaintiff's Local Rule 56(a)(2) Statement on the grounds that the statements are unsupported by the record, are legal conclusions, or are speculative statements or improper generalizations. *See* Defendants' Motion to Strike [Doc. # 62-1]. This court agrees that plaintiff's 56(a)(2) Statement includes conclusory allegations, many of which are not supported by the record. In deciding a summary judgment motion, however, it is necessary to look to the record evidence, and inappropriate to rely solely on the 56(a)(2) statement. *See* <u>Giannullo v. City of New York</u>, 322 F.3d 139, 142 (2d Cir. 2003). As the Court has relied only on the underlying evidence, not defendants' 56(a)(2) statement, plaintiff's motion is denied as moot.

II. Summary Judgment

A. Standard for Summary Judgment

In a motion for summary judgment the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See also* <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 256 (1986)(plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment). If the nonmoving party has failed

to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof at trial, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 322-23. See also, Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d. Cir. 1995)(movant's burden satisfied if it can point to an absence of evidence to support an essential element of nonmoving party's claim).

The court is mandated to "resolve all ambiguities and draw all inferences in favor of the nonmoving party. . . ." Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992), cert. denied, 506 U.S. 965 (1992). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991), cert. denied, 502 U.S. 849(1991). However, if the nonmoving party submits evidence which is "merely colorable", or is not "significantly probative," summary judgment may be granted. Anderson, 477 U.S. at 249-50. "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.

13

As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 247-48 (emphasis in original). In sum, summary judgment is proper where no reasonable jury "could find by a preponderance of the evidence" for the nonmoving party. See Id. at 248.

In deciding a summary judgment motion, the Court must view the record as a whole and in the light most favorable to the nonmoving party. See Matsushita Elec., 475 U.S. at 587; Adickes, 398 U.S. at 158-59. Either party may submit as evidence "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" to support or rebut a summary judgment motion." Fed. R. Civ. P. 56(c). Supporting and opposing affidavits must be based on personal knowledge and set forth facts that would be admissible in evidence. Fed. R. Civ. P. 56(e). Unsworn statements, letters addressed to litigants, and affidavits composed of hearsay and non-expert opinion evidence do not satisfy Rule 56(e) and must be disregarded. See Adickes, 398 U.S. at 158 n.17. In addition, general averments or conclusory allegations of an affidavit do not create specific factual disputes. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888-89 (1990).

14

B. Standard Applied: Title VII Retaliation Claim Against
   the DPH

Title VII prohibits retaliation against employees who
exercise rights protected by the statute. See 42 U.S.C. §
2000e-3(a).  The Court analyzes retaliation claims under the
three-step burden-shifting framework established in
McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973) and St.
Mary's Honor Center v. Hicks, 509 U.S. 502 (1993). See Tomka v.
Seiler Corp., 66 F.3d 1295, 1308 (2d Cir. 1995).  Under the first
tier of the McDonnell-Douglas test, the plaintiff must establish
a prima facie case of retaliation by showing that: (1) she
engaged in a protected activity under Title VII; (2) the employer
was aware of the protected activity; (3) the employee suffered an
adverse employment action; and (4) there was a causal connection
between the protected activity and the adverse employment action.
See Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d
276, 292 (2d Cir. 1998); Tomka, 66 F.3d at 1308. Upon such a
showing, the defendant must articulate a legitimate
nondiscriminatory reason for its action. See Holt v.
KMI-Continental, 95 F.3d 123, 130 (2d Cir. 1996). If the
defendant meets this burden, the plaintiff must demonstrate that
the defendant's explanations are a pretext for impermissible
retaliation. See Gallagher v. Delaney, 139 F.3d 338, 349 (2d Cir.
1998).  In order to survive a motion for summary judgment,

15

plaintiff must establish a genuine issue of material fact as to whether the employer's reason for discharging her is false pretext and as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision. DeMars v. O'Flynn, 287 F. Supp. 2d 230, 243-44 (W.D.N.Y. 2003)

An employee engages in a protected activity when she has (1) "opposed any practice made an unlawful employment practice" by Title VII, or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a). In regard to the first category, the plaintiff need not show that the conduct she opposed was actually a violation of Title VII, but only that she possessed a good faith reasonable belief that the underlying employment practice was unlawful under Title VII. Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons, 842 F.2d 590, 593 (2d Cir. 1988). Thus, it is possible for an employee reasonably to believe that specified conduct amounts to discrimination, even if that conduct actually would not qualify as discrimination under the law. See Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998). The Court must assess the reasonableness of the plaintiff's belief in light of the totality of the circumstances. See Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996).

16

Defendants impermissibly retaliate in violation of Title VII when a retaliatory motive plays a part in an adverse employment action, "whether or not it was the sole cause [and] even if valid objective reasons for the discharge exist." Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1038 (2d Cir. 1993). Proof of a causal connection can be proven indirectly by showing that the protected activity was followed closely by discriminatory treatment, see Reed, 95 F.3d at 1178; Davis v. State Univ. of N.Y., 802 F.2d 638, 642 (2d Cir. 1986), through other evidence such as disparate treatment of fellow employees who engaged in similar conduct, see DeCintio v. Westchester County Med. Ctr., 821 F.2d 111, 115 (2d Cir. 1987), or directly through evidence of retaliatory animus directed against the plaintiff by the defendant. See Richardson v. New York State Dep't of Correctional Serv., 180 F.3d 426, 1999 WL 391551, at *14 (2d Cir. 1999).

Courts must be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question. Because direct evidence of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir.1997)(internal quotations omitted). However, at the same time, a plaintiff may not defeat a motion for summary judgment by relying on "purely conclusory

17

allegations of discrimination, absent any concrete particulars."
Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985), cert. den. 474
U.S. 829.

### 1. Prima Facie Case

Plaintiff met the first three prongs of the McDonald-Douglas
test, as she engaged in protected activity by filing a CHRO
complaint alleging religious harassment by her supervisor.
Plaintiff also suffered adverse employment actions, including
negative work performance evaluations, refusal of promotion, and
disciplinary actions, all culminating with her discharge from
employment on November 10, 1998. See Burlington Indus. v.
Ellerth, 524 U.S. 742, 761 (1998)("[a] tangible employment action
constitutes a significant change in employment status, such as
hiring, firing, failing to promote, reassignment with
significantly different responsibilities, or a decision causing a
significant change in benefits.") However, plaintiff has failed
to show that there was a causal connection between the protected
activity and the adverse employment actions she suffered, and
therefore has not succeeded in establishing a prima facie case of
discrimination. See Parmlee v. Conn. Dep't of Revenue Servs., 160
F. Supp. 2d 294, 304-305 (D. Conn. 2001)(granting summary
judgment because plaintiff "provided no evidence that the
employment decision followed close in time to the protected
activity,[or] that he was treated differently after the

complaint...").

Barlow has failed to produce any direct evidence of retaliatory animus that would support a finding of a causal nexus between her complaints to management and the adverse employment actions. Without direct evidence, a plaintiff can prove causation indirectly "by showing that the protected activity was closely followed in time by the adverse action." Monaharan, 842 F.2d at 593. In this case, the extensive time lapse between plaintiff's protected activity and her dismissal removes any inference of retaliation in her termination. Plaintiff made a complaint to Thomas Weirbonics, one of the DPH's Personnel Officers regarding surplus furniture being sent improperly to DKF, in or around April or May of 1996.[3] (Plaintiff's Deposition at 39, 78). Subsequently, Barlow filed a CHRO complaint regarding McLendon's alleged harassment of her religious preferences on August 12, 1996, which was received by the CHRO on August 29, 1996. (Pl. Exh. 8; Defs. Exh. 8). Plaintiff was not terminated until October 1998, over two years after she made complaints. (Def.'s Exh. 39). See, e.g. Kodengada v. IBM, No. 00-7434, 2000 U.S. App. LEXIS 31322 (2d Cir. November 4, 2000) (a five-month interval is too long to support a causation argument without other probative evidence); Hollander v. American Cyanamid Co.,

_____

[3]In plaintiff's deposition, she could not remember the exact date she notified Weirbonics about the furniture issue, but testified that it was after the DPH moved to 410 Capitol Ave., which occurred on March 31, 1996. (Affidavit of Tom Carson).

19

895 F.2d 80, 85-86 (2d Cir. 1990) (A three and one-half month interval, without other evidence, is insufficient to demonstrate causation and survive defendant's motion for summary judgment).

Plaintiff argues that she has met the burden of showing a causal connection between the protected activity and adverse employment actions because immediately after she complained, many of her job duties were taken away, she received warnings regarding her behavior, and she was given poor work performance evaluations. She asserts that all of these adverse employment actions were in retaliation for engaging in protected activity. (Plaintiff's Memorandum in Opposition to Summary Judgment at 9). However, plaintiff's conclusory allegations that the adverse employment actions she suffered at work were retaliatory in nature are not enough to withstand a summary judgment motion. Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990). ("Mere speculation and conjecture" is insufficient to defeat a motion for summary judgment.) *See also*, Hoyt v. Dep't of Children & Families, NO. 3:02-cv-1758, 2004 U.S. Dist. LEXIS 4345 (D. Conn. March 17, 2004)(conclusory statements that contradict evidence are insufficient to create a genuine issue of material fact ).

Barlow's amended complaint and moving papers focus her retaliation claim on events that occurred after she filed the 1996 CHRO complaint. However, at the same time, plaintiff seems

to assert that she was already retaliated against prior to her

1996 complaint because she complained about her supervisor Ann

McLendon's unwelcome religious harassment.   In plaintiff's

56(a)(2) statement of undisputed facts, she states that:

> Plaintiff was the recipient of retaliation.  'Plaintiff
> complained both internally and externally regarding Ms.
> McLendon's unwelcome religious harassment against
> her...These activities took the form of religious
> gifts, pamphlets, Christian literature, cards, audio
> taped messages and other communications.  The above
> mentioned actions took place from 1988 through 1991.
> After making a complaint to Affirmative Action and
> writing a letter to the Governor's office, Ms. Barlow
> received no relief.  The religious harassment continued
> until 1996 (August) when Ms. Barlow filed a complaint
> with the CHRO alleging religious harassment and
> retaliation'...Plaintiff was the victim of retaliation
> from management as a result of her filing internal and
> external complaints of religious harassment.  Plaintiff
> had filed numerous complaints relative to religious
> harassment. (Plaintiff's Exhibit 15A, 15B).

> Pl.'s  Statement of Disputed Facts, ¶ 25 at 16.

Plaintiff produces no evidence that she made complaints regarding

religious harassment prior to her 1996 CHRO complaint.  In the

above paragraph, plaintiff cites to Exhibits 15A and 15B attached

to her Memorandum in Opposition to Defendant's Motion to Dismiss.

While these exhibits are letters plaintiff wrote to the EEOC and

the Governer's office regarding retaliation, they were both

written in 1998, and therefore cannot stand as evidence that she

had made internal complaints prior to the 1996 CHRO complaint.

However, even if this court was to assume that plaintiff had made

complaints in and around 1991 regarding McLendon's religious

harassment, plaintiff has still provided this court with no evidence that she was retaliated against for making such complaints.  In fact, the record shows that from the period of 1990 to 1993, Barlow received some of the highest marks on her employment reviews in her entire history of employment.  In 1990, 1991, and 1992, McLendon rated the plaintiff's overall work performance "very good."  On plaintiff's 1992 evaluation, McLendon wrote "Aurice has taken on several new responsibilities during this year, as a result of reduced AIDS Education staff. She has shown herself very willing to learn these new functions." In August 1994, Barlow was promoted to the position of Office Assistance.  Because plaintiff failed to produce evidence that she suffered an adverse employment action in and around 1991, this court focuses its remaining discussion, as both parties did, on whether or not plaintiff was retaliated against subsequent to filing her EEOC and "whistleblower" complaints.

Based on the exhibits that both plaintiff and defendants submitted with their moving papers, it is clear that many of the changes in Barlow's job duties and the negative performance evaluations Barlow received occurred before she filed her CHRO complaint in 1996.  First, the evidence before the court strongly suggests that any adjustments of plaintiff's job duties that occurred were a result of the structural changes in the AIDS Department at that time, not in retaliation for her complaints.

During the early to mid 1990's, the Aids Department of the DPH expanded its programs extensively.  (Affidavit of Tom Carson). The DPH hired a contractor, Dunne, Kimmel and Fein ("DKF") to perform many of the tasks that Barlow had previously been involved in. (Barlow Dep. at 57-64).  When pressed during her deposition about the reasons for which her job duties were reduced, plaintiff herself was unable to clearly attribute the changes to her engagement in protected activity.  Plaintiff admitted that some of her old job responsibilities were taken away because the Department of Health began to contract out many tasks when the program expanded.  (Id. at 61-2).  As she explained, "when I started, it was maybe no more than ten people. Then, as the years went by, it grew.  More money came in and it got to be a better program because we needed to educate people and have people that would give us expertise." (Id. at 63). Barlow also stated that many of her job duties were taken away while the department was still at its old location, before plaintiff had filed her whistleblower or CHRO complaints. (Deposition of Barlow at 39-40)  Accordingly, plaintiff failed to provide sufficient facts, supported by evidence, that her job duties were changed as a result of her engaging in protected activity.

In addition, in contrast to plaintiff's allegations, there is no evidence on the record that the disciplinary actions and

poor evaluations she received were a result of her whistle-blowing activity or were retaliatory in nature.  In fact, as early as September 1993, Barlow's supervisors gave her a memorandum entitled "Workplace Behavior Expectations" which outlined specific areas Barlow needed to improve.  (Id.)  Plaintiff submitted as exhibits in opposition to summary judgment numerous different complaints, letters of warning, or documentation of Barlow's inappropriate behavior written by her co-workers and supervisors.  While Barlow seemingly submitted these exhibits as evidence that she was retaliated against, at least seven of these exhibits produced were written before plaintiff filed her CHRO complaint. (See, e.g. Pl. Exhs. 9, 17, 42, 30-B).  Consequently, this court finds these exhibits demonstrate a lack of a causal connection between plaintiff's complaints and the negative feedback she received at work.

Plaintiff cites her failure to be promoted to the position of the AIDS Pre-professional Trainee, as evidence of retaliation. Because plaintiff received a 98 (a passing score) on the Decentralized Promotional Exam, she was given an interview for the position Friday, April 4, 1997.  (Pl. Exhs. 3-F, 3-G).  On June 13, 1997, plaintiff was informed that she was not offered the PPT position (Pl. Exh. 3-G).  Prior to this time, plaintiff had taken a several-month voluntary leave of absence.  Upon her return in January 1997, Barlow had excessive absences and

24

repeated tardiness, and had numerous explosions at work.  (Def.
Exhs. 22, 25, 5).  The DPH therefore have submitted adequate
evidence that they had legitimate reasons to choose another
candidate for the promotion, and no inference of retaliation has
been established.

The record also reflects the fact that the DPH gave
plaintiff numerous opportunities to improve her workplace
performance, but plaintiff's behavior only worsened as time went
on.  Although under the State of Connecticut's Collective
Bargaining Agreement the DPH could have fired plaintiff after she
received her second unsatisfactory evaluation in 1997, they did
not.  (Affidavit of Tom Carson)  It was not until plaintiff
received her third unsatisfactory evaluation in 1998, and after
several more incidents where plaintiff had acted inappropriately,
that the DPH finally informed Barlow they were considering her
termination.  Most telling to this court that the DPH did not
have any improper motive in their decision to terminate plaintiff
is the fact that they offered plaintiff a last chance agreement
that would have allowed her to keep her job, with the sole
condition that she discontinue her disruptive conduct at work.
(Affidavit of Tom Carson; Exh. 38).  Plaintiff declined this
opportunity.

For all the above reasons, this court finds that there is
insufficient evidence from which a reasonable jury could conclude

25

that the adverse employment actions plaintiff suffered were
related to the protected activity she engaged in.  Consequently,
plaintiff has not demonstrated a prima facie case of retaliation.

### 2. Legitimate Non-Discriminatory Reason

Even if this court were to find an inference of
discrimination in the discipline, failure to promote, and
eventual termination of plaintiff, defendant DPH has provided a
legitimate, non-discriminatory reason for their actions.
Plaintiff's workplace behavior had been in question for almost
ten years before she was eventually terminated.  Documents
submitted by both parties suggest that the DPH attempted multiple
times to counsel plaintiff as to how to improve her performance
at work.  (See Defs. Exhs. 8, 12, 15, 19, 21, 22, 23, 25, 29 and
34).  Even after the series of conflicts plaintiff had with co-
workers and after receiving several unsatisfactory work
evaluations, the DPH still gave plaintiff an opportunity to keep
her job, which she refused.  (Defs. Exh. 38).  Accordingly,
plaintiff has failed to provide any evidence that her own
behavior was not the true reason she received the negative
feedback she did at work.  Thus there is no basis for finding
this explanation is pretext for any discriminatory actions.
Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143
(2000).  See also Meiri v. Dacon, 759 F.2d 989, 997 (2d Cir.

26

1985)(granting summary judgment at the pretext stage where the plaintiff has "provided no indication that any evidence exists that would permit the trier of fact to draw a reasonable inference of pretext."). For all the above stated reasons, this court grants summary judgment as to plaintiff's Title VII retaliation claim against the DPH.

C. Wrongful Discharge Claim Against DPH in Violation of Conn. Gen. Stat. §31-51q

Plaintiff's Amended Complaint also alleges that the defendant DPH discharged plaintiff in retaliation for her exercise of her right to free speech and freedom of association, in violation of Conn. Gen. Stat. § 31-51g, which provides in pertinent part that:

> any employer, including the state and any instrumentality or political subdivision thereof, who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4, or 14 of article first of the constitution of the state . . . shall be liable to such employee for damages caused by such discipline or discharge . . . .

Conn. Gen. Stat. Ann. § 31-51q (West 1987).

In order to demonstrate a violation of Section 31-51q, plaintiff must prove that: (1) she was exercising rights protected by the first amendment to the United States Constitution (or an equivalent provision of the Connecticut

27

Constitution); (2) she was fired on account of her exercise of such rights; and (3) her exercise of her first amendment (or equivalent state constitutional) rights did not substantially or materially interfere with her bona fide job performance or with her working relationship with her employer. Lowe v. Amerigas, Inc., 52 F. Supp. 2d 349, 359 (D. Conn. 1999); Winik-Nystrup v. Manufacturers Life Ins. Co., 8 F. Supp. 2d 157, 159 (D. Conn. 1998). To be protected by the First Amendment, plaintiff's speech must have been on a matter of public concern, and plaintiff's interest in expressing herself on the particular matter must not have been outweighed by any injury the speech could cause to the employment relationship. Waters v. Churchill, 511 U.S. 661, 668, (1994) (brought under 42 U.S.C. § 1983); Cotto v. United Technologies Corp., 48 Conn. App. 618, 630, 711 A.2d 1180, cert. granted in part, 245 Conn. 915 (1998). n6

Primarily, plaintiff's CHRO complaint alleging religious harassment did not touch upon a matter of public concern. Speech on a purely private matter, such as an employee's dissatisfaction with the conditions of h[er] employment, does not pertain to a matter of public concern." Lewis v. Cohen, 165 F. 3d 154, 161-62 (2d Cir. 1999). See also Saulpaugh v. Monroe Com. Hosp. 4 F.3d 134, 144-143 (2d Cir. 1993) (finding workplace harassment complaints that related to plaintiff's individual situation were personal in nature and therefore did not implicate the first

amendment).  Further, even if plaintiff's whistle-blower complaint regarding the state-owned furniture related to a matter of public concern, plaintiff still failed to satisfy the causation prong between either of her complaints and the adverse employment actions she suffered. *See* <u>Menes v. Cuny Univ.</u>, 92 F. Supp. 2d 294, 310 (D. Conn. 2000).  This court has already determined that the DPH had legitimate reasons to terminate Barlow, and that plaintiff failed to create a genuine issue of material fact as to whether the DPH's actions toward the plaintiff were retaliatory conduct in response to plaintiff making complaints against her supervisors.  The Court concludes, therefore, that plaintiff's wrongful discharge claim fails on the merits for the same reasons that she cannot make out a Title VII retaliation claim, and summary judgment is granted as to Count II of plaintiff's amended complaint.

> D. Equal Protection Claim under 42 U.S.C. §1983 Against
>    Beth Weinstein.

Count Three of plaintiff's amended complaint asserts that plaintiff's supervisor, Beth Weinstein, deprived her of the right to equal protection under the law as guaranteed by the Fourteenth Amendment, in violation of 42 U.S.C. §1983. Plaintiff alleges this deprivation occurred because she exercised her right to free speech, and because of "her status as a person perceived as having an emotional or psychiatric disorder." (Complaint at 12.)

29

In so far as much as plaintiff is attempting to make a First Amendment retaliation claim under 42 USC §1983, she would be required to make a similar showing as mandated under her First Amendment wrongful discharge claim pursuant to Conn. Gen. Stat. §31-51q. <u>Philips v. Bowen</u>, 278 F. 3d 103, 109 (2d Cir. 2002). Because plaintiff has not established a claim under Conn. Gen. Stat. §31-51q, she cannot sustain a comparable claim under the Equal Protection Clause.

With respect to plaintiff's claim that defendant Weinstein violated her right to equal protection on the basis of her status as someone perceived as having a mental disorder, summary judgment is also appropriate. In plaintiff's memorandum in opposition to summary judgment, she did not respond to defendants' argument that she failed to meet the burden of establishing an equal protection violation based on her perceived status of having a mental disorder.  On this basis alone, the court could consider this claim abandoned. *See, e.g.,* <u>Taylor v. City of New York</u>, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003)("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."); <u>Bronx Chrysler Plymouth, Inc. v. Chrysler Corp</u>., 212 F. Supp. 2d 233, 249 (S.D.N.Y. 2002) (Where plaintiff's summary judgment opposition papers "made no argument in support of [one] claim at all," the

court dismissed the claim as "abandoned.")

In any event, this court agrees with defendants that plaintiff failed to meet the burden required to prove a selective enforcement claim under §1983. As the Second Circuit Court of Appeals has made clear, "a selective-enforcement claim based on the Equal Protection Clause must allege that: '(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" Giordano v. City of New York, 274 F.3d 740, 750-751 (2d Cir. 2001)(quoting Lisa's Party City, Inc. v. Town of Henrietta, 185 F.3d 12, 16 (2d Cir. 1999). First, plaintiff has failed to provide any evidence that Weinstein treated her differently from other similarly situated persons. In fact, she never even attempted to identify any individuals who were similarly situated to her. There is absolutely no evidence on the record that there were other DPH employees who engaged in similar conduct as plaintiff, or who were perceived as being disabled, yet escaped discipline. Further, plaintiff failed to produce any evidence that Weinstein perceived her as having a disability. In support of her equal protection claim, Barlow asserts that the fact that Weinstein referred her to DPH's Employee Assistance Program (EAP) each time

31

she was disciplined, requested Barlow undergo a fitness for duty exam, and made comments about Barlow's tendency to explode, proves that Weinstein perceived her as being mentally unstable. Even if Weinstein did perceive Barlow as being mentally unstable, this would not qualify as a disability as defined by the American with Disabilities Act, and therefore would not constitute an impermissible consideration as necessary to prove a selective enforcement claim under §1983.[4]  Consequently, summary judgment is granted as to plaintiff's §1983 claims as well.

### CONCLUSION

For the foregoing reasons, the court grants the defendants' motion for summary judgment [Dkt. No. 47] in its entirety.  The defendants' motion to strike certain exhibits and statements in support of plaintiff's memorandum in opposition to summary judgment is granted in part and denied in part [Dkt. No. 62]. The Clerk is hereby directed to close this file.

SO ORDERED

ELLEN BREE BURNS
SENIOR UNITED STATES DISTRICT JUDGE

---

[4] A disability is defined as (a) "a physical or mental impairment that substantially limits one or more of an individual's major life activities..." 42 U.S.C. § 12102(2).

32

Dated at New Haven, Connecticut this __5th__ day of May, 2004.